D. Ross Martin
James A. Wright III
Lisa M. Coyle
ROPES & GRAY LLP
1211 Avenue of the Americas
New York, New York 10036-8704

*Attorneys for FYI Ltd., FFI Fund Ltd.,
and Olifant Fund Ltd.*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re<br>**LEHMAN BROTHERS HOLDINGS, INC.,**<br>et al.,<br>                      *Debtors.* | Chapter 11 Case No.<br>08-13555 (JMP)<br>(Jointly Administered) |
| **LEHMAN BROTHERS HOLDINGS INC., LEHMAN BROTHERS SPECIAL FINANCING INC., LEHMAN BROTHERS COMMODITY SERVICES INC., LEHMAN BROTHERS COMMERCIAL CORP.,** and **OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF LEHMAN BROTHERS HOLDINGS INC.,** et al.,<br>            *Plaintiffs and*<br>            *Plaintiff Intervenor,*<br>*-against-*<br>**CITIBANK, N.A., CITIGROUP GLOBAL MARKETS LTD., CITIGROUP FINANCIAL PRODUCTS INC., CITIGROUP ENERGY INC., CITI CANYON LTD. CITISWAPCO INC., FYI LTD., FFI FUND LTD.,** and **OLIFANT FUND, LTD.,**<br>           *Defendants and*<br>           *Defendant Intervenors.* | Adv. Proc. No. 12-01044 (JMP) |

**DEFENDANT INTERVENORS' ANSWER AND COUNTERCLAIM TO
<u>PLAINTIFFS' AND PLAINTIFF-INTERVENOR'S SECOND AMENDED COMPLAINT</u>**

Defendant Intervenors FYI Ltd., FFI Fund Ltd., and Olifant Fund, Ltd. (collectively, the "Fund Defendants"), by and through their undersigned counsel, hereby answer the Second Amended Complaint and Claims Objection ("SAC") filed on January 29, 2014 by Plaintiffs Lehman Brothers Holdings Inc. ("LBHI"), Lehman Brothers Commercial Corp., Lehman Brothers Special Financing Inc. ("LBSF"), Lehman Brothers Commodity Services Inc., and Intervening Plaintiff the Official Committee of Unsecured Creditors of Lehman Brothers Holdings Inc. (collectively, the "Lehman Estates"), and state as follows:

## INTRODUCTION

1. In September 2008, prior to LBHI filing a petition in Chapter 11, the Fund Defendants, certain affiliates of Citibank, N.A. ("Citibank Defendants"), and LBSF negotiated a series of proposed "step-out" novation transactions (the "Failed Step-Outs").

2. The Failed Step-Outs concerned (a) a set of swap agreements between the Fund Defendants and LBSF and (b) a corresponding set of swap agreements between LBSF and the Citibank Defendants. Certain of the swap agreements had essentially identical terms and reference securities, except that LBSF was on one side of the swap economically under its agreements with the Fund Defendants, and the other side of the swap economically under its agreements with the Citibank Defendants.

3. The Failed Step-Outs were intended to allow LBSF to be removed, or "step out," from both sides for the applicable trades, such that the Fund Defendants and the Citibank Defendants would have obligations to each other directly under the revised (novated) trades, and LBSF would have no further obligations to either the Fund Defendants or the Citibank Defendants with respect to these particular swaps.

2

4.      Before the Failed Step-Outs were scheduled to be consummated, however, LBHI commenced its Chapter 11 proceeding, and LBSF then failed to transfer the collateral posted by the Fund Defendants for the related derivative trades to the Citibank Defendants.

5.      LBHI is a credit support party under the underlying two sets of swap agreements, and thus its Chapter 11 filing constituted an event of default. The Fund Defendants and, upon information and belief, the Citibank Defendants, terminated their swaps thereafter and the Failed Step-Outs were not consummated.

### *LBHI and LBSF's Bankruptcy Filings and the Fund Defendants' Claims*

6.      The Fund Defendants have swap termination claims against LBSF arising from derivative transactions involving approximately 300 distinct trades (including the trades involved in the Failed Step-Outs),[1] with guarantees from LBHI (the "Claims"). The Fund Defendants timely filed proofs of claim in the amount of approximately $262 million against both LBSF and LBHI, as follows:

| Fund Defendant | Claim Number | Debtor | Claim Amount[2] |
|---|---|---|---|
| Olifant Fund, Ltd. | 21714 | LBHI | $24,224,740 |
| Olifant Fund, Ltd. | 21715 | LBSF | $24,224,740 |
| FYI, Ltd. | 21716 | LBHI | $45,609,450 |
| FYI, Ltd. | 21717 | LBSF | $45,609,450 |
| FFI Fund Ltd. | 21718 | LBHI | $192,466,323 |
| FFI Fund Ltd. | 21719 | LBSF | $192,466,323 |

7.      On a net basis, the swap transactions comprising the Failed Step-Outs had moved in LBSF's favor as of the date of termination, in the amount of approximately $52 million, as asserted in the Fund Defendants' calculation statements and proofs of claim. Accordingly, the

---

[1] Each Fund Defendant has approximately 300 derivative transactions with LBSF (including the trades involved in the Failed Step-Outs), for a total of approximately 900 derivative transactions. The transactions are largely identical between the three Fund Defendants.

[2] As noted in the Proofs of Claim, the "Claim Amount" (as defined in the Proofs of Claim) includes an amount certain plus expenses and amounts not yet determined.

3

Fund Defendants reflected this termination amount in favor of LBSF as a setoff against the Fund Defendants' other Claims.

8.      On April 18, 2011, the Lehman Estates filed their One Hundred and Thirty-Second Omnibus Claims Objection (Dkt. No. 16117), in which they objected to the Claims, initiating a contested matter.  On May 18, 2011, the Fund Defendants filed the Response of FYI Ltd., FFI Fund Ltd., and Olifant Fund, Ltd. to the Debtors' One Hundred and Thirty-Second Omnibus Objection to Claims (Valued Derivative Claims) (Dkt. No. 16925).

## SPECIFIC RESPONSES

9.      The Fund Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraphs 1 through 11 of the SAC.

10.     Regarding the allegations contained in paragraph 12 of the SAC, to the extent that the Fund Defendants are the "third party" mentioned in these allegations, the Fund Defendants admit that, prior to the commencement of LBHI's chapter 11 case, the Fund Defendants, certain of the Citibank Defendants, and LBSF negotiated the Failed Step-Outs; that the Failed Step-Outs involved 29 swap transactions the Citibank Defendants had with LBSF; that the Failed Step-Outs involved 87 swap transactions the Fund Defendants had with LBSF; and that the Failed Step-Outs were intended to allow LBSF to be removed, or "step out," from both sides for the applicable trades, such that the Fund Defendants and the Citibank Defendants would have obligations to each other directly under the revised (novated) trades, and LBSF would have no further obligations to either the Fund Defendants or the Citibank Defendants with respect to these particular swaps. The Fund Defendants deny any and all remaining allegations regarding the Fund Defendants in paragraph 12, and are without knowledge or information sufficient to form a belief as to the truth of any and all other remaining allegations contained in paragraph 12.

4

11. The Fund Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraphs 13 through 15 of the SAC.

## THE PARTIES

12. The Fund Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraphs 16 through 26 of the SAC.

## JURISDICTION AND VENUE

13. The Fund Defendants admit the allegations contained in paragraphs 27 through 28 of the SAC.

14. The Fund Defendants admit that this is a core proceeding within the meaning of 28 U.S.C. § 157.

15. The Fund Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 30 of the SAC. The Fund Defendants further state that they have consented to the entry of a final order by the Bankruptcy Court in this proceeding and that they have expressly preserved all of their appellate rights.

16. The Fund Defendants admit the allegations contained in paragraph 31 of the SAC.

## FACTUAL ALLEGATIONS

17. The Fund Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraphs 32 through 205 of the SAC.

18. The Fund Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 206 of the SAC. The Fund Defendants further state that, on September 11, 2008, LBSF, certain of the Citibank Defendants, and the Fund Defendants attempted to enter into the Failed Step-Outs with an effective date of September 16, 2008. Under the proposed transactions, the Citibank Defendants would terminate

5

particular swap transactions facing LBSF and step into LBSF's position in particular swap transactions between the Fund Defendants and LBSF. The Failed Step-Outs were never a "successful novation," as plaintiffs allege. The Failed Step-Outs were never consummated because a condition precedent to the Failed Step-Outs becoming effective – LBSF's return of the Fund Defendants' collateral – failed to occur. Even if (contrary to fact) the conditions precedent to the Failed Step-Outs had been satisfied before September 16, upon information and belief LBSF's repudiation of its obligations would have been sufficient to rescind whatever contract might have been formed between the parties.

19. The Fund Defendants admit that, prior to the commencement of LBHI's chapter 11 case, the Fund Defendants, certain of the Citibank Defendants, and LBSF negotiated the Failed Step-Outs; that the Failed Step-Outs involved 29 swap transactions the Citibank Defendants had with LBSF; that the Failed Step-Outs involved 87 swap transactions the Fund Defendants had with LBSF; and that the Failed Step-Outs were intended to allow LBSF to be removed, or "step out," from both sides for the applicable trades, such that the Fund Defendants and the Citibank Defendants would have obligations to each other directly under the revised (novated) trades, and LBSF would have no further obligations to either the Fund Defendants or the Citibank Defendants with respect to these particular swaps. The Fund Defendants lack knowledge or information sufficient to form a belief as to whether the 29 swap transactions the Citibank Defendants had with LBSF "perfectly offset" the 87 swap transactions the Fund Defendants had with LBSF. The Fund Defendants deny any and all remaining allegations in paragraph 207 of the SAC.

20. The Fund Defendants deny the allegations in paragraph 208 and footnotes 15 and 16 of the SAC, except that they lack knowledge or information sufficient to form a belief as to

6

whether the Citibank Defendants were adherents to the ISDA Novation Protocol II, and refer to the quoted documents for their contents. The Fund Defendants further state that they were adherents to the 2005 ISDA Novation Protocol published on September 12, 2005. The Fund Defendants further state that, consistent with ISDA's standard novation agreements and published industry guidelines, the parties agreed on September 11, 2008 that the Failed Step-Outs would not be effective until September 16, 2008, after the conditions precedent were satisfied. As of September 11, the Citibank Defendants were in the money on their trades facing LBSF, and LBSF was in the money on its trades facing the Fund Defendants. Pursuant to the ISDAs and CSAs governing the parties' respective trades, LBSF had posted collateral with the Citibank Defendants and the Fund Defendants had posted collateral with LBSF. A condition precedent of the Failed Step-Outs was that each party holding collateral with respect to the original trades would return that collateral on or before the effective date of the Failed Step-Outs. Likewise, upon unwind and novation, each party that was out of the money would pay its counterparty a termination fee calculated under the ISDA governing its trades. The Citibank Defendants, LBSF, and the Fund Defendants agreed that September 16 was the effective date as well as the date by which cash collateral and termination fees had to change hands to satisfy the conditions precedent. The parties' agreement to a future effective date following satisfaction of conditions precedent is specifically contemplated by the ISDA Novation Best Practices cited by Plaintiffs, which provides that "[p]arties may, as part of the consent process on the Novation Trade Date, agree that the transfer will be effective from a forward starting Novation Date."

21.  The Fund Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations with respect to the intent of the Citibank Defendants contained in paragraph 209. The Fund Defendants deny the other allegations in paragraph 208 of

the SAC, except admit that LBHI (but not LBSF) filed for chapter 11 protection on September 15, 2008, and refer to the cited document for its contents. The Fund Defendants further state that, despite LBHI's bankruptcy filing, the Citibank Defendants and the Fund Defendants sought to consummate the Failed Step-Outs and sought assurance from LBSF that LBSF would return the Fund Defendants' collateral in satisfaction of the condition precedent to the Failed Step-Outs. LBSF declined to provide such assurances. Upon information and belief, LBSF determined not to satisfy the conditions precedent and thereby prevent the Failed Step-Outs from being consummated because LBSF concluded that it would be in its economic interest to do so.

22. The Fund Defendants deny the allegations in paragraph 210 of the SAC, and refer to the quoted document for its contents. The Fund Defendants further state, upon information and belief, that every step with respect to the Failed Step-Outs – from proposal to abandonment – was taken with LBSF's knowledge and consent. Following LBSF's refusal to satisfy the conditions precedent for the Failed Step-Outs, each party confirmed that its trading position had not changed; the Fund Defendants and the Citibank Defendants did so explicitly and LBSF did so implicitly by removing the relevant trades from DTCC. Thus, the Citibank Defendants respective swap transactions with LBSF remained in place, and the Fund Defendants respective swap transactions with LBSF remained in place.

23. The Fund Defendants refer to the documents quoted in paragraph 211 of the SAC for their contents.

24. The Fund Defendants deny the allegations in paragraph 212 of the SAC. The Fund Defendants further state that because the Failed Step-Outs were never consummated and therefore never became effective or were otherwise null and void, the Fund Defendants properly

8

calculated close-out amounts on the original trades pursuant to the Fund Defendants-LBSF ISDA Agreement.

25. The Fund Defendants deny the allegations in paragraph 213 and footnote 17 of the SAC, and refer to the quoted document for its contents. The Fund Defendants further state that ISDA's standard novation documentation and industry guidelines distinguish between the "Novation Trade Date" and the "Novation Date" on which a novation becomes effective and binding on the parties.[3] The ISDA Novation Best Practices cited by Plaintiffs recognize that "[p]arties may, as part of the consent process on the Novation Trade Date, agree that the transfer will be effective from a forward starting Novation Date."[4] Here, the parties understood and intended that the Failed Step-Outs would not be effective until September 16, 2008, after the conditions precedent were satisfied.

26. The Fund Defendants deny the allegations in paragraph 214 of the SAC, and refer to the quoted documents for their content. The Fund Defendants further state that the conditions precedent to and the future effective date of the Failed Step-Outs were key components of the Failed Step-Outs negotiated by the parties, and that LBSF agreed that the Failed Step-Outs would not be effective until September 16, 2008, after satisfaction of the conditions precedent. Plaintiffs' allegation that, as of September 11, there were "no steps remaining for LBSF to perform" with respect to the Failed Step-Outs is unfounded and absurd: among other things, LBSF failed to return the Fund Defendants' collateral by September 16 in satisfaction of the conditions precedent.

---

[3] See 2004 ISDA Novation Definitions §§ 1.16–1.17, available at http://www.isda.org/publications/pdf/2004-Novations-Definitions.pdf.

[4] See "Best Practice Statement: Processing Novations," at 2.

9

27. The Fund Defendants deny the allegations in paragraph 215 of the SAC, except to admit that the Fund Defendants' termination amounts for the Fund Defendants' 87 swap transactions subject to the Failed Step-Outs total $52,243,380, and lack knowledge or information regarding the close-out amounts calculated by the Citibank Defendants.

28. The Fund Defendants deny the allegations in paragraph 216 of the SAC, except to admit that the Fund Defendants' termination amounts for the Fund Defendants' 87 swap transactions subject to the Failed Step-Outs total $52,243,380, and lack knowledge or information regarding the close-out amounts calculated by the Citibank Defendants.

29. The Fund Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraphs 217 through 254 of the SAC.

## CAUSES OF ACTION

## COUNTS I-XVIII, XX-XXXIX

30. The Fund Defendants repeat and re-allege the answer to each of the allegations in all prior paragraphs, which are incorporated by reference as if set forth fully here.

31. The Fund Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraphs 256 through 345, and 349 through 418 of the SAC.

## COUNT XIX
### (Objection to Claim Under LBSF-Citibank Agreement)

32. The Fund Defendants repeat and re-allege the answer to each of the allegations in all prior paragraphs, which are incorporated by reference as if set forth fully here.

33. Regarding the allegations contained in paragraph 347 of the SAC, the Fund Defendants deny the allegations that trades had already been terminated as part of the Failed Step-Outs between LBSF, the Citibank Defendants, and the Fund Defendants. The Fund

Defendants are without knowledge or information sufficient to form a belief as to the truth of the other allegations contained in paragraph 347 of the SAC.

34. The Fund Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 348 of the SAC.

## AFFIRMATIVE DEFENSES

35. The Fund Defendants allege the following affirmative defenses with respect to the causes of action alleged in the SAC, without assuming the burden of proof where the burden of proof rests on Plaintiffs.

## FIRST AFFIRMATIVE DEFENSE

36. The SAC fails to state a claim upon which relief may be granted against the Fund Defendants with respect to each cause of action.

## SECOND AFFIRMATIVE DEFENSE

37. Plaintiffs, collectively and individually, consented to, approved, ratified, and authorized the acts and transactions complained of and for which recovery is sought, which precludes them from recovery.

## THIRD AFFIRMATIVE DEFENSE

38. Plaintiffs' claims are barred because Plaintiffs' claims are based upon agreements to which they failed to satisfy conditions precedent.

## FOURTH AFFIRMATIVE DEFENSE

39. Plaintiffs anticipatorily repudiated the Failed Step-Outs between LBSF, the Citibank Defendants, and the Fund Defendants.

## ADDITIONAL AFFIRMATIVE DEFENSES

40. The Fund Defendants reserve the right to assert such additional affirmative defenses as may be discovered during the conduct of the litigation.

## RESERVATION OF RIGHT TO AMEND

41. The Fund Defendants expressly reserve the right to amend and supplement their answer, defenses, counterclaim, and all other pleadings.

## COUNTERCLAIMS

1. Pursuant to Fed. R. Civ. P. 13, Counterclaimants the Fund Defendants hereby assert the following counterclaims against the Lehman Estates.

2. Counterclaimants the Fund Defendants incorporate and re-allege each allegation contained in Paragraphs 1 through 41 of this Answer as though fully set forth herein.

## FIRST CAUSE OF ACTION
### (Declaratory Judgment – 28 U.S.C. § 2201)

3. Counterclaimants the Fund Defendants incorporate and re-allege each allegation contained in Counterclaim Paragraphs 1 and 2 above as though fully set forth herein.

4. This cause of action arises under the Federal Declaratory Judgment Act, 28 U.S.C. § 2201.

5. Counterclaimants respectfully request that the Court enter a judgment declaring that the amounts asserted in the proofs of claim filed by the Counterclaimants against LBSF and LBHI, Claim Numbers 21714-21719 (as amended from time to time, the "Proofs of Claim"), are correct, that the claims asserted in the Proofs of Claim are not subject to estimation, setoff (other than as set forth in the Proofs of Claim), offset, reduction, or any objection by LBSF, LBHI, or any other party in interest in the Lehman Estates' chapter 11 cases, including, without limitation,

objections under section 502 of the Bankruptcy Code, and that the claims asserted in the Proofs of Claim are allowed in full.

## SECOND CAUSE OF ACTION
### (Declaratory Judgment – 28 U.S.C. § 2201)

6.      Counterclaimants the Fund Defendants incorporate and re-allege each allegation contained in Counterclaim Paragraphs 1 and 2 above as though fully set forth herein.

7.      This cause of action arises under the Federal Declaratory Judgment Act, 28 U.S.C. § 2201.

8.      Counterclaimants respectfully request that the Court enter a judgment declaring that (i) the Failed Step-Outs did not result in the novation of trades, and (ii) the swap agreements involved in the Failed Step-Outs were in the money to LBSF in the following amounts:

| **Fund Defendant** | **Aggregate Amount In the Money** |
|---|---|
| FYI Ltd. | $9,300,217 |
| FFI Fund Ltd. | $37,306,765 |
| Olifant Fund, Ltd. | $5,636,398 |

13

Dated: New York, New York
February 28, 2014

ROPES & GRAY LLP

By: */s/ James A. Wright III*
D. Ross Martin
James A. Wright III
Lisa M. Coyle
1211 Avenue of the Americas
New York, New York 10036-8704
Telephone: (212) 596-9000
Facsimile: (212) 596-9090

*Attorneys for FYI Ltd., FFI Fund Ltd., and Olifant Fund, Ltd.*