PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

1285 AVENUE OF THE AMERICAS
NEW YORK, NEW YORK 10019-6064
TELEPHONE (212) 373-3000

UNIT 3601, OFFICE TOWER A
BEIJING FORTUNE PLAZA
NO. 7 DONGSANHUAN ZHONGLU
CHAOYANG DISTRICT
BEIJING 100020
PEOPLE'S REPUBLIC OF CHINA
TELEPHONE (86-10) 5828-6300

12TH FLOOR, HONG KONG CLUB BUILDING
3A CHATER ROAD, CENTRAL
HONG KONG
TELEPHONE (852) 2846-0300

ALDER CASTLE
10 NOBLE STREET
LONDON EC2V 7JU, U.K.
TELEPHONE (44 20) 7367 1600

FUKOKU SEIMEI BUILDING
2-2 UCHISAIWAICHO 2-CHOME
CHIYODA-KU, TOKYO 100-0011, JAPAN
TELEPHONE (81-3) 3597-8101

TORONTO-DOMINION CENTRE
77 KING STREET WEST, SUITE 3100
P.O. BOX 226
TORONTO, ONTARIO M5K 1J3
TELEPHONE (416) 504-0520

2001 K STREET, NW
WASHINGTON, DC 20006-1047
TELEPHONE (202) 223-7300

500 DELAWARE AVENUE, SUITE 200
POST OFFICE BOX 32
WILMINGTON, DE 19899-0032
TELEPHONE (302) 655-4410

WRITER'S DIRECT DIAL NUMBER
212-373-3321

WRITER'S DIRECT FACSIMILE
212-492-0321

WRITER'S DIRECT E-MAIL ADDRESS
chammerman@paulweiss.com

April 23, 2014

**By Hand**

Honorable Shelley C. Chapman
United States Bankruptcy Court
One Bowling Green
New York, New York 10004-1408

      *LBHI, et al.* v. *Citibank, N.A., et al.*, Adv. Proc. No. 12-01044 (SCC)

Dear Judge Chapman:

      We write on behalf of defendants Citibank, N.A. and its affiliates (collectively, "Citi"), pursuant to Local Bankruptcy Rule 7007-1(b) and Your Honor's Chambers' Rules to request a Court conference to address a discovery dispute regarding deposition scheduling in the above-captioned adversary proceeding.

      Citi does not take this step lightly, and we ask the Court's indulgence to recite the history that has brought us to this point. For months, we have attempted to cooperate with Lehman to devise an orderly and efficient deposition plan consistent with the time allotted under the Third Amended Scheduling Order, under which fact discovery concludes on June 27, 2014. Unfortunately, Lehman is unwilling to reciprocate and proceed in good faith. Lehman has expressed an intention to depose a substantial number of witnesses (it has objected to our proposed limit of 60 per side, and has suggested it wants to depose more than 50 derivatives traders alone), many of whom are located abroad, or oversee global businesses and travel frequently, or no longer work at Citi and will take time to locate and schedule. Yet, with fewer than 50 business days remaining, Lehman has noticed the depositions of only 11 witnesses relating to derivatives (with only one a current Citi employee located in the United States), and has refused to identify any other derivatives-related witnesses. Instead, Lehman has served a sweeping Rule 30(b)(6) deposition notice covering 15 topics that touch on virtually every facet of the management and operations of the nine global derivatives businesses at issue in this case. Although Citi questioned the efficiency of this approach and made clear that numerous witnesses would be required to respond to the Rule 30(b)(6) notice – at a minimum, one for each of the nine businesses – Citi was prepared to defer to Lehman's wishes until Citi learned, late last week, that Lehman has recanted its agreement that witnesses should only be deposed once in this case. In an about-face, Lehman now insists that each of the

12-01044-scc    Doc 65    Filed 04/23/14    Entered 04/23/14 16:28:10    Main Document
Pg 2 of 13
PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

Hon. Shelly C. Chapman                                                                      2

numerous witnesses Citi designates in response to the 30(b)(6) notice must be deposed *twice*: once in their corporate representative capacity at the outset of deposition discovery, and then again at some later unspecified time in their individual capacity when Lehman feels "prepared" to take the individual depositions.

At this juncture, Citi seeks Your Honor's assistance to impose order on this deposition program. Citi's position on deposition scheduling is straightforward: notwithstanding the complexity of this case and the amount at stake, there should be an overall limit on the number of depositions, and (barring unforeseen and compelling circumstances) witnesses should be deposed only once. These limitations are reasonable, we submit. In our view, the parties should work cooperatively to schedule depositions in an efficient and rational manner that avoids undue burden on parties and witnesses while attempting to honor, to the extent practicable, the order in which the noticing party wishes to take the relevant depositions. Consistent with the Rules of Civil Procedure, these reasonable limits on discovery – which plaintiffs have rejected – will minimize the expense and burdens of discovery for the parties and the witnesses, reduce the number and occurrence of needlessly cumulative or duplicative depositions, and avoid unreasonable delays in the discovery schedule and the ultimate resolution of this case. *See* Fed. R. Civ. P. 26(b)(2)(C)(i)-(iii) (requiring the court to "limit the frequency or extent of discovery otherwise allowed" to avoid "unreasonably cumulative or duplicative discovery", or where a party has had "ample opportunity to obtain the information by discovery in the action", or where the "burden or expense of the proposed discovery outweighs its likely benefit").

Until last week, Lehman had agreed not to subject witnesses to more than one deposition, stating that: "If Citi's concern is that a witness designated as a 30(b)(6) representative will have to sit for a deposition a second time in an individual capacity, Citi can rest assured that plaintiffs will make reasonable efforts to avoid that result." (*See* Ex. 10, at 2.) Yet after Citi spent nearly one month scheduling depositions of senior traders and derivatives business heads in reliance on that agreement, Lehman abruptly reversed course, announcing last week that all Rule 30(b)(6) designees that had not yet been noticed by Lehman individually would be deposed solely as Rule 30(b)(6) witnesses, and that Lehman "expect[s] to notice these individuals in their individual capacities [later] when [Lehman is] prepared to do so." (Ex. 24, at 2.)

Lehman's conduct with respect to derivatives-related deposition scheduling appears designed to cause further delays in this case.[1] Under the existing

---

[1]  The letters exchanged by the parties are appended as exhibits hereto, and are summarized in Appendix B. As the correspondence shows, the instant dispute relates primarily to discovery concerning plaintiffs' objections to Citi's derivatives claims, which are being handled by Quinn Emanuel on plaintiffs' behalf. The remaining claims are being handled by Curtis Mallet. Deposition scheduling with Curtis Mallet has proceeded apace and in the manner typical of complex cases: the parties have exchanged lists of witnesses they expect to depose on these issues and have successfully negotiated

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

Hon. Shelly C. Chapman                                                                                                3

scheduling order, fact depositions were to take place between February 3 and June 27, 2014. Beginning in December 2013, Citi reached out to Lehman to begin planning for what would no doubt be an intensive deposition schedule. Lehman largely ignored these overtures and only when, a month into the deposition period, Citi requested on March 4 a meet and confer to discuss the scope and conduct of derivatives-related depositions, did Lehman finally take action. On March 5, Lehman served a Rule 30(b)(6) deposition notice on derivatives issues, seeking a deposition on May 5. The notice listed 15 broad topics (with multiple subparts), seeking testimony regarding virtually every aspect of the management and operations of the nine derivatives trading businesses at issue in this case.[2]

During a meet and confer on March 11, 2014, Citi explained that, given the breadth of the topics in the derivatives-related Rule 30(b)(6) notice, multiple witnesses would need to be designated in response (at a minimum, one designee from each of the nine derivatives businesses), and that it would be most efficient for Lehman to identify the individual witnesses from whom testimony would be sought to enable us to identify appropriate designees from Lehman's list to avoid needlessly increasing the number of depositions. (*See* Ex. 9, at 3-5.) Lehman refused to identify any derivatives-related witnesses it intended to depose and insisted that Citi designate Rule 30(b)(6) representatives without any input from Lehman. Lehman did agree, however, with the general proposition that individual witnesses should be deposed only once, and expressly "assur[ed]" Citi that it "will make reasonable efforts to avoid" any Rule 30(b)(6) witness having "to sit for a deposition a second time in an individual capacity." (Ex. 10, at 2.)[3]

Based on Lehman's assurance that witnesses would not be deposed twice, Citi offered to designate senior traders and business heads as Rule 30(b)(6)

---

dates for these depositions largely in the order preferred by the noticing party but with special flexibility and solicitude for the schedules of foreign witnesses. This is precisely the approach to deposition scheduling that Citi had hoped to take on derivatives-related discovery as well.

[2] Attached as Appendix A is the list of topics included in the derivatives-related Rule 30(b)(6) notice. Simply by way of illustration, Topic 8 – one of fifteen enumerated topics in plaintiffs' notice – seeks testimony on "Citi's policies and procedures for valuing Derivative positions for financial reporting, management reporting, regulatory capital, and tax or accounting purposes, including but not limited to the use of mid-market values and other market data, compliance with FAS 157, any adjustments made to market values, and any control process for reviewing and adjusting marks on a daily, monthly or quarterly basis." This sprawling topic is representative of others in Lehman's notice. The full text of the Rule 30(b)(6) Deposition Notice to Citibank on derivatives issues is included among the correspondence at Exhibit 7.

[3] In response to Citi's concerns about delay, Lehman's letter reiterated its desire to take these Rule 30(b)(6) depositions "at the outset" but characterized the May 5 deposition date as "incorrect," and enclosed a "corrected 30(b)(6) notice" which moved the deposition date forward to April 1. (Ex. 10, at 3.)

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

Hon. Shelly C. Chapman                                                                                                          4

representatives, since these witnesses likely would have the broadest knowledge of the various topics and likely would be asked about nearly all of the subjects in Lehman's Rule 30(b)(6) notice (*i.e.*, the general conduct of their businesses) during their individual depositions in any event. In making these designations, we told Lehman that these witnesses would be made available for a deposition only once. We agreed to begin scheduling these depositions to begin on or about April 15, and on a rolling basis thereafter, "to give plaintiffs adequate time to prepare both for the Rule 30(b)(6) and individual depositions." (Ex. 11, at 3.) In response, Lehman again assured Citi that individual witnesses would be recalled to testify only if "facts [were] uncovered during the discovery process [that] required further testimony from the deponent." (Ex. 15, at 1.) Relying on these repeated assurances, Citi began contacting witnesses and, on April 3, offered deposition dates for ten Rule 30(b)(6) witnesses (including the heads of six of the nine derivatives businesses). In making these designations, Citi made clear that each Rule 30(b)(6) designee was being offered "both in his individual capacity and as a corporate representative. . . ." (Ex. 18, at 4.) Lehman accepted many of these deposition proposals the following week (including two Rule 30(b)(6) depositions scheduled for April 30 and March 1), and did so without protest, qualification, or any suggestion that the Rule 30(b)(6) designees would not also be deposed in their individual capacities on the dates offered. (*See* Ex. 21, at 4.) Yet one week after accepting these dates, on April 16, 2014, Lehman sent us a letter stating, for the first time, its intent to depose twice any Rule 30(b)(6) designee whom Lehman had not yet noticed for deposition in his individual capacity.[4]

There is no credible justification for Lehman's "inefficient-by-design" approach to this discovery. Lehman cannot credibly suggest that it requires Rule 30(b)(6) depositions at the outset to understand the abstruse world of Citi's derivatives businesses before it can begin fact depositions in earnest. Lehman currently employs as many as 30 derivatives professionals that work on this case and most, if not all, of them worked in the derivatives businesses at large financial institutions similar to Citi before they began working for Lehman. Indeed, at least one of these Lehman employees – Steven Incontro – formerly worked at Citi through 2008 in one of the derivatives trading businesses central to this case, and Lehman has employed at least two other former Citi traders in the

---

[4] While Lehman had, by this time, noticed 11 individual derivatives depositions, these could not conceivably serve as appropriate Rule 30(b)(6) nominees on the sprawling topics Lehman had identified. Of the eleven witnesses noticed, only six were current Citi employees and, of these six, only one resides in the United States; the others are located in London, Singapore, Hong Kong, Japan and Australia. The five former employees are obviously not appropriate Rule 30(b)(6) nominees and (putting aside the obvious geographic challenges) the six current employees do not even cover the nine derivatives businesses in dispute. Further, several of the current employees noticed are relatively junior personnel inappropriate to serve as corporate representatives on the topics of overall policies and procedures governing these global businesses. Indeed Rule 30(b)(6) presumes that a corporation will "designate one or more officers, directors or managing agents," Fed. R. Civ. P. 30(b)(6), whose testimony would bind the corporation.

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

Hon. Shelly C. Chapman                                                                                              5

years since Lehman's bankruptcy. Lehman is hardly a neophyte in this area in need of schooling and it has ample means at its disposal to understand the basic features of the derivatives businesses at Citi.[5] In this case, Rule 30(b)(6) depositions are not a critical first step necessary to equip Lehman to begin taking depositions.[6]

In response to Lehman's unexplained repudiation of its previous agreement, Citi took the Rule 30(b)(6) depositions off calendar pending resolution of this issue by the Court. On April 21, we had a meet and confer call with Lehman to determine whether there was any available compromise that would avoid Citi witnesses being deposed more than once. On that call, Lehman's only suggestion was for Citi to designate an "empty vessel" with no factual knowledge of the issues in the case and to teach that person everything called for in the Rule 30(b)(6) notices. Even Lehman appeared to concede that this was not a workable solution. Lehman's only other suggestion was that Citi designate junior fact witnesses to serve as the Rule 30(b)(6) designees and, in that way, only these junior witnesses would be imposed upon to sit for deposition twice. Neither of these "solutions" is designed to promote efficiency, reduce undue burden or permit fact depositions within the court-mandated cutoff.

Lehman also raised for the first time on April 21 its view that fact depositions necessarily would need to be delayed because Citi's document production is not yet "complete," and Lehman expects to make new document requests in the near future for additional custodians (over and above the 170 Citi custodians from whom documents have already been produced). This professed need for additional document discovery is yet another transparent delay tactic. Surely, if Lehman truly needed additional documents and had identified non-duplicative, critical custodians who

---

[5]  Nor does Lehman need these Rule 30(b)(6) depositions to determine which derivatives-related witnesses they should depose. In May 2012, Citi responded to Lehman's first set of interrogatories, and identified over 125 employees in Citi's derivatives businesses with substantial knowledge about Citi's valuation of the Lehman terminated trades. At Lehman's request, in September 2012 Citi narrowed this list to 80 individuals who played a "key" or "central" role, and – again at Lehman's request – in May 2013 annotated the list of 80 individuals to identify their respective job functions, levels of seniority, and, where possible, the specific type of products the individual was responsible for trading. (For example, for the primary Credit Trading business, Citi identified the "Business Head," the "Trading Desk Heads" in London and Tokyo, and for more junior traders, Citi provided information about which types of products or sectors each trader covered.) Citi has also produced all organizational charts for these businesses that we have been able to locate.

[6]  We do not mean to suggest that this case does not present unique challenges or that there are no differences between the derivatives businesses at different financial institutions. For example, we are sensitive to the fact that the parties may each need help understanding the various derivatives-related reports generated by the businesses. In most litigations, parties simply wait and ask percipient witnesses to walk them through such documents at their individual depositions. But we have offered to work with plaintiffs "to provide (formal or informal) explanations of the documents and, if necessary, a witness who can help you along." (Ex. 9, at 5.) Lehman has ignored this offer.

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

Hon. Shelly C. Chapman                                                                                               6

somehow had been overlooked before, this request would not have been communicated to us solely in response to our decision to go to court because of Lehman's recalcitrance in moving depositions forward. To be clear: Lehman has received voluminous documents from a vast number of custodians. In the past, we have agreed repeatedly to add custodians based on Lehman's belated requests for more, including in September 2013, when Lehman requested over 30 new derivatives-related custodians, in addition to the 89 custodians already designated. But, respectfully, the time for broadly renegotiating discovery has been over for some time. Of course, if Lehman has concerns about specific documents that it believes Citi should have produced, or that Lehman was expecting to find but did not, we are, as ever, willing to meet and confer on specific, narrowly-tailored requests. However, we will not agree at this stage to reopen document discovery and negotiate entirely new requests. In a case of this size, a creative lawyer bent on delay will always be able to imagine additional documents or witnesses that she wishes had been requested at the outset. But the time for making document requests has past; it is time to move this case forward to a trier of fact. It is telling that Lehman appears uncomfortable to move forward.

For all these reasons, Citi requests a conference before this Court to address this matter. Specifically, Citi seeks (1) a reasonable cap on the number of depositions each side can take; (2) a reasonable deadline by which all depositions must be completed; and (3) an order that no witness in the case will be deposed more than once, absent compelling circumstances.[7]

Respectfully,

Claudia Hammerman

cc (via email): Counsel of Record

---

[7]  As we have detailed in the past, Lehman's efforts to delay the forward progress of this case has, unfortunately, become its *modus operandi*. (*See* Citibank's Memorandum of Law in Opposition to Plaintiffs' Motion for Entry of an Order Provisionally Allowing Claims Filed by Citibank, N.A. and Authorizing Lehman Brothers Holdings Inc. to Satisfy Those Claims With Funds on Deposit, at 13–17, attached as Ex. 26.) Given the difficulties the parties are likely to face in connection with discovery going forward, this case appears to be a good candidate for a discovery master, so as not to impose further on this Court. While Bankruptcy Rule 9031 appears to preclude the appointment of a special master, Citi would consent to the designation of a third party to mediate discovery disputes, and would be willing to bear half the cost of that third-party's efforts.

Appendix A

**Examination Topics**

Each topic herein seeks information regarding the period from January 1, 2008 to December 31, 2008. The topics on which examination is requested are:

1. The structure and organization of Citi's Derivatives business and operations, including but not limited to:

    (a) the structure and organization of all of Citi's Business Units engaged in Derivatives trading or Derivatives-related activities, including, but not limited to, operations, sales and marketing, risk management, and counterparty credit risk management; and

    (b) the identification and description, including primary business purpose, of each trading desk engaged in Derivatives trading, including but not limited to identification of traders, sales staff/marketers, and other personnel responsible for communicating with Derivative counterparties and other Derivative market-makers.

2. The identification and description of any systems or databases used by Citi to process, gather, and store Derivatives Information, or to which Citi contributed or provided Derivatives Information.

3. The identification and description of any models, tools, or spreadsheets on which Citi trading, sales and marketing, or credit or risk management personnel relied in the daily trading, marketing, or risk management of Derivatives and related exposure.

4. The identification and description of any outside services that Citi used or relied on for the management of Derivatives, including, but not limited to, any services used for purposes of trade compression, netting, or otherwise offsetting, reducing, or managing Derivatives and related exposure.

5. Citi's policies and procedures for maintaining, archiving, indexing, and storing data related to Derivatives trades and positions, including, but not limited to, electronic and telephonic communications.

6. Citi's policies and procedures regarding the authority of Citi's Derivatives desks to enter into trades with one another, including but not limited to which desks had such authority and which did not.

7. Citi's policies and procedures for marking Derivatives trades to market, including but not limited to the sources and uses of mid-market values and other market data, and any adjustments made to market values, whether for trading, profit and loss, risk management, or collateral management purposes.

12-01044-scc    Doc 65    Filed 04/23/14    En
Pg 9

8. Citi's policies and procedures for valuing Derivatives positions for financial reporting, management reporting, regulatory capital, and tax or accounting purposes, including but not limited to the use of mid-market values and other market data, compliance with FAS 157, any adjustments made to market values, and any control process for reviewing and adjusting marks on a daily, monthly or quarterly basis.

9. Citi's policies and procedures for establishing reserves or valuation adjustments related to Derivatives trades, whether for trading, risk management, collateral management, financial reporting, regulatory capital, tax, accounting, or other purposes, including but not limited to the timing and frequency of such reserves.

10. Citi's policies and procedures regarding the measurement, valuation, or management of counterparty credit risk for Derivatives trades, including but not limited to the use of credit value adjustments ("CVA"), counterparty exposure limits, trading in counterparty credit default swaps, hedging practices, and collateralization.

11. Citi's policies and procedures for providing or receiving prices and quotations for Derivatives trades to or from third parties, including but not limited to customers, brokers, and market data providers.

12. Citi's policies and procedures for managing exposure with respect to Derivatives trades, including the calculation and use of all metrics employed to measure such exposure, such as DV01, CV01, value-at-risk ("VaR"), and any other potential future exposure metrics.

13. Citi's policies and procedures for calculating profit-and-loss, sales credits, and any other performance or compensation measurements for Business Units, traders, salespersons, or other personnel involved in Derivatives transactions.

14. Citi's policies and procedures for processing Derivatives transactions in Citi's ticketing, risk management, and accounting systems.

15. Citi's policies and procedures for managing the collection of cash related to settlements of Derivatives positions.

Appendix B

## Appendix B:[1] Timeline of the Parties' Relevant Discovery Correspondence

| Ex. | Date | Description |
|---|---|---|
| 1 | December 17, 2013 | Citi sends a letter to Lehman asking to "begin planning for depositions, which, under the scheduling order, may begin on February 3, 2014," providing an initial list of deponents, and requesting confirmation of whether Lehman's counsel represents those individuals. |
| 2 | January 15, 2014 | Having received no response, Citi writes again, asking for a response to the above letter by January 21, 2014. |
| 3 | January 22, 2014 | Lehman partially responds to the December 17, 2013 letter, providing information about certain witnesses, but failing to address the majority of the witnesses identified in Citi's December 17, 2013 letter. |
| 4 | January 29, 2014 | Citi asks for confirmation by February 5, 2014 whether Lehman's counsel represents the remaining witnesses identified in the December 17, 2013 letter. |
| 5 | February 4, 2014 | Lehman advises that they presumptively represent all former Lehman employees. |
| 6 | March 4, 2014 | Citi provides Lehman with an initial list of the former Lehman witnesses it intends to depose and requests "a meet and confer to address the scope and conduct of deposition discovery generally and to explore whether there might be ways to limit the number or duration of depositions needed, particularly with respect to derivatives issues." |
| 7 | March 5, 2014 | Lehman serves two Rule 30(b)(6) deposition notices, returnable on May 5, 2014, one of which lists 15 topics pertaining to derivatives. |
| 8 | March 10, 2014 | Lehman sends Citi a list of 26 current and former Citi employees from whom testimony would be sought in connection with the non-derivatives aspects of the case. |
| 9 | March 13, 2014 | Citi memorializes the March 11, 2014 meet and confer with Lehman, noting Lehman's agreement that, "in general, 30(b)(6) depositions and individual depositions should be combined in order to avoid unnecessarily burdening any witness," although Lehman reserved the right to "revisit this general understanding on a case-by-case basis if the need arose."<br><br>The letter also reiterates Citi's request that Lehman identify derivatives-related witnesses to facilitate the efficient and economical selection of Rule 30(b)(6) designees.<br><br>Citi also proposes a limit of 60 depositions per side, not including third party depositions. |

---

[1] This Appendix sets forth the chronology of the party's negotiations regarding derivatives related deposition discovery, beginning in December 2013. Appendix A to this letter sets forth the topics in the derivatives-related Rule 30(b)(6) notice, served by plaintiffs on March 5, 2014.

| Ex. | Date | Description |
|---|---|---|
| 10 | March 17, 2014 | In response to Citi's March 13, 2014 letter, Lehman refuses to identify any derivatives-related witnesses for the purposes of facilitating the efficient selection of Rule 30(b)(6) designees, despite acknowledging that "plaintiffs will be seeking individual depositions of various derivatives traders, among others," and that "these witnesses may have some information that is responsive to the 30(b)(6) topics." To encourage Citi to make its designations first, plaintiffs specifically note that, "[i]f Citi's concern is that a witness designated as a 30(b)(6) representative will have to sit for a deposition a second time in an individual capacity, Citi can rest assured that plaintiffs will make reasonable efforts to avoid that result." Plaintiffs also reject as "wholly inappropriate" Citi's proposal to limit the number of fact depositions to 60 per side. |
| 11 | March 20, 2014 | Citi expresses frustration that Lehman refuses to identify any derivatives witnesses, and Citi offers to designate Citi's senior traders and business heads to testify in response to the Rule 30(b)(6) notice on a rolling basis beginning April 15, 2014. Citi reminds Lehman that it will not make these witnesses available for depositions twice, and that this will be Lehman's sole opportunity to take these witnesses' depositions in their individual capacities. |
| 12 | March 20, 2014 | After receiving the above letter, Lehman serves its first deposition notices for individual derivatives-related witnesses. Of the 11 witnesses noticed, only one is a current Citi employee located in the United States. The remaining five current employees are based in London, Hong Kong, Singapore, Japan, and Australia. Plaintiffs also notice five former Citi employees, three of whom reside outside the United States. |
| 13 | March 23, 2014 | Six weeks after the substantial completion of document discovery, Lehman complains that it needs additional organizational charts from Citi in order to "efficiently plan[] for depositions." |
| 14 | March 30, 2014 | Citi responds by recounting the various ways in which Citi has produced documents "sufficient to show the organizational structure, reporting relationships, and individuals involved in Citi's derivatives trading businesses" during September 2008. Citi repeats its request, made via email on March 27, 2014, to schedule a meet and confer on deposition scheduling. |
| 15 | March 31, 2014 | In response to Citi's letters of March 20 and 30, 2014, Lehman requests that Citi put its Rule 30(b)(6) designations and proposed dates in writing, reserving the right to "recall any 30(b)(6) deponent if we feel that facts uncovered during the discovery process require further testimony from that deponent." |
| 16 | April 1, 2014 | Citi reports on its progress in scheduling both individual and Rule 30(b)(6) depositions and again requests a meet and confer. |
| 17 | April 2, 2014 | Lehman rejects Citi's request for a meet and confer on the grounds that there is no actual dispute between the parties with respect to deposition discovery. |

| Ex. | Date | Description |
|---|---|---|
| 18 | April 3, 2014 | Citi again expresses disappointment that Lehman will not meet and confer. Citi proposes deposition dates for twelve witnesses in April, May, June and the first week of July, ten of which are designated on 30(b)(6) topics. Citi explicitly states that these ten witnesses will be testifying in both their individual and corporate capacities. |
| 19 | April 7, 2014 | Having received no response to its April 3, 2014 letter, Citi inquires via email whether the first two proposed dates (April 11 and 16, 2014) are acceptable to Lehman. Lehman advises that the proposed dates will not work, and requests alternatives. |
| 20 | April 8, 2014 | Concerned that numerous high level executives are holding dates open on their calendar, Citi again inquires whether Lehman can accept the proffered deposition dates, and requests that in the future plaintiffs respond to proffered deposition dates within two days to minimize the burden on witnesses who have been asked to hold these dates open. |
| 21 | April 9, 2014 | Lehman responds to Citi's letters of April 3 and 8, 2014, by accepting several of the dates that Citi has proposed for witnesses who will be testifying in their individual and corporate capacities. |
| 22 | April 11, 2014 | Citi confirms the deposition dates accepted in Lehman's April 9, 2014 letter, and proposes additional dates for both individual and Rule 30(b)(6) witnesses. |
| 23 | April 15, 2014 | Citi proposes via email that Alain Verdickt – one of the witnesses whose depositions plaintiffs noticed on March 20, 2014, and who is based in Australia – would be available for deposition on May 5, 2014 in New York, and would be designated as Citi's corporate representative in response to Topics 1(a) and 1(b) in plaintiffs' derivatives-related Rule 30(b)(6) notice. |
| 24 | April 16, 2014 | Lehman responds to Citi's outstanding proposals regarding deposition dates. However, in addition to addressing specific scheduling proposals, Lehman abruptly and without explanation rescinds their previous agreements to take Rule 30(b)(6) depositions simultaneously with depositions of witnesses in their individual capacities, writing that "for those 30(b)(6) representatives whose dates we have confirmed and whom we did not notice individually, we intend to take these witnesses solely in their corporate capacities." Lehman notes that they "will expect to notice these individuals in their individual capacities" at an unspecified later date, "when plaintiffs are prepared to do so." Plaintiffs also reject May 5, 2014 as a date for Mr. Verdickt's deposition. |
| 25 | April 17, 2014 | Citi informs Lehman that, in light of Lehman's repudiation of its agreement that witnesses would not be deposed twice absent compelling circumstances, Citi is forced to take off the deposition calendar upcoming depositions that Lehman claims will have to occur twice until Citi can seek guidance from the Court.<br><br>The parties met and conferred on April 21, 2014, but were unable to resolve their disputes regarding deposition scheduling. |