Exhibit 1

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

1285 AVENUE OF THE AMERICAS
NEW YORK, NEW YORK 10019-6064

TELEPHONE (212) 373-3000

LLOYD K. GARRISON (1946-1991)
RANDOLPH E. PAUL (1946-1956)
SIMON H. RIFKIND (1950-1995)
LOUIS S. WEISS (1927-1950)
JOHN F. WHARTON (1927-1977)

WRITER'S DIRECT DIAL NUMBER

212-373-3321

WRITER'S DIRECT FACSIMILE

212-492-0321

WRITER'S DIRECT E-MAIL ADDRESS

chammerman@paulweiss.com

UNIT 3601, FORTUNE PLAZA OFFICE TOWER A
NO 7 DONG SANHUAN ZHONGLU
CHAO YANG DISTRICT
BEIJING 100020
PEOPLE'S REPUBLIC OF CHINA
TELEPHONE (86-10) 5828 6300

12TH FLOOR, HONG KONG CLUB BUILDING
3A CHATER ROAD, CENTRAL
HONG KONG
TELEPHONE (852) 2846-0300

ALDER CASTLE
10 NOBLE STREET
LONDON EC2V 7JU, U K
TELEPHONE (44 20) 7367 1600

FUKOKU SEIMEI BUILDING
2 2 UCHISAIWAICHO 2-CHOME
CHIYODA-KU TOKYO 100-0011, JAPAN
TELEPHONE (81-3) 3597-8101

TORONTO-DOMINION CENTRE
77 KING STREET WEST, SUITE 3100
PO BOX 226
TORONTO ONTARIO M5K 1J3
TELEPHONE (416) 504-0520

2001 K STREET NW
WASHINGTON, DC 20006-1047
TELEPHONE (202) 223-7300

500 DELAWARE AVENUE, SUITE 200
POST OFFICE BOX 32
WILMINGTON DE 19899-0032
TELEPHONE (302) 655-4410

MATTHEW W ABBOTT
ALLAN J ARFFA
ROBERT A ATKINS
DAVID J BALL
JOHN F BAUGHMAN
LYNN B BAYARD
DANIEL J BELLER
CRAIG A BENSON
MITCHELL L BERG
MARK S BERGMAN
BRUCE BIRENBOIM
H CHRISTOPHER BOEHNING
ANGELO BONVINO
JAMES L BROCHIN
RICHARD J BRONSTEIN
DAVID W BROWN
SUSANNA M BUERGEL
PATRICK S CAMPBELL*
JESSICA S CAREY
JEANETTE K CHAN
YVONNE Y F CHAN
LEWIS R CLAYTON
JAY COHEN
KELLEY A CORNISH
CHRISTOPHER J CUMMINGS
CHARLES E DAVIDOW
DOUGLAS R DAVIS
THOMAS V DE LA BASTIDE III
ARIEL J DECKELBAUM
ALICE BELISLE EATON
ANDREW J EHRLICH
GREGORY A EZRING
LESLIE GORDON FAGEN
MARC FALCONE
ANDREW C FINCH
BRAD J FINKELSTEIN
ROBERTO FINZI
PETER E FISCH
ROBERT C FLEDER
MARTIN FLUMENBAUM
ANDREW J FOLEY
HARRIS B FREIDUS
MANUEL S FREY
ANDREW L GAINES
KENNETH A GALLO
MICHAEL E GERTZMAN
PAUL D GINSBERG
ADAM M GIVERTZ
SALVATORE GOGLIORMELLA
ROBERT D GOLDBAUM
NEIL GOLDMAN
ERIC S GOLDSTEIN
ERIC GOODISON
CHARLES H GOOGE, JR
ANDREW G GORDON
UDI GROFMAN
NICHOLAS GROOMBRIDGE
BRUCE A GUTENPLAN
GAINES GWATHMEY, III
ALAN S HALPERIN
JUSTIN G HAMILL
CLAUDIA HAMMERMAN
GERARD E HARPER
BRIAN S HERMANN
ROBERT M HIRSH
MICHELE HIRSHMAN
MICHAEL S HONG
JOYCE S HUANG
DAVID S HUNTINGTON
JEH C JOHNSON

MEREDITH J KANE
ROBERTA A KAPLAN
BRAD S KARP
JOHN C KENNEDY
ALAN W KORNBERG
DANIEL J KRAMER
DAVID K LAKHDHIR
STEPHEN P LAMB*
JOHN E LANGE
DANIEL J LEFFELL
XIAOYU GREG LIU
JEFFREY D MARELL
MARCO V MASOTTI
EDWIN S MAYNARD
DAVID W MAYO
ELIZABETH R McCOLM
MARK F MENDELSOHN
WILLIAM B MICHAEL
TOBY S MYERSON
CATHERINE NYARADY
JOHN J O'NEIL
ALEX YOUNG K OH
BRAD R OKUN
KELLEY D PARKER
MARC E PERLMUTTER
VALERIE E RADWANER
CARL L REISNER
WALTER G RICCIARDI
WALTER RIEMAN
RICHARD A ROSEN
ANDREW N ROSENBERG
JACQUELINE P RUBIN
RAPHAEL M RUSSO
JEFFREY D SAFERSTEIN
JEFFREY B SAMUELS
DALE M SARRO
TERRY E SCHIMEK
KENNETH M SCHNEIDER
ROBERT B SCHUMER
JAMES H SCHWAB
JOHN M SCOTT
STEPHEN J SHIMSHAK
DAVID R SICULAR
MOSES SILVERMAN
STEVEN SIMKIN
JOSEPH J SIMONS
MARILYN SOBEL
AUDRA J SOLOWAY
TARUN M STEWART
ERIC ALAN STONE
AIDAN SYNNOTT
ROBYN F TARNOFSKY
MONICA K THURMOND
DANIEL J TOAL
LIZA M VELAZQUEZ
MARIA T VULLO
ALEXANDRA M WALSH*
LAWRENCE G WEE
THEODORE V WELLS, JR
BETH A WILKINSON
STEVEN J WILLIAMS
LAWRENCE I WITDORCHIC
MARK B WLAZLO
JULIA MASON WOOD
JORDAN E YARETT
KAYE N YOSHINO
TONG YU
TRACEY A ZACCONE
T ROBERT ZOCHOWSKI JR

*NOT ADMITTED TO THE NEW YORK BAR

December 17, 2013

**By Email**

Diane C. Hutnyan
Quinn Emanuel
865 S. Figueroa St., 10th Floor
Los Angeles, California 90017

Peter Behmke
Curtis, Mallet-Prevost, Colt & Mosle LLP
101 Park Avenue
New York, New York 10178

*Lehman Brothers Holdings Inc., et al.* v. *Citibank, N.A., et al.*,
Adv. Proc. No. 12-01044 (JMP)

Dear Diane and Peter:

As the close of document discovery approaches, we believe it is appropriate to begin planning for depositions, which, under the scheduling order, may begin on February 3, 2014. A number of important Lehman witnesses no longer work for the estate and, in some cases, live abroad; thus, for planning purposes, defendants need to understand whether potential witnesses are represented by plaintiffs' counsel and will be made available for deposition at defendants' request, or whether defendants will have to go through other channels to secure their depositions.

Below we set out an initial list of potential deponents, divided into three categories: 1) those who we believe are represented by plaintiffs' counsel; 2) those who we believe are represented by third party counsel; and 3) those where we have no present understanding of whether they are represented, or by whom. For each of the first two categories, we ask that you confirm or correct our understanding concerning the witnesses' representation; for the third category, we ask that you advise us whether the

PAUL, WEISS, RIFKIND, WHARTON & GARRISON

Diane C. Hutnyan & Peter Behmke                                    2

witnesses are represented by plaintiffs' counsel or by third party counsel, and that you
identify such counsel.

## I.    Witnesses Represented by Plaintiffs' Counsel

Based on their current roles at Lehman or their representation in
connection with prior testimony, we believe, but ask you to confirm, that the following
witnesses are represented by plaintiffs' counsel and will be made available for deposition
at defendants' request:

- Janet Birney
- Debra Cash
- Daniel Ehrmann
- Steven Engel
- James Killerlane
- Chris O'Meara
- Carlo Pellerani
- Sean Rahavy
- Irina Veksler.

## II.    Witnesses Represented by Third Party Counsel

Based on their representation in prior testimony, we believe, but ask you
to confirm, that the following witnesses are not represented by plaintiffs' counsel. We
believe these witnesses are represented by the counsel listed below.

- Robert Azerad (represented by David Nelson of Boies, Schiller & Flexner LLP)
- Emil Cornejo (represented by Lee Richards of Richards, Kibbe & Orbe LLP)
- Eric Felder (represented by Jennifer Spain of Debevoise & Plimpton LLP)
- Daniel Fleming (represented by David Nelson, Esq. of Boies, Schiller & Flexner LLP)
- Ian Lowitt (represented by David Livshiz of Cleary, Gottlieb, Steen & Hamilton LLP)
- Paolo Tonucci (represented by Joshua Levine of Simpson Thacher & Bartlett LLP)

## III.    Other Witnesses

Based on the information available to us, we are unable to tell whether the
following witnesses are represented by plaintiffs' counsel or by third party counsel:

PAUL, WEISS, RIFKIND, WHARTON & GARRISON

Diane C. Hutnyan & Peter Behmke                                    3

- Scott Alvey
- Julie Boyle
- Aileen Daversa
- David Forsyth
- Joseph Igoe
- Craig Jones
- Aireen Phang
- Huw Rees
- Stirling Fielding
- Jonathan Debrich

Please let us know if plaintiffs' counsel will be representing these witnesses and will make them available for deposition. If these witnesses will not be represented by plaintiffs' counsel, we ask that plaintiffs provide us with contact information for their counsel, to the extent known, or otherwise provide us with the last known contact information for these witnesses so that we can coordinate their depositions.

*                *                *

We will not necessarily depose every witness listed above, nor are these the only witnesses we intend to depose. Nevertheless, information concerning which of these witnesses will be made available by plaintiffs will assist both parties in planning for what we expect will be a busy few months of depositions.

Plaintiffs should presume that Citi's counsel will be representing all current and former Citi employees.

We look forward to your response.

Very truly yours,

Claudia L. Hammerman

cc:    Rex Lee
       J. Derek Mize
       Stephen J. Shimshak
       William A. Clareman
       D. Ross Martin
       James Wright

Doc# US1 9092751v1

Exhibit 2

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

1285 AVENUE OF THE AMERICAS
NEW YORK, NEW YORK 10019-6064

LLOYD K. GARRISON    (1946-1991)
RANDOLPH E. PAUL    (1946-1956)
SIMON H. RIFKIND    (1950-1995)
LOUIS S. WEISS    (1927-1950)
JOHN F. WHARTON    (1927-1977)

UNIT 3601, OFFICE TOWER A, BEIJING FORTUNE PLAZA
NO. 7 DONGSANHUAN ZHONGLU
CHAOYANG DISTRICT
BEIJING 100020
PEOPLE'S REPUBLIC OF CHINA
TELEPHONE (86-10) 5828-6300

12TH FLOOR, HONG KONG CLUB BUILDING
3A CHATER ROAD, CENTRAL
HONG KONG
TELEPHONE (852) 2846-0300

ALDER CASTLE
10 NOBLE STREET
LONDON EC2V 7JU, U.K.
TELEPHONE (44 20) 7367 1600

FUKOKU SEIMEI BUILDING
2-2 UCHISAIWAICHO 2-CHOME
CHIYODA-KU, TOKYO 100-0011, JAPAN
TELEPHONE (81-3) 3597-8101

TORONTO-DOMINION CENTRE
77 KING STREET WEST, SUITE 3100
TORONTO, ONTARIO M5K 1J3
TELEPHONE (416) 504-0520

2001 K STREET, NW
WASHINGTON, DC 20006-1047
TELEPHONE (202) 223-7300

500 DELAWARE AVENUE, SUITE 200
POST OFFICE BOX 32
WILMINGTON, DE 19899-0032
TELEPHONE (302) 655-4410

WRITER'S DIRECT DIAL NUMBER
212-373-3321

WRITER'S DIRECT FACSIMILE
212-492-0321

WRITER'S DIRECT E-MAIL ADDRESS
chammerman@paulweiss.com

January 15, 2014

**By Email**

Diane C. Hutnyan
Quinn Emanuel
865 S. Figueroa St., 10th Floor
Los Angeles, California 90017

Peter Behmke
Curtis, Mallet-Prevost, Colt & Mosle LLP
101 Park Avenue
New York, New York 10178

*Lehman Brothers Holdings Inc., et al.*, v. *Citibank, N.A., et al.*,
Adv. Proc. No. 12-01044 (JMP)

Dear Diane and Peter:

You have not yet responded to our December 17, 2013 letter concerning deposition planning. As we set forth in that letter, in order to prepare for depositions we need to know whether potential witnesses are represented by plaintiffs' counsel and will be made available for deposition at defendants' request, or whether defendants will have to go through other channels to secure their depositions. Given that we wrote to you almost a month ago, we expect that you have been able to gather the information we requested for most, if not all, of the potential deponents we listed in our December 17 letter. Please provide us with a response, even if partial, incorporating all of the information you have been able to retrieve up until this point, no later than January 21.

Very truly yours,

Claudia L. Hammerman

cc:    Counsel of Record

Exhibit 3

## CURTIS, MALLET-PREVOST, COLT & MOSLE LLP

ALMATY
ASHGABAT
ASTANA
BUENOS AIRES
DUBAI
FRANKFURT
HOUSTON

ISTANBUL
LONDON
MEXICO CITY
MILAN
MUSCAT
PARIS
WASHINGTON, D.C.

ATTORNEYS AND COUNSELLORS AT LAW

101 PARK AVENUE
NEW YORK, NEW YORK 10178-0061

TELEPHONE 212-696-8000
FACSIMILE 212-697-1559
WWW.CURTIS.COM

WRITER'S DIRECT:
TEL.: 212-696-8829
E-MAIL: DMIZE@CURTIS.COM

January 22, 2014

**BY EMAIL**

Claudia Hammerman, Esq.
Paul, Weiss, Rifkind, Wharton & Garrison LLP
1285 Avenue of the Americas
New York, NY 10019-6064

Re:     *Lehman Brothers Holdings Inc., et al. v. Citibank, N.A., et al.,*
        Adv. Proc. No. 12-01044 (S.D.N.Y.) (JMP)

Dear Claudia:

I write in response to your letter dated December 17, 2013. Your letter asked whether plaintiffs' counsel or independent counsel will represent certain individuals at a deposition in these proceedings if Citibank seeks to depose them.

The following individuals on your list are currently employed by Lehman or Alvarez & Marsal, and thus they will be represented by plaintiffs' counsel if Citibank seeks to depose them.

- Janet Birney
- Debra Cash
- Aileen Daversa
- Daniel Ehrmann
- Chris O'Meara

The following individuals on your list are not employed by Lehman or Alvarez & Marsal. If Citibank seeks to depose any of the individuals on the following list, we request that

CURTIS, MALLET-PREVOST, COLT & MOSLE LLP
ATTORNEYS AND COUNSELLORS AT LAW                    Page 2                    January 22, 2014

Citibank first provide us with notice so that we have an opportunity to reach out to them and determine whether they will be represented by plaintiffs' counsel.

- Scott Alvey
- Julie Boyle
- Jonathan Debrich
- Steven Engel
- Stirling Fielding
- David Forsyth
- Joseph Igoe
- Craig Jones
- James Killerlane
- Carlo Pellerani
- Aireen Phang
- Sean Rahavy
- Huw Rees
- Irina Veksler

The following individuals on your list were described as having other counsel in prior testimony. We are not aware of any additional information regarding these individuals' legal representation beyond what you stated in your letter, except that Ian Lowitt is represented by Lewis J. Liman of Cleary, Gottlieb, Steen & Hamilton LLP.

- Robert Azerad
- Emil Cornejo
- Eric Felder
- Daniel Fleming
- Ian Lowitt
- Paolo Tonucci

Please note that by this letter we are not agreeing to make these individuals available for deposition. We will respond to Citibank's requests for depositions on a case by case basis.

Sincerely,

J. Derek Mize

CURTIS, MALLET-PREVOST, COLT & MOSLE LLP
ATTORNEYS AND COUNSELLORS AT LAW

Page 3

January 22, 2014

cc:    Diane C. Hutnyan
       Peter J. Behmke
       Rex Lee
       Stephen Shimshak
       William A. Clareman
       D. Ross Martin
       James Wright

Exhibit 4

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

1285 AVENUE OF THE AMERICAS
NEW YORK, NEW YORK 10019-6064
TELEPHONE (212) 373-3000

LLOYD K. GARRISON    (1946-1991)
RANDOLPH E. PAUL     (1946-1956)
SIMON H. RIFKIND     (1950-1995)
LOUIS S. WEISS       (1927-1950)
JOHN F. WHARTON      (1927-1977)


WRITER'S DIRECT DIAL NUMBER

212-373-3321

WRITER'S DIRECT FACSIMILE

212-492-0321

WRITER'S DIRECT E-MAIL ADDRESS

chammerman@paulweiss.com

January 29, 2014

UNIT 3601, OFFICE TOWER A, BEIJING FORTUNE PLAZA
NO. 7 DONGSANHUAN ZHONGLU
CHAOYANG DISTRICT
BEIJING 100020
PEOPLE'S REPUBLIC OF CHINA
TELEPHONE (86-10) 5828-6300

12TH FLOOR, HONG KONG CLUB BUILDING
3A CHATER ROAD, CENTRAL
HONG KONG
TELEPHONE (852) 2846-0300

ALDER CASTLE
10 NOBLE STREET
LONDON EC2V 7JU, U.K.
TELEPHONE (44 20) 7367 1600

FUKOKU SEIMEI BUILDING
2-2 UCHISAIWAICHO 2-CHOME
CHIYODA-KU, TOKYO 100-0011, JAPAN
TELEPHONE (81-3) 3597-8101

TORONTO-DOMINION CENTRE
77 KING STREET WEST, SUITE 3100
P.O. BOX 226
TORONTO, ONTARIO M5K 1J3
TELEPHONE (416) 504-0520

2001 K STREET, NW
WASHINGTON, DC 20006-1047
TELEPHONE (202) 223-7300

500 DELAWARE AVENUE, SUITE 200
POST OFFICE BOX 32
WILMINGTON, DE 19899-0032
TELEPHONE (302) 655-4410

MATTHEW W. ABBOTT
ALLAN J. ARFFA
ROBERT A. ATKINS
DAVID J. BALL
JOHN F. BAUGHMAN
LYNN B. BAYARD
DANIEL J. BELLER
CRAIG A. BENSON
MITCHELL L. BERG
MARK S. BERGMAN
BRUCE BIRENBOIM
H. CHRISTOPHER BOEHNING
ANGELO BONVINO
JAMES L. BROCHIN
RICHARD J. BRONSTEIN
DAVID W. BROWN
SUSANNA M. BUERGEL
PATRICK S. CAMPBELL*
JESSICA S. CAREY
JEANETTE K. CHAN
YVONNE Y. F. CHAN
LEWIS R. CLAYTON
JAY COHEN
KELLEY A. CORNISH
CHRISTOPHER J. CUMMINGS
CHARLES E. DAVIDOW
DOUGLAS R. DAVIS
THOMAS V. DE LA BASTIDE III
ARIEL J. DECKELBAUM
ALICE BELISLE EATON
ANDREW J. EHRLICH
GREGORY A. EZRING
LESLIE GORDON FAGEN
MARC FALCONE
ANDREW C. FINCH
BRAD J. FINKELSTEIN
ROBERTO FINZI
PETER E. FISCH
ROBERT C. FLEDER
MARTIN FLUMENBAUM
ANDREW J. FOLEY
HARRIS B. FREIDUS
MANUEL S. FREY
ANDREW L. GAINES
KENNETH A. GALLO
MICHAEL E. GERTZMAN
PAUL D. GINSBERG
ADAM M. GIVERTZ
SALVATORE GOGLIORMELLA
ROBERT D. GOLDBAUM
NEIL GOLDMAN
ERIC S. GOLDSTEIN
ERIC GOODISON
CHARLES H. GOOGE, JR.
ANDREW G. GORDON
UDI GROFMAN
NICHOLAS GROOMBRIDGE
BRUCE A. GUTENPLAN
GAINES GWATHMEY, III
ALAN S. HALPERIN
JUSTIN G. HAMILL
CLAUDIA HAMMERMAN
GERARD E. HARPER
BRIAN S. HERMANN
ROBERT M. HIRSH
MICHELE HIRSHMAN
MICHAEL S. HONG
JOYCE S. HUANG
DAVID S. HUNTINGTON
LORETTA A. IPPOLITO

JEH C. JOHNSON
MEREDITH J. KANE
ROBERTA A. KAPLAN
BRAD S. KARP
JOHN C. KENNEDY
ALAN W. KORNBERG
DANIEL J. KRAMER
DAVID N. LAKHDHIR
STEPHEN P. LAMB*
JOHN E. LANGE
DANIEL J. LEFFELL
XIAOYU GREG LIU
JEFFREY D. MARELL
MARCO V. MASOTTI
EDWIN S. MAYNARD
DAVID W. MAYO
ELIZABETH R. McCOLM
MARK F. MENDELSOHN
WILLIAM B. MICHAEL
TOBY S. MYERSON
CATHERINE NYARADY
JOHN J. O'NEIL
ALEX YOUNG K. OH
BRAD R. OKUN
KELLEY D. PARKER
MARC E. PERLMUTTER
VALERIE E. RADWANER
CARL L. REISNER
WALTER G. RICCIARDI
WALTER RIEMAN
RICHARD A. ROSEN
ANDREW N. ROSENBERG
JACQUELINE P. RUBIN
RAPHAEL M. RUSSO
JEFFREY D. SAFERSTEIN
JEFFREY B. SAMUELS
DALE M. SARRO
TERRY E. SCHIMEK
KENNETH M. SCHNEIDER
ROBERT B. SCHUMER
JAMES H. SCHWAB
JOHN M. SCOTT
STEPHEN J. SHIMSHAK
DAVID R. SICULAR
MOSES SILVERMAN
STEVEN SIMKIN
JOSEPH J. SIMONS
MARILYN SOBEL
AUDRA J. SOLOWAY
TARUN M. STEWART
ERIC ALAN STONE
AIDAN SYNNOTT
ROBYN F. TARNOFSKY
MONICA K. THURMOND
DANIEL J. TOAL
LIZA M. VELAZQUEZ
MARIA T. VULLO
ALEXANDRA M. WALSH*
LAWRENCE G. WEE
THEODORE V. WELLS, JR.
BETH A. WILKINSON
STEVEN J. WILLIAMS
LAWRENCE I. WITDORCHIC
MARK B. WLAZLO
JULIA MASON WOOD
JORDAN E. YARETT
KAYE N. YOSHINO
TONG YU
TRACEY A. ZACCONE
T. ROBERT ZOCHOWSKI, JR.

*NOT ADMITTED TO THE NEW YORK BAR

**By Email**

Diane C. Hutnyan                    Peter Behmke
Quinn Emanuel                       Curtis, Mallet-Prevost, Colt & Mosle LLP
865 S. Figueroa St., 10th Floor     101 Park Avenue
Los Angeles, California 90017       New York, New York 10178

*Lehman Brothers Holdings Inc., et al.* v. *Citibank, N.A., et al.,*
Adv. Proc. No. 12-01044 (JMP)

Dear Diane and Peter:

      We are disappointed by your response to our December 17, 2013 letter concerning depositions, which we received from Derek Mize on January 22.

      In our December 17 letter we sought to advance the parties' deposition planning by determining which counsel, if any, represented 25 specific current and former Lehman employees. We divided these 25 individuals into three categories: 1) those we believed to be represented by plaintiffs' counsel; 2) those we believed to be represented by third party counsel; and 3) those where we had no present understanding as to whether they were represented or not, and if so, by whom. With respect to the first two groups, we asked that you confirm or correct our understanding with respect to representation. For the third group, we asked you to advise us if the individuals are represented by plaintiffs' counsel or third party counsel (to the extent known) or, to the extent you were unaware if they were represented, we asked you provide us with the last known contact information for these individuals.

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

Diane C. Hutnyan & Peter Behmke                                    2

Despite waiting over a month to respond, plaintiffs have provided us with very little additional information. Based on your letter, it is our understanding that plaintiffs' counsel does not currently represent Scott Alvey, Julie Boyle, Jonathan Debrich, Steven Engel, Stirling Fielding, David Forsyth, Joseph Igoe, Craig Jones, James Killerlane, Carlo Pellerani, Aireen Phang, Sean Rahavy, Huw Ress and Irina Veksler. Nor are plaintiffs aware of any other counsel that represents these individuals. You did not provide us with contact information for these individuals (as we requested) and, instead, you requested that Citibank provide you with notice if Citibank seeks to depose any of these individuals "so that [plaintiffs] have an opportunity to reach out to them and determine whether they will be represented by plaintiffs' counsel." Frankly, that is what we expected you to do over the last month in response to our December 17 letter.

Based on your January 22 response, we have no reason to believe that any of the fourteen individuals listed above are currently represented by counsel, and thus we are free to contact them. Nonetheless, and as a courtesy, we will refrain from doing so for one additional week in order to provide you with an additional "opportunity to reach out to them and determine whether they will be represented by plaintiffs' counsel." If, after February 5, we have not heard that any of these individuals are represented by counsel in this matter, we will proceed as we deem appropriate to further our deposition planning in this case.

Very truly yours,

Claudia L. Hammerman

cc:    Rex Lee
       J. Derek Mize
       Stephen J. Shimshak
       William A. Clareman
       D. Ross Martin
       James Wright

Doc#: US1:9148328v2

Exhibit 5

# CURTIS, MALLET-PREVOST, COLT & MOSLE LLP

ALMATY
ASHGABAT
ASTANA
BUENOS AIRES
DUBAI
FRANKFURT
HOUSTON

ISTANBUL
LONDON
MEXICO CITY
MILAN
MUSCAT
PARIS
WASHINGTON, D.C.

ATTORNEYS AND COUNSELLORS AT LAW

101 PARK AVENUE
NEW YORK, NEW YORK 10178-0061

TELEPHONE 212-696-6000
FACSIMILE 212-697-1559
WWW.CURTIS.COM

WRITER'S DIRECT:
TEL.: 212-696-6145
E-MAIL: PBEHMKE@CURTIS.COM

February 4, 2014

**BY EMAIL**

Claudia Hammerman, Esq.
Paul, Weiss, Rifkind, Wharton & Garrison LLP
1285 Avenue of the Americas
New York, NY 10019-6064

Re:     *Lehman Brothers Holdings Inc., et al. v. Citibank, N.A., et al.,*
         Adv. Proc. No. 12-01044 (S.D.N.Y.) (JMP)

Dear Claudia:

We write in response to your letter of January 29 regarding the representation of former Lehman and Alvarez & Marsal employees that may be deposed in these proceedings.

In our letter of January 22, we provided you with a list of fourteen individuals who are no longer employed by Lehman or Alvarez & Marsal, as you requested: Scott Alvey, Julie Boyle, Jonathan Debrich, Steven Engel, Stirling Fielding, David Forsyth, Joseph Igoe, Craig Jones, James Killerlane, Carlo Pellerani, Aireen Phang, Sean Rahavy, Huw Ress and Irina Veksler. Your letter of December 17 stated only that Citi *may* seek the deposition of these individuals. Rather than expend resources in tracking down each of these individuals without knowing whether doing so would ultimately be necessary, we offered a common sense approach by which Citi would advise us when it decided to actually seek the deposition of anyone on the list, and we would then undertake to contact that individual and coordinate the deposition with Citi. We were disappointed to receive your letter of January 29 rejecting that approach.

Notwithstanding, in order to avoid further unnecessary back-and-forth, we will reach out to the individuals listed above and confirm they will be represented by us for purposes of any actual or potential depositions. Defendants should assume that Lehman's counsel will be representing all current and former Lehman and Alvarez & Marsal employees, other than those

17609510

CURTIS, MALLET-PREVOST, COLT & MOSLE LLP
ATTORNEYS AND COUNSELLORS AT LAW                Page 2                    February 4, 2014

who have been represented by their own counsel in prior Lehman proceedings, until informed
otherwise.

Sincerely,

Peter J. Behmke

cc:     Diane C. Hutnyan
        J. Derek Mize
        Rex Lee
        Stephen Shimshak
        William A. Clareman
        D. Ross Martin
        James Wright

Exhibit 6

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

1285 AVENUE OF THE AMERICAS
NEW YORK, NEW YORK 10019-6064

TELEPHONE (212) 373-3000

LLOYD K. GARRISON   (1946-1991)
RANDOLPH E. PAUL   (1946-1956)
SIMON H. RIFKIND   (1950-1995)
LOUIS S. WEISS   (1927-1950)
JOHN F. WHARTON   (1927-1977)

WRITER'S DIRECT DIAL NUMBER

212-373-3321

WRITER'S DIRECT FACSIMILE

212-492-0321

WRITER'S DIRECT E-MAIL ADDRESS

chammerman@paulweiss.com

UNIT 3601, OFFICE TOWER A, BEIJING FORTUNE PLAZA
NO. 7 DONGSANHUAN ZHONGLU
CHAOYANG DISTRICT
BEIJING 100020
PEOPLE'S REPUBLIC OF CHINA
TELEPHONE (86-10) 5828-6300

12TH FLOOR, HONG KONG CLUB BUILDING
3A CHATER ROAD, CENTRAL
HONG KONG
TELEPHONE (852) 2846-0300

ALDER CASTLE
10 NOBLE STREET
LONDON EC2V 7JU, U.K.
TELEPHONE (44 20) 7367 1600

FUKOKU SEIMEI BUILDING
2-2 UCHISAIWAICHO 2-CHOME
CHIYODA-KU, TOKYO 100-0011, JAPAN
TELEPHONE (81-3) 3597-8101

TORONTO-DOMINION CENTRE
77 KING STREET WEST, SUITE 3100
P.O. BOX 226
TORONTO, ONTARIO M5K 1J3
TELEPHONE (416) 504-0520

2001 K STREET, NW
WASHINGTON, DC 20006-1047
TELEPHONE (202) 223-7300

500 DELAWARE AVENUE, SUITE 200
POST OFFICE BOX 32
WILMINGTON, DE 19899-0032
TELEPHONE (302) 655-4410

MATTHEW W. ABBOTT
ALLAN J. ARFFA
ROBERT A. ATKINS
DAVID J. BALL
JOHN F. BAUGHMAN
LYNN B. BAYARD
DANIEL J. BELLER
CRAIG A. BENSON
MITCHELL L. BERG
MARK S. BERGMAN
BRUCE BIRENBOIM
H. CHRISTOPHER BOEHNING
ANGELO BONVINO
JAMES L. BROCHIN
RICHARD J. BRONSTEIN
DAVID W. BROWN
SUSANNA M. BUERGEL
PATRICK S. CAMPBELL*
JESSICA S. CAREY
JEANETTE K. CHAN
YVONNE Y. F. CHAN
LEWIS R. CLAYTON
JAY COHEN
KELLEY A. CORNISH
CHRISTOPHER J. CUMMINGS
CHARLES E. DAVIDOW
DOUGLAS R. DAVIS
THOMAS V. DE LA BASTIDE III
ARIEL J. DECKELBAUM
ALICE BELISLE EATON
ANDREW J. EHRLICH
GREGORY A. EZRING
LESLIE GORDON FAGEN
MARC FALCONE
ANDREW C. FINCH
BRAD J. FINKELSTEIN
ROBERTO FINZI
PETER E. FISCH
ROBERT C. FLEDER
MARTIN FLUMENBAUM
ANDREW J. FOLEY
HARRIS B. FREIDUS
MANUEL S. FREY
ANDREW L. GAINES
KENNETH A. GALLO
MICHAEL E. GERTZMAN
PAUL D. GINSBERG
ADAM M. GIVERTZ
SALVATORE GOGLIORMELLA
ROBERT D. GOLDBAUM
NEIL GOLDMAN
ERIC S. GOLDSTEIN
ERIC GOODISON
CHARLES H. GOOGE, JR.
ANDREW G. GORDON
UDI GROFMAN
NICHOLAS GROOMBRIDGE
BRUCE A. GUTENPLAN
GAINES GWATHMEY, III
ALAN S. HALPERIN
JUSTIN G. HAMILL
CLAUDIA HAMMERMAN
GERARD E. HARPER
BRIAN S. HERMANN
ROBERT M. HIRSH
MICHELE HIRSHMAN
MICHAEL S. HONG
JOYCE S. HUANG
DAVID S. HUNTINGTON
LORETTA A. IPPOLITO

JEH C. JOHNSON
MEREDITH J. KANE
ROBERTA A. KAPLAN
BRAD S. KARP
JOHN C. KENNEDY
ALAN W. KORNBERG
DANIEL J. KRAMER
DAVID K. LAKHDHIR
STEPHEN P. LAMB*
JOHN E. LANGE
DANIEL J. LEFFELL
XIAOYU GREG LIU
JEFFREY D. MARELL
MARCO V. MASOTTI
EDWIN S. MAYNARD
DAVID W. MAYO
ELIZABETH R. McCOLM
MARK F. MENDELSOHN
WILLIAM B. MICHAEL
TOBY S. MYERSON
CATHERINE NYARADY
JANE B. O'BRIEN
ALEX YOUNG K. OH
BRAD R. OKUN
KELLEY D. PARKER
MARC E. PERLMUTTER
VALERIE E. RADWANER
CARL L. REISNER
WALTER G. RICCIARDI
WALTER RIEMAN
RICHARD A. ROSEN
ANDREW N. ROSENBERG
JACQUELINE P. RUBIN
RAPHAEL M. RUSSO
JEFFREY D. SAFERSTEIN
JEFFREY B. SAMUELS
DALE M. SARRO
TERRY E. SCHIMEK
KENNETH M. SCHNEIDER
ROBERT B. SCHUMER
JAMES H. SCHWAB
JOHN M. SCOTT
STEPHEN J. SHIMSHAK
DAVID R. SICULAR
MOSES SILVERMAN
STEVEN SIMKIN
JOSEPH J. SIMONS
MARILYN SOBEL
AUDRA J. SOLOWAY
TARUN M. STEWART
ERIC ALAN STONE
AIDAN SYNNOTT
ROBYN F. TARNOFSKY
MONICA K. THURMOND
DANIEL J. TOAL
LIZA M. VELAZQUEZ
MARIA T. VULLO
ALEXANDRA M. WALSH*
LAWRENCE G. WEE
THEODORE V. WELLS, JR.
BETH A. WILKINSON
STEVEN J. WILLIAMS
LAWRENCE I. WITDORCHIC
MARK B. WLAZLO
JULIA MASON WOOD
JORDAN E. YARETT
KAYE N. YOSHINO
TONG YU
TRACEY A. ZACCONE
T. ROBERT ZOCHOWSKI, JR.

*NOT ADMITTED TO THE NEW YORK BAR

March 4, 2014

<u>By Email</u>

Diane C. Hutnyan
Quinn Emanuel
865 S. Figueroa St., 10th Floor
Los Angeles, California 90017

Peter Behmke
Curtis, Mallet-Prevost, Colt & Mosle LLP
101 Park Avenue
New York, New York 10178

> *Lehman Brothers Holdings Inc., et al.* v. *Citibank, N.A., et al.*,
> Adv. Proc. No. 12-01044 (SCC)

Dear Diane and Peter:

We write once again concerning deposition planning.

This letter serves as the notice requested in your January 22 letter that Citi will be seeking to depose the former Lehman employees listed below. Having received this notice, you now have an opportunity to contact these former employees to determine if you will be representing them in connection with their depositions.[1]

Several former Lehman employees reside in foreign countries. Unless plaintiffs' counsel represents these former employees and agrees to make them available for deposition in this action, we likely will be required to pursue their testimony through

---

[1]   In this letter, we do not address depositions of individuals whom you have previously confirmed are represented by plaintiffs' counsel or other third-party counsel.

Doc#: US1:9255497v1

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

Diane C. Hutnyan & Peter Behmke                                    2

the Hague Convention (or its analogue in countries that are not signatories to the
Convention). Based on our experience, obtaining testimony from witnesses through
these channels is time-consuming and requires significant coordination between counsel
to be efficient and cost-effective. Based on currently-available information, we believe
the following former Lehman employees currently reside abroad:

### Custodians

- Stirling Fielding (United Kingdom)
- Joseph Igoe (United Kingdom)
- Carlo Pellerani (United Kingdom)
- Aireen Phang (Singapore)
- Huw Rees (United Kingdom)

### Derivatives-Only Custodians

- Peter Joseph Duenas-Brckovich (United Kingdom)
- Michael Faller (United Kingdom)
- Kieran Higgins (United Kingdom)
- Ram Iyer (Canada)
- Mehdi Majoul (United Kingdom)
- Jeremy Martin (Singapore)
- Patrick McGarry (United Kingdom)
- Hussein Nasser (United Kingdom)
- Michael Ruiz (United Kingdom)
- Charles Spero (Japan)
- Selina Suk Han Fung (Hong Kong)
- Craig Tipping (United Kingdom)

We ask that you advise us, no later than Friday, March 14, whether
plaintiffs represent these witnesses and will make them available for deposition. After
that date, we intend to contact any witnesses (or their counsel, if known) that plaintiffs do
not claim to represent, to determine whether those witnesses will agree to give testimony
voluntarily. For any witnesses that will not agree to provide testimony voluntarily, we
intend to submit applications for letters of request under the Hague Convention. To the
extent plaintiffs wish to depose any of these witnesses as well, we will endeavor to
coordinate our Hague Convention requests with you.

We have no reason to believe that the following ex-Lehman employees are
beyond the Court's subpoena powers. However, we ask that you advise us if, to your
knowledge, any of these witnesses in fact live abroad, in which case we will add them to
our letters of request. Please let us know, no later than Friday, March 14, whether

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

Diane C. Hutnyan & Peter Behmke                                    3

plaintiffs represent these witnesses and will make them available for deposition, and
whether any of these witnesses reside abroad:

### Custodians

- Scott Alvey
- Julie Boyle
- Vincent DiMassimo
- Steven Engel
- David Forsyth
- Craig Jones
- James Killerlane
- Sean Rahavy
- Irina Veksler

      Finally, we think it makes sense to have a meet and confer to address the
scope and conduct of deposition discovery generally and to explore whether there might
be ways to limit the number or duration of depositions needed, particularly with respect
to derivatives issues. However, because the Hague Convention process can take some
time, we are notifying you now of our intention to depose these "derivatives-only"
witnesses that live abroad. Please let us know your availability on March 7, 10 or 11 for
such a conversation.

      We reserve all rights.

Very truly yours,

Claudia L. Hammerman

cc:    Counsel of Record

Doc#: USt.9255497v1

Exhibit 7

## CURTIS, MALLET-PREVOST, COLT & MOSLE LLP

| | | | |
|---|---|---|---|
| ALMATY | ISTANBUL | | |
| ASHGABAT | LONDON | | |
| ASTANA | MEXICO CITY | ATTORNEYS AND COUNSELLORS AT LAW | TELEPHONE 212-696-6000 |
| BEIJING | MILAN | | FACSIMILE 212-697-1559 |
| BUENOS AIRES | MUSCAT | 101 PARK AVENUE | WWW.CURTIS.COM |
| DUBAI | PARIS | NEW YORK, NEW YORK 10178-0061 | |
| FRANKFURT | WASHINGTON, D.C. | | |
| HOUSTON | | | |

WRITER'S DIRECT:
TEL.: 212-696-6146
E-MAIL: PBEHMKE@CURTIS.COM

March 5, 2014

**BY E-MAIL**

Claudia Hammerman, Esq.
Paul, Weiss, Rifkand, Wharton & Garrison LLP
1285 Avenue of the Americas
New York, New York 10019

Re: *Lehman Brothers Holdings Inc., et al. v. Citibank, N.A., et al.,*
     **Adv. Proc. No. 12-01044 (S.D.N.Y.) (SCC)**

Dear Claudia:

Enclosed please find two notices for deposition pursuant to FRCP 30(b)(6). Of course, we are amenable to discussing mutually convenient dates and times for the scheduling of these depositions. Please note that Plaintiffs reserve the right to modify or supplement these notices and the listed deposition topics.

We are also in receipt of your March 4 letter regarding the scheduling of depositions. We are coordinating and will revert with dates and times that work for a meet and confer to discuss the deposition process.

Sincerely,

Peter J. Behmke

cc:     Counsel of record

**QUINN EMANUEL**
**URQUHART & SULLIVAN, LLP**
51 Madison Avenue, 22nd Floor
New York, New York 10010-1603
*Counsel for the Official Committee of Unsecured*
*Creditors of Lehman Brothers Holdings Inc.*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

----------------------------------------------------------- X

| | |
|---|---|
| In re: | : Chapter 11 |
| | : Case No. 08-13555 (JMP) |
| LEHMAN BROTHERS HOLDINGS INC., *et al.*, | : |
| | : |
| Debtors. | : |

----------------------------------------------------------- X

| | |
|---|---|
| LEHMAN BROTHERS HOLDINGS INC., LEHMAN BROTHERS SPECIAL FINANCING INC., LEHMAN BROTHERS COMMODITY SERVICES INC., LEHMAN BROTHERS COMMERCIAL CORP. and OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF LEHMAN BROTHERS HOLDINGS INC., | : |
| | : |
| | : |
| | : |
| | : |
| Plaintiffs | : |
| | : |
| | : |
| -against- | : |
| | : Adversary Proceeding |
| | : |
| CITIBANK, N.A., CITIGROUP GLOBAL MARKETS LTD., CITIGROUP FINANCIAL PRODUCTS INC., CITIGROUP ENERGY INC., CITI CANYON LTD., CITI SWAPCO INC., FYI LTD., FFI FUND LTD., and OLIFANT FUND, LTD. | : No.: 12-01044 (JMP) |
| | : |
| | : |
| | : |
| | : |
| | : |
| Defendants and Defendant Intervenors. | : |

----------------------------------------------------------- X

## PLAINTIFFS' RULE 30(b)(6) DEPOSITION NOTICE TO CITIBANK *ET AL.*

PLEASE TAKE NOTICE that, pursuant to Rule 30(b)(6) of the Federal Rules of Civil

Procedure, Plaintiffs and Lehman Brothers Holdings Inc., Lehman Brothers Special Financing

Inc., Lehman Brothers Commodity Services Inc., Lehman Brothers Commercial Corp., and

Intervenor-Plaintiff Official Committee of Unsecured Creditors of Lehman Brothers Holdings

Inc., by and through its attorneys, will take the deposition, upon oral examination, under oath, of

Defendants Citibank, N.A., Citigroup Global Markets Ltd., Citigroup Financial Products Inc.,

Citigroup Energy Inc., Citi Canyon Ltd., and Citi Swapco Inc., through the officers, directors,

agents, or other persons with the most knowledge concerning the topics listed in Schedule A

hereto.  The deposition will commence at 9:30 a.m. on May 5, 2014 at 51 Madison Avenue, 22nd

Floor, New York, New York 10010, or at such date, time, and place as is otherwise agreed to by

the parties or ordered by the Court.  The deposition will be taken by a notary public or other

authorized officer and will continue from day to day until completed at a future date or dates.

PLEASE TAKE FURTHER NOTICE that, pursuant to Federal Rule of Civil

Procedure 30(b)(3), the deposition will be videotaped and recorded stenographically.

Dated:      New York, NY
            March 5, 2014

                        QUINN EMANUEL URQUHART & SULLIVAN
                        LLP

                        By:    _/s/ Andrew J. Rossman_____

                            Daniel Cunningham
                            Andrew J. Rossman
                            Diane C. Hutnyan
                            51 Madison Avenue
                            New York, New York 10010

                            *Special Counsel for the Official Committee Of
                            Unsecured Creditors Of Lehman Brothers Holdings
                            Inc.*

## SCHEDULE A

### Definitions

As used herein,

1. "Business Unit" means any front office, middle office, or back office function, desk, or group, including but not limited to any trading desks, risk management groups, operations units, collateral management groups, market making and non-market making groups, management trading books, proprietary trading groups, asset/liability management groups.

2. "Citi" means Citibank, N.A., Citigroup Global Markets Ltd., Citigroup Financial Products, Inc., Citigroup Energy Inc., Citi Canyon Ltd., and/or Citi Swapco Inc.

3. "Derivatives" means any transaction whose value is derived from an underlying asset, index, or other determinant of value, including but not limited to credit derivatives (including credit default swaps referred to as structured products and securitized products), interest rate derivatives, foreign exchange derivatives, equity derivatives, and commodity derivatives.

4. "Derivatives Information" means any information pertaining to Derivatives transactions, including but not limited to trade details, indications, bid/offers, pricing, mark to market values, risk management, profit and loss, performance management such as sales credits, profitability of individual transactions, profitability per counterparty, and collateral management of derivatives and related exposure including cash securities and exchange traded products.

### Examination Topics

Each topic herein seeks information regarding the period from January 1, 2008 to December 31, 2008. The topics on which examination is requested are:

1. The structure and organization of Citi's Derivatives business and operations, including but not limited to:

> (a) the structure and organization of all of Citi's Business Units engaged in Derivatives trading or Derivatives-related activities, including, but not

limited to, operations, sales and marketing, risk management, and counterparty credit risk management; and

(b) the identification and description, including primary business purpose, of each trading desk engaged in Derivatives trading, including but not limited to identification of traders, sales staff/marketers, and other personnel responsible for communicating with Derivative counterparties and other Derivative market-makers.

2. The identification and description of any systems or databases used by Citi to process, gather, and store Derivatives Information, or to which Citi contributed or provided Derivatives Information.

3. The identification and description of any models, tools, or spreadsheets on which Citi trading, sales and marketing, or credit or risk management personnel relied in the daily trading, marketing, or risk management of Derivatives and related exposure.

4. The identification and description of any outside services that Citi used or relied on for the management of Derivatives, including, but not limited to, any services used for purposes of trade compression, netting, or otherwise offsetting, reducing, or managing Derivatives and related exposure.

5. Citi's policies and procedures for maintaining, archiving, indexing, and storing data related to Derivatives trades and positions, including, but not limited to, electronic and telephonic communications.

6. Citi's policies and procedures regarding the authority of Citi's Derivatives desks to enter into trades with one another, including but not limited to which desks had such authority and which did not.

7. Citi's policies and procedures for marking Derivatives trades to market, including but not limited to the sources and uses of mid-market values and other market data, and any adjustments made to market values, whether for trading, profit and loss, risk management, or collateral management purposes.

8. Citi's policies and procedures for valuing Derivatives positions for financial reporting, management reporting, regulatory capital, and tax or accounting purposes, including but not limited to the use of mid-market values and other market data, compliance with FAS 157, any adjustments made to market values, and any control process for reviewing and adjusting marks on a daily, monthly or quarterly basis.

9. Citi's policies and procedures for establishing reserves or valuation adjustments related to Derivatives trades, whether for trading, risk management, collateral

management, financial reporting, regulatory capital, tax, accounting, or other purposes, including but not limited to the timing and frequency of such reserves.

10.    Citi's policies and procedures regarding the measurement, valuation, or management of counterparty credit risk for Derivatives trades, including but not limited to the use of credit value adjustments ("CVA"), counterparty exposure limits, trading in counterparty credit default swaps, hedging practices, and collateralization.

11.    Citi's policies and procedures for providing or receiving prices and quotations for Derivatives trades to or from third parties, including but not limited to customers, brokers, and market data providers.

12.    Citi's policies and procedures for managing exposure with respect to Derivatives trades, including the calculation and use of all metrics employed to measure such exposure, such as DV01, CV01, value-at-risk ("VaR"), and any other potential future exposure metrics.

13.    Citi's policies and procedures for calculating profit-and-loss, sales credits, and any other performance or compensation measurements for Business Units, traders, salespersons, or other personnel involved in Derivatives transactions.

14.    Citi's policies and procedures for processing Derivatives transactions in Citi's ticketing, risk management, and accounting systems.

15.    Citi's policies and procedures for managing the collection of cash related to settlements of Derivatives positions.

## CERTIFICATE OF SERVICE

The undersigned, an attorney, hereby certifies that, on March 5, 2014, a true and correct

copy of the foregoing RULE 30(b)(6) DEPOSITION NOTICE was served by e-mail on the

parties listed below:

Claudia Hammerman, Esq. – CHammerman@paulweiss.com
Stephen J. Shimshak, Esq. – SShimshak@paulweiss.com
William. Clareman, Esq. – WClareman@paulweiss.com
George Kroup, Esq. – GKroup@paulweiss.com

PAUL, WEISS, RIFKAND, WHARTON & GARRISON LLP
51 West 52nd Street
New York, New York 10019
*Counsel for Citibank, N.A.*

D. Ross Martin, Esq. – Ross.Martin@ropesgray.com
James A. Wright, Esq. – James.Wright@ropesgray.com
Lisa Coyle, Esq. – Lisa.Coyle@ropesgray.com
Michael Jo, Esq. – Michael.Jo@ropesgray.com
Catherine Mondell, Esq. – Catherine.Mondell@ropesgray.com

ROPES & GRAY LLP
1211 Avenue of the Americas
New York, NY 10036
*Counsel for FYI Ltd., FFI Fund Ltd., and Olifant Fund Ltd.*

Daniel Cunningham, Esq. – danielcunningham@quinnemanuel.com
Andrew J. Rossman, Esq. – andrewrossman@quinnemanuel.com
James C. Tecce, Esq. – jamestecce@quinnemanuel.com
Diane C. Hutnyan, Esq. – dianehutnyan@quinnemanuel.com

QUINN EMANUEL URQUHART & SULLIVAN LLP
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017-2543
*Special Counsel for Official Committee of Unsecured Creditors
of Lehman Brothers Holdings Inc.*

/s/ Ada V. Añon

17875064v1

**CURTIS, MALLET-PREVOST, COLT & MOSLE LLP**
Turner P. Smith
L.P. Harrison 3rd
Andrew H. Seiden
Peter J. Behmke
101 Park Avenue
New York, New York 10178
*Counsel for the Lehman Plaintiffs*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------- X

In re:                                                      :      Chapter 11
                                                            :      Case No. 08-13555 (SCC)
LEHMAN BROTHERS HOLDINGS INC., *et al.*,                    :
                                                            :
            Debtors.                                        :
---------------------------------------------------------------- X
LEHMAN BROTHERS HOLDINGS INC., LEHMAN              :
BROTHERS SPECIAL FINANCING INC., LEHMAN           :
BROTHERS COMMODITY SERVICES INC., LEHMAN          :
BROTHERS COMMERCIAL CORP., and                    :
OFFICIAL COMMITTEE OF UNSECURED                   :
CREDITORS OF LEHMAN BROTHERS HOLDINGS             :      Adversary Proceeding
INC.,                                             :      No. 12-01044 (SCC)
            Plaintiffs and                        :
            Plaintiff Intervenor,                 :
                                                  :
            -against-                             :
                                                  :
                                                  :
CITIBANK, N.A., CITIGROUP GLOBAL MARKETS          :
LTD., CITIGROUP FINANCIAL PRODUCTS INC.,          :
CITIGROUP ENERGY INC., CITI CANYON LTD., and      :
CITI SWAPCO INC.                                  :
                                                  :
            Defendants.                           :
---------------------------------------------------------------- X

**PLAINTIFFS' RULE 30(b)(6)**
**DEPOSITION NOTICE TO CITIBANK, N.A., *ET AL.***

**PLEASE TAKE NOTICE** that, pursuant to Rule 30(b)(6) of the Federal Rules of Civil

Procedure, as made applicable to this matter by Rules 7026, 7030 and 9014 of the Federal Rules

of Bankruptcy Procedure, the Plaintiffs Lehman Brothers Holdings Inc. ("LBHI"), Lehman

Brothers Commercial Corp. ("LBCC"), Lehman Brothers Special Financing, Inc. ("LBSF"),

Lehman Brothers Commodity Services, Inc. ("LBCS," and together with LBHI, LBCC, and

LBSF, "Lehman Plaintiffs"), by counsel Curtis, Mallet-Prevost, Colt & Mosle LLP, will take the

deposition upon oral examination of a knowledgeable witness or witnesses designated to testify

on behalf of Citibank, N.A. ("Citibank"), Citigroup Global Markets Ltd. ("CGML"), Citigroup

Financial Products Inc., Citigroup Energy Inc., Citi Canyon Ltd., and Citi Swapco Inc.

(collectively, "Citi") on the topics identified on the attached **Schedule A**.  The deposition(s) will

commence on May 5, 2014 at 9:30 a.m., at the offices of Curtis, Mallet-Prevost, Colt & Mosle

LLP, located at 101 Park Avenue, 35th Floor, New York, New York 10178, or at such other time

and place as may be agreed upon by counsel, and continue day to day until completed.  The

testimony at the deposition will be recorded by videographic and/or stenographic means before a

person qualified to administer oaths.

      You are invited to attend and participate to the extent of the applicable rules.

Dated:      March 5, 2014
           New York, NY

                        **CURTIS, MALLET-PREVOST,**
                        **COLT & MOSLE LLP**

                        By: ___*/s/  Peter J. Behmke*___
                        Turner P. Smith
                        L.P. Harrison 3rd
                        Peter J. Behmke
                        101 Park Avenue
                        New York, New York 10178
                        (212) 696-6000

                        *Counsel for the Lehman Plaintiffs*

## Schedule A

1.      Citibank's[1] request for $500 million on September 14, 2008, including:
(i) the purpose of the request; (ii) internal and external communications related to the request;
(iii) the mechanics as to how and when the transfer of the $500 million was effected; (iv) any
subsequent movement of the $500 million (or any portion thereof); and (v) Citibank's decision to
setoff against $1 billion held in Lehman Brothers International, Inc.'s ("LBI") account, number
3054-4658, including the basis and calculation of the purported $1 billion obligation.

2.      Citibank's September 14, 2008 setoff of $512 million of purported
obligations against the $2 billion of LBHI funds, and its subsequent reversal thereof, including:
(i) the purported reasons for the setoff and subsequent reversal; (ii) the nature and calculation of
the purported LBHI obligations against which the setoff was taken; and (iii) any internal or
external communications related to the setoff and subsequent reversal.

3.      Citibank's September 19, 2008 debit of $4,510,919 held in an account
owned by LBCC for purported obligations of Lehman Brothers International (Europe) ("LBIE"),
including: (i) the contractual or legal basis for the debit; (ii) the timing and mechanics of the
debit; (iii) the nature and calculation of the purported LBIE obligation; (iv) the basis for
Citibank's decision to effectuate the debit; and (v) any communications regarding the setoff.

4.      Citibank's inclusion of a purported $9,823,000 payable from LBSF to
Citibank on the Continuous Linked Settlement ("CLS") "pay in pay out schedule" dated
September 15, 2008 and related debit, including: (i) the basis for Citibank's claim that this
$9,823,000 is owed by LBSF to Citibank pursuant to the CLS agreement; (ii) the
contemporaneous decision of Citibank to include this alleged $9.8 million payable on the

---

[1]      Capitalized terms used in this Schedule shall have the meanings ascribed to them in the attached
Rule (30)(b)(6) Deposition Notice to Citibank, N.A., *et al.*

September 15, 2008 CLS "pay in pay out" schedule and any related debit, including any communications in that regard; (iii) the transfer by CGML to LBSF on September 2, 2008 of $9,823,000 pursuant to a credit default swap transaction with reference number 20345417 through the Fed-Wire system; (iv) the reversal of such payment on September 10, 2008 through the Fed-Wire system; (v) the September 8, 2008 payment by CGML to LBSF of $9,823,000 through the CLS system; and (vi) the basis for Citibank's claim that the $9.8 million is a "cash break" that CGML owed LBSF under the parties' credit default swap agreement.

     5.     Citibank's claims for fees that it applied to trades transacted in the market to unwind the currency positions of LBI, LBCC, LBSF and LBIE, beginning on September 19, 2008 and thereafter (the "Commercial Spreads"), including: (i) the contractual or other legal basis for Citibank's claim that it is entitled to charge Lehman for Commercial Spreads; (ii) the basis and calculation of such Commercial Spreads; (iii) the basis and calculation of fees actually incurred by Citibank in unwinding Lehman's positions; (iv) the basis and calculation of any profits or increased profits and losses realized by Citibank's traders or personnel who were involved in the unwinding of Lehman's positions during the period in which the unwind occurred, whether directly realized in connection with the unwind of Lehman's positions or otherwise; and (v) the process by which Citibank closed out Lehman's positions.

     6.     Citibank's claims for amounts purportedly attributable to the costs that it allegedly incurred in (or payables resulting from) carrying short positions of LBI, LBCC, LBSF and LBIE before unwinding them, netted against the gains on carrying each respective Lehman entities' long currency positions (the "Costs of Carry"), including: (i) the contractual or other legal basis for Citibank's claim that it is entitled to charge these Lehman entities for Costs of Carry; (ii) the basis and calculation of each Cost of Carry claimed by Citi with respect to these Lehman entities.

## CERTIFICATE OF SERVICE

The undersigned, an attorney, hereby certifies that, on March 5, 2014, a true and correct copy of the foregoing RULE 30(b)(6) DEPOSITION NOTICE was served by e-mail on the parties listed below:

Claudia Hammerman, Esq. – CHammerman@paulweiss.com
Stephen J. Shimshak, Esq. – SShimshak@paulweiss.com
William. Clareman, Esq. – WClareman@paulweiss.com
George Kroup, Esq. – GKroup@paulweiss.com

PAUL, WEISS, RIFKAND, WHARTON & GARRISON LLP
51 West 52nd Street
New York, New York 10019
*Counsel for Citibank, N.A.*


D. Ross Martin, Esq. – Ross.Martin@ropesgray.com
James A. Wright, Esq. – James.Wright@ropesgray.com
Lisa Coyle, Esq. – Lisa.Coyle@ropesgray.com
Michael Jo, Esq. – Michael.Jo@ropesgray.com
Catherine Mondell, Esq. – Catherine.Mondell@ropesgray.com

ROPES & GRAY LLP
1211 Avenue of the Americas
New York, NY 10036
*Counsel for FYI Ltd., FFI Fund Ltd., and Olifant Fund Ltd.*


Daniel Cunningham, Esq. – danielcunningham@quinnemanuel.com
Andrew J. Rossman, Esq. – andrewrossman@quinnemanuel.com
James C. Tecce, Esq. – jamestecce@quinnemanuel.com
Diane C. Hutnyan, Esq. – dianehutnyan@quinnemanuel.com

QUINN EMANUEL URQUHART & SULLIVAN LLP
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017-2543
*Special Counsel for Official Committee of Unsecured Creditors of Lehman Brothers Holdings Inc.*

*/s/ Ada V. Añon*

17875064v1

Exhibit 8

# CURTIS, MALLET-PREVOST, COLT & MOSLE LLP

| | | | |
|---|---|---|---|
| ALMATY | ISTANBUL | | |
| ASHGABAT | LONDON | | |
| ASTANA | MEXICO CITY | ATTORNEYS AND COUNSELLORS AT LAW | TELEPHONE 212-696-6000 |
| BEIJING | MILAN | | FACSIMILE 212-697-1559 |
| BUENOS AIRES | MUSCAT | 101 PARK AVENUE | WWW.CURTIS.COM |
| DUBAI | PARIS | NEW YORK, NEW YORK 10178-0061 | |
| FRANKFURT | WASHINGTON, D.C. | | |
| HOUSTON | | | |

WRITER'S DIRECT:
TEL.: 212-696-6146
E-MAIL: PBEHMKE@CURTIS.COM

March 10, 2014

**BY E-MAIL**

Claudia Hammerman, Esq.
Paul, Weiss, Rifkand, Wharton & Garrison LLP
1285 Avenue of the Americas
New York, New York 10019

Re:    *Lehman Brothers Holdings Inc., et al. v. Citibank, N.A., et al.,*
       **Adv. Proc. No. 12-01044 (S.D.N.Y.) (SCC)**

Dear Claudia:

We write in furtherance of our correspondence regarding deposition planning. Plaintiffs intend to depose the former and current employees of Citibank, N.A. listed on the enclosed Schedule A. Please note that Plaintiffs reserve the right to modify or supplement this list of deponents.

In accordance with your letter of December 17, 2013, we presume that Paul Weiss will represent each of these witnesses. Please confirm by March 21 that Paul Weiss will represent each of these individuals or, to the extent that is not the case, please provide us with the contact information for any witnesses' counsel.

Sincerely,

Peter J. Behmke

cc:    Counsel of Record

## Schedule A

1.   Roger Barnes
2.   Robert Blackburn
3.   Catherine Devlin
4.   Richard Evans
5.   Reto Faber
6.   Thomas Fontana
7.   Christopher Foskett
8.   Gregory Frenzel
9.   Paul Galant
10.  John Havens
11.  Edward Hewitt
12.  Thomas Isaac
13.  Brian Leach
14.  Katherine Lukas
15.  Michael Mauerstein
16.  Thomas Obermaier
17.  Jerry Olivo
18.  Vikram Pandit
19.  Patrick Ryan
20.  Paul Salariya
21.  Thomas Schwartz
22.  Zion Shohet
23.  Richard Stuckey
24.  Melissa Torres
25.  James Trefry
26.  Vivek Tyagi

Exhibit 9

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

1285 AVENUE OF THE AMERICAS
NEW YORK, NEW YORK 10019-6064

TELEPHONE (212) 373-3000

LLOYD K. GARRISON (1946-1991)
RANDOLPH E. PAUL (1946-1956)
SIMON H. RIFKIND (1950-1995)
LOUIS S. WEISS (1927-1950)
JOHN F. WHARTON (1927-1977)

WRITER'S DIRECT DIAL NUMBER

212.373.3321

WRITER'S DIRECT FACSIMILE

212.492.0321

WRITER'S DIRECT E-MAIL ADDRESS

chammerman@paulweiss.com

UNIT 3601, OFFICE TOWER A, BEIJING FORTUNE PLAZA
NO. 7 DONGSANHUAN ZHONGLU
CHAOYANG DISTRICT
BEIJING 100020
PEOPLE'S REPUBLIC OF CHINA
TELEPHONE (86-10) 5828-6300

12TH FLOOR, HONG KONG CLUB BUILDING
3A CHATER ROAD, CENTRAL
HONG KONG
TELEPHONE (852) 2846-0300

ALDER CASTLE
10 NOBLE STREET
LONDON EC2V 7JU, U.K.
TELEPHONE (44 20) 7367 1600

FUKOKU SEIMEI BUILDING
2-2 UCHISAIWAICHO 2-CHOME
CHIYODA-KU, TOKYO 100-0011, JAPAN
TELEPHONE (81-3) 3597-8101

TORONTO-DOMINION CENTRE
77 KING STREET WEST, SUITE 3100
P.O. BOX 226
TORONTO, ONTARIO M5K 1J3
TELEPHONE (416) 504-0520

2001 K STREET, NW
WASHINGTON, DC 20006-1047
TELEPHONE (202) 223-7300

500 DELAWARE AVENUE, SUITE 200
POST OFFICE BOX 32
WILMINGTON, DE 19899-0032
TELEPHONE (302) 655-4410

MATTHEW W. ABBOTT
ALLAN J. ARFFA
ROBERT A. ATKINS
DAVID J. BALL
JOHN F. BAUGHMAN
LYNN B. BAYARD
DANIEL J. BELLER
CRAIG A. BENSON
MITCHELL L. BERG
MARK S. BERGMAN
BRUCE BIRENBOIM
H. CHRISTOPHER BOEHNING
ANGELO BONVINO
JAMES L. BROCHIN
RICHARD J. BRONSTEIN
DAVID W. BROWN
SUSANNA M. BUERGEL
PATRICK S. CAMPBELL*
JESSICA S. CAREY
JEANETTE K. CHAN
YVONNE Y. F. CHAN
LEWIS R. CLAYTON
JAY COHEN
KELLEY A. CORNISH
CHRISTOPHER J. CUMMINGS
CHARLES E. DAVIDOW
DOUGLAS R. DAVIS
THOMAS V. DE LA BASTIDE III
ARIEL J. DECKELBAUM
ALICE BELISLE EATON
ANDREW J. EHRLICH
GREGORY A. EZRING
LESLIE GORDON FAGEN
MARC FALCONE
ROSS A. FIELDSTON
ANDREW C. FINCH
BRAD J. FINKELSTEIN
BRIAN P. FINNEGAN
ROBERTO FINZI
PETER E. FISCH
ROBERT C. FLEDER
MARTIN FLUMENBAUM
ANDREW J. FOLEY
HARRIS B. FREIDUS
MANUEL S. FREY
ANDREW L. GAINES
KENNETH A. GALLO
MICHAEL E. GERTZMAN
ADAM M. GIVERTZ
SALVATORE GOGLIORMELLA
ROBERT D. GOLDBAUM
NEIL GOLDMAN
ERIC S. GOLDSTEIN
ERIC GOODISON
CHARLES H. GOOGE, JR.
ANDREW G. GORDON
UDI GROFMAN
NICHOLAS GROOMBRIDGE
BRUCE A. GUTENPLAN
GAINES GWATHMEY, III
ALAN S. HALPERIN
JUSTIN G. HAMILL
CLAUDIA HAMMERMAN
GERARD E. HARPER
BRIAN S. HERMANN
ROBERT M. HIRSH
MICHELE HIRSHMAN
MICHAEL S. HONG
DAVID S. HUNTINGTON
LORETTA A. IPPOLITO
JAREN JANGHORBANI

MEREDITH J. KANE
ROBERTA A. KAPLAN
BRAD S. KARP
PATRICK N. KARSNITZ
JOHN C. KENNEDY
ALAN W. KORNBERG
DANIEL J. KRAMER
DAVID K. LAKHDHIR
STEPHEN P. LAMB*
JEFFREY D. MARELL
MARCO V. MASOTTI
EDWIN S. MAYNARD
DAVID W. MAYO
ELIZABETH R. McCOLM
MARK F. MENDELSOHN
WILLIAM B. MICHAEL
TOBY S. MYERSON
CATHERINE NYARADY
JANE B. O'BRIEN
ALEX YOUNG K. OH
BRAD R. OKUN
KELLEY D. PARKER
MARC E. PERLMUTTER
VALERIE E. RADWANER
CARL L. REISNER
WALTER G. RICCIARDI
WALTER RIEMAN
RICHARD A. ROSEN
ANDREW N. ROSENBERG
JACQUELINE P. RUBIN
RAPHAEL M. RUSSO
JEFFREY D. SAFERSTEIN
JEFFREY B. SAMUELS
DALE M. SARRO
TERRY E. SCHIMEK
KENNETH M. SCHNEIDER
ROBERT B. SCHUMER
JAMES H. SCHWAB
JOHN M. SCOTT
STEPHEN J. SHIMSHAK
DAVID R. SICULAR
MOSES SILVERMAN
STEVEN SIMKIN
JOSEPH J. SIMONS
MARILYN SOBEL
AUDRA J. SOLOWAY
SCOTT M. SONTAG
TARUN M. STEWART
ERIC ALAN STONE
AIDAN SYNNOTT
ROBYN F. TARNOFSKY
MONICA K. THURMOND
DANIEL J. TOAL
LIZA M. VELAZQUEZ
MARIA T. VULLO
ALEXANDRA M. WALSH*
LAWRENCE G. WEE
THEODORE V. WELLS, JR.
BETH A. WILKINSON
STEVEN J. WILLIAMS
LAWRENCE I. WITDORCHIC
MARK B. WLAZLO
JULIA MASON WOOD
JORDAN E. YARETT
KAYE N. YOSHINO
TONG YU
TRACEY A. ZACCONE
T. ROBERT ZOCHOWSKI, JR.

*NOT ADMITTED TO THE NEW YORK BAR

March 13, 2014

**By Email**

Diane C. Hutnyan
Quinn Emanuel
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017-2543

Peter Behmke
Curtis, Mallet-Prevost, Colt & Mosle LLP
101 Park Avenue
New York, New York 10178

*Lehman Brothers Holdings Inc., et al. v. Citibank, N.A., et al.*
Adv. Proc. No. 12-01044 (JMP)

Dear Diane and Peter:

We write further to our March 11, 2014 meet-and-confer regarding deposition planning, and to address the topic of third party depositions (which we did not discuss on March 11).

As a general matter, we feel that yesterday's meet-and-confer was productive. Although we expect that the deposition process over the next few months will be intense and, at times, complicated, we hope that the parties can continue to work together to make it as efficient and productive as possible. Set forth below is a summary of the items we discussed during our call and what we understand to be the parties' current postures with respect to each item.

I.    <u>Witnesses Represented by Plaintiffs' Counsel</u>

On December 17, 2013, we sent a letter setting out an initial list of potential deponents and asking you to tell us whether plaintiffs' counsel or separate

counsel will represent them. We have since exchanged multiple letters addressing this topic.

During yesterday's call we discussed two categories of former Lehman employees: those located in New York and those located abroad. As to former Lehman employees who are based in New York, you told us that plaintiffs' counsel would represent Steven Engel, James Killerlane, and Sean Rahavy. You stated that plaintiffs will likely also represent Irina Veksler, although you have not yet confirmed this, and that you have not yet been able to reach Vincent DiMassimo. You told us that Scott Alvey, Robert Azerad, Jonathan Debrich, Dan Fleming, David Forsyth, and Craig Jones are currently employed by Barclays, and that, based on your discussions with Barclays' counsel (David Nelson at Boies Schiller & Flexner), these witnesses will be represented by Boies Schiller. Finally, you told us that Julie Boyle is critically ill, and will not be able to sit for a deposition. Schedule A to this letter summarizes our understanding, based on our correspondence and yesterday's call, of the witnesses who are currently represented by plaintiffs' counsel or subject to process in New York. Please confirm that this summary is accurate.

As to former Lehman employees located abroad, you stated that you have contacted Joseph Igoe, Carlo Pellerani, Aireen Phang, and Huw Rees, and they have all responded that they will not sit for deposition voluntarily. You stated, however, that if depositions of these witnesses are compelled via the Hague Convention, these witnesses may choose to be represented by plaintiffs' counsel at deposition. You told us that, in addition to these witnesses, you have contacted some, but not all, of the foreign witnesses listed in our March 4 letter whom we expect to testify about derivatives-related issues (apparently, you are having difficulty locating some of these former Lehman employees). We asked whether you could provide a sense of your timetable for contacting the remaining witnesses and you stated that you will provide rolling updates as information becomes available. We expressed our view that it is important to contact these people as soon as possible because pursuing their depositions via the Hague Convention is time-consuming and we need to know soon whether that is the route we will need to pursue.

Finally, we asked about your experience seeking testimony from Ian Lowitt and Paolo Tonucci in connection with other adversary proceedings. Specifically, we asked if these two witnesses had appeared voluntarily in prior proceedings, or if they had required the parties to compel their testimony via the Hague Convention. You told us that both gave testimony voluntarily but that Mr. Tonucci had previously appeared in London, following significant negotiation; you also noted that Mr. Tonucci now resides in Australia. Given that Messrs. Lowitt and Tonucci are the only persons plaintiffs have identified as having witnessed Citi's alleged oral waiver of its *setoff rights* in the $2 billion deposit, we assume that plaintiffs will be seeking testimony from these witnesses and we asked when and how plaintiffs intended to initiate the process to obtain their testimony. You responded that plaintiffs have not yet determined when or how they will pursue testimony from these witnesses. We observed that it makes sense to coordinate, as we do not want to duplicate efforts, but we also do not want to overlook important

PAUL, WEISS, RIFKIND, WHARTON & GARRISON

Diane C. Hutnyan & Peter Behmke                                                    3

people or delay initiating any time-consuming processes (via the Hague convention or its
analogues) that may be necessary. You agreed that it makes sense to coordinate, but
stated that you have not yet decided how you plan to pursue these witnesses' testimony,
and that you will get back to us on this issue. We hope that you do so in relatively short
order.

## II.    Depositions Requested by Plaintiffs

With respect to the March 10 letter from Curtis Mallet, providing notice
that you wish to depose twenty-six current and former Citi employees, we advised that
we would contact the former employees on the list and determine whether they will be
represented by Paul, Weiss or by separate counsel. We also observed that some of the
witnesses you have noticed are or were among the most senior officers at Citi ("Citi
seniors") and have, to our knowledge, little or no personal involvement with the issues in
this case. Because we believe you can obtain information sufficient to your purposes by
deposing the obvious central (and lower level) players in the case, we asked that you
depose the more knowledgeable, less senior Citi witnesses first, and reserve your rights to
depose Citi seniors until later. At the very least, this will streamline the areas that might
remain to be covered in the depositions of any Citi seniors. You stated that you agreed in
principal to this approach, and that it was your present intention to proceed with
depositions of lower-level Citi employees in the first instance. You reserved your right to
seek the testimony of Citi senior executives at a later date, and we reserved our right to
seek a protective order to the extent we viewed testimony from such Citi seniors to be
needlessly duplicative, cumulative or irrelevant.

## III.    Plaintiffs' Rule 30(b)(6) Deposition Notices

We also discussed the 30(b)(6) deposition notices plaintiffs served on
March 5. As a preliminary matter, we expressed our general view that Citi witnesses
should be deposed only once (and by only one of plaintiffs' lawyers, whether from Curtis
Mallet or Quinn Emanuel); that is, if Citi chooses to designate a witness with independent
knowledge of the facts in dispute for one or more of plaintiffs' 30(b)(6) topics, plaintiffs
will have a single opportunity to question that witness on both the 30(b)(6) topics and the
witness's direct knowledge. You agreed that, in general, 30(b)(6) depositions and
individual depositions should be combined in order to avoid unnecessarily burdening any
witness, but reserved your right to revisit this general understanding on a case-by-case
basis if the need arose. You also stated that you would have to consider our request that
only one lawyer depose each witness.

Regarding the 30(b)(6) topics listed in the notice prepared by Curtis
Mallet, we noted that Tom Fontana (one of the 26 witnesses you noticed in the March 10
letter) is likely the person most knowledgeable with respect to topics one and two
(concerning the $500 million transfer from LBHI to LBI on September 14 and Citi's
partial setoff of the $2 billion deposit and subsequent reversal). You agreed that it will
likely make sense to address these topics during Mr. Fontana's deposition, assuming he is

PAUL, WEISS, RIFKIND, WHARTON & GARRISON

Diane C. Hutnyan & Peter Behmke                                              4

the witness we designate on these issues. We suggested that topics three and four (concerning a September 19 transfer from an LBCC account and a payable owed by CGML to LBSF, respectively) appear very detailed and might better be addressed in writing in the first instance. You agreed that some topics could probably be treated in writing, though you stated that you may still need a 30(b)(6) deposition following a written exchange.[1] We noted that Jeff Feig is likely the person most knowledgeable with respect to topic 5, concerning Citi's unwind of the CLS build-up incurred for various Lehman entities between September 15 and 19, 2008. We noted that, since Jeff Feig was a derivatives custodian and was Global Head of the G10 FX business at the time of the closeout, we expect that plaintiffs intend to depose him in his individual capacity in connection with derivatives issues (although we have not yet received notice from plaintiffs as to which derivatives-related witnesses they intend to depose). Finally, we noted that we will likely present expert testimony concerning topic number six, which addresses the costs that Citi incurred for carrying long and short CLS positions for Lehman prior to LBI's bankruptcy, and we can confirm that we have produced the underlying documents supporting our calculation of this component of the CLS claim.

Regarding the 30(b)(6) topics listed in the notice prepared by Quinn Emanuel, we expressed our view that the majority of these topics can be addressed—and are best addressed—by the individual witnesses plaintiffs choose to depose in connection with the derivatives close-out conducted by the various derivatives businesses.[2] As we explained, even with significant preparation no single person could give meaningful testimony on most of these topics across all of the derivatives businesses because the subject matter—including policies and procedures, databases and models—vary across the different derivatives businesses. For this reason, Citi would likely be required to designate a different individual from each business to address even a "single" topic identified by plaintiffs. Because plaintiffs doubtless will be seeking the individual deposition of a witness from each of the derivatives businesses, we suggested that the appropriate way to proceed was for plaintiffs to identify which individual depositions they intended to take because those persons likely also would be appropriate designees for the 30(b)(6) topics. Indeed, we note that the derivatives custodians include the heads of the Credit, SPG, GSM, PECD, Rates and FX businesses who will almost certainly be in a position to testify about many, if not all, of the topics in the notice in addition to testifying about the Lehman close-out. Since we assume plaintiffs will be seeking their

---

[1]    You recently requested additional custodians and search terms intended to capture documents associated with these transactions. (*See* March 10 letter from D. Mize to G. Kroup, at 3–4.) We are currently assessing your request. Should we agree to produce additional documents, any 30(b)(6) deposition on these topics should obviously be delayed until after production.

[2]    The exceptions we noted during the call were your topics fourteen and fifteen, which we explained we do not understand as drafted. You agreed that you would try to provide additional clarification regarding these topics.

PAUL, WEISS, RIFKIND, WHARTON & GARRISON

Diane C. Hutnyan & Peter Behmke                                                      5

individual depositions anyway, we will be able to designate their testimony in response to these 30(b)(6) topics—an efficient and routine way of proceeding in the Second Circuit.[3]

          In sum, we believe the efficient way to proceed is for you to depose Citi's derivatives traders—including head traders, from whom you will no doubt seek testimony—and other percipient witnesses concerning the policies, procedures, and practices in their particular businesses at Citi. This will give you the understanding you need regarding the topics in your 30(b)(6) notice, while avoiding needless multiplication and duplication of depositions. We will either designate specific testimony as Citi's corporate position from fact witnesses after their depositions have taken place, or designate the particular 30(b)(6) topics on which fact witnesses will testify prior to their depositions.

          You suggested that you understood our rationale but did not wish to identify derivatives-related fact witnesses for deposition prior to our designation of 30(b)(6) witnesses. Because you have articulated no reason that testimony from fact witnesses will be insufficient for the majority of topics in your notice, we see no reason to designate corporate representatives on those topics in a vacuum and without understanding which percipient witnesses plaintiffs will seek to depose from these businesses. Nevertheless, in order to avoid an impasse on this subject, we will agree to leave your 30(b)(6) deposition notice open until you have had an opportunity to depose Citi's witnesses with direct knowledge of Citi's derivatives trading businesses and the Lehman close-out. If, following those depositions, you feel that there are certain topics which have not been addressed to your satisfaction, we can revisit the issue at that time.

          Finally, without pointing to any specific documents, you suggested during our call that you require 30(b)(6) testimony at the outset of discovery in order to understand certain derivatives-related documents in Citi's production. Given the complexity of this case, we are of course sympathetic to this need, and we are open to helping you understand particular documents or types of documents generated by the various derivatives businesses at Citi. If you provide us more detail on the types of materials that you feel require further explanation right now—and cannot reasonably be addressed at the depositions of percipient witnesses—we will work with you to provide either (formal or informal) explanations of the documents and, if necessary, a witness who can help you along. In any event, such a request was not obvious on the face of your 30(b)(6) notice, which, for the most part, requests a Citi designee on various "policies and procedures." Moreover, to the extent you were seeking to rely on 30(b)(6) depositions to explain particular derivatives-related documents, you would be better served by identifying those documents for us in advance so that we can adequately prepare our witnesses.

---

[3]      *See, e.g., Dongguk University v. Yale University*, 270 F.R.D. 70, 75–79 (D. Conn. 2010); *Cipriani v. Dick's Sporting Goods, Inc.*, 2012 WL 5869818, at *2 (D. Conn. Nov. 19, 2012); *Bellinger v. Astrue*, 2011 WL 4529602, at *4 (E.D.N.Y. Sept. 28, 2011).

Diane C. Hutnyan & Peter Behmke                                                    6

### IV.    Limiting Depositions to a Reasonable Number

Finally, we asked whether plaintiffs would agree to set an upper limit on the number of fact witnesses deposed in this case. Although we do not recall counsel for Lehman replying, counsel for the Unsecured Creditors Committee responded that plaintiffs would probably not be willing to set such a limit. You did, however, ask us what number we would propose. We suggested that sixty fact depositions per side should be more than enough, considering that this case centers on the $2 billion deposit, for which there were fewer than fifteen central players, and the derivatives close-out, for which there were fewer than a dozen relevant businesses.[4] You agreed to consider our proposal.

At the end of the call, we agreed to send you preferred dates for scheduling depositions of witnesses whom you represent, and you agreed to tell us if they are available on those dates.

### V.    Third-Party Depositions

Although we did not discuss it on our call yesterday, we note that plaintiffs have scheduled the first of their third-party depositions for the last week of March, and they continue (essentially every day) throughout the month of April. Given that a number of these parties—including the big bank counterparties, ICAP, TriOptima, and Bloomberg—have not yet produced any documents in response to plaintiffs' subpoenas, we expect that plaintiffs intend to put off third party depositions until a later date. Please let us know, no later than Monday, March 17, whether plaintiffs intend to pursue any of these depositions on the date of notice, and if so, which ones.

*            *            *

We write without prejudice to any of defendants' rights, all of which are expressly reserved.

Very truly yours,

Claudia Hammerman

cc:    Counsel of Record

---

[4]   We note that the Federal Rules of Civil Procedure currently provide a default maximum of ten depositions per party, Fed. R. Civ. P. 30(a)(2), and proposed amendments would reduce that number to five. *See Preliminary Draft of Proposed Amendments to the Fed. R. of Bankr. & Civ. Proc.*, at 300, *available at* http://www.uscourts.gov/uscourts/rules/preliminary-draft-proposed-amendments.pdf. Sixty depositions per side, not including the thirty third-party depositions plaintiffs have noticed, is more than reasonable, even for a case of this size.

PAUL, WEISS, RIFKIND, WHARTON & GARRISON

## Schedule A

1. Scott Alvey (Boies, Schiller & Flexner LLP)

2. Robert Azerad (Boies, Schiller & Flexner LLP)

3. Janet Birney (Plaintiffs' Counsel)

4. Debra Cash (Plaintiffs' Counsel)

5. Emil Cornejo (Richards, Kibbe & Orbe LLP)

6. Aileen Daversa (Plaintiffs' Counsel)

7. Jonathan Debrich (Boies, Schiller & Flexner LLP)

8. Daniel Ehrmann (Plaintiffs' Counsel)

9. Steven Engel (Plaintiffs' Counsel)

10. Eric Felder (Debevoise & Plimpton LLP)

11. Daniel Fleming (Boies, Schiller & Flexner LLP)

12. David Forsyth (Boies, Schiller & Flexner LLP)

13. Craig Jones (Boies, Schiller & Flexner LLP)

14. James Killerlane (Plaintiffs' Counsel)

15. Chris O'Meara (Plaintiffs' Counsel)

16. Sean Rahavy (Plaintiffs' Counsel)

Exhibit 10

**quinn emanuel** trial lawyers | los angeles

865 South Figueroa Street. 10th Floor, Los Angeles, California 90017-2543 | TEL (213) 443-3000 FAX (213) 443-3100

WRITER'S DIRECT DIAL NO.
**(213) 443-3666**

WRITER'S INTERNET ADDRESS
dianehutnyan@quinnemanuel.com

March 17, 2014

**VIA E-MAIL AND HAND DELIVERY**
Claudia L. Hammerman, Esq.
Paul, Weiss, Rifkind, Wharton & Garrison LLP
1285 Avenue of the Americas
New York, NY 10019-6064

     Re:    *Lehman Brothers Holdings Inc., et al. v. Citibank, N.A., et al.*
           Adv. Proc. No. 12-01044(JMP)

Dear Claudia,

     We write in response to certain issues addressed in Citi's March 13, 2014 letter. At the outset, we agree that the March 11 meet and confer was productive notwithstanding the parties' disagreements. We look forward to continuing the meet and confer process as the parties continue to work to schedule depositions and complete fact discovery.

    I.    **Rule 30(b)(6) Depositions**

     On March 5, plaintiffs served Rule 30(b)(6) deposition notices to Citi. With respect to the derivatives-related notice that plaintiffs served on Citi, plaintiffs are seeking corporate testimony regarding, *inter alia*, the various systems, policies and practices that Citi used or relied on in connection with managing and valuing its derivatives positions in 2008. Citi does not dispute the relevance of this information, which will provide a baseline understanding of Citi's derivatives business and provide a point of comparison from which to understand the manner in which Citi then valued its terminated transactions with Lehman. Nonetheless, at our meet and confer and Citi's March 13 letter, you indicated that Citi will not designate any corporate representative to testify on the topics identified in the derivatives-related notice but instead will require plaintiffs to first identify or take individual 30(b)(1) depositions of Citi's fact witnesses. You further indicated that only after plaintiffs have done so will Citi either designate specific testimony as Citi's corporate position or

---

**quinn emanuel urquhart & sullivan, llp**
NEW YORK | SAN FRANCISCO | SILICON VALLEY | CHICAGO | WASHINGTON, DC | LONDON | TOKYO | MANNHEIM | MOSCOW | HAMBURG | PARIS

Claudia L. Hammerman, Esq.
March 17, 2014
Page 2

designate the particular 30(b)(6) topics on which fact witnesses will testify prior to their deposition.
This is unacceptable.

Federal Rule of Civil Procedure 30(b)(6) specifies that, when served with a 30(b)(6) notice,
"[t]he *named organization* must … designate one or more officers, directors, or managing agents, or
designate other persons who consent to testify on its behalf," and any such representative "must
testify about information known or reasonably available to the organization" on the topics contained
in the notice (emphasis added). Consequently, in response to plaintiffs' Rule 30(b)(6) notice, Citi is
required to designate one or more representatives to provide corporate testimony on the topics that
plaintiffs have noticed, and is not empowered to impose prerequisites to those depositions. *See
Reilly v. Natwest Markets Group Inc.*, 181 F.3d 253, 268 (2d Cir. 1999) ("Under Rule 30(b)(6),
when a party seeking to depose a corporation announces the subject matter of the proposed
deposition, the corporation must produce someone familiar with that subject. … To satisfy Rule
30(b)(6), the corporate deponent has an affirmative duty to make available such number of persons
as will be able to give complete, knowledgeable and binding answers on its behalf.") (omitting
internal quotation marks and citations).

While we share your goal of making depositions as efficient as possible, we do not
understand how Citi's refusal to designate corporate representatives until later, if ever, helps to
achieve that result. You are correct that plaintiffs will be seeking individual depositions of various
derivatives traders, among others, and we assume, as you point out, that these witnesses may have
some information that is responsive to the 30(b)(6) topics. If Citi's concern is that a witness
designated as a 30(b)(6) representative will have to sit for a deposition a second time in an individual
capacity, Citi can rest assured that plaintiffs will make reasonable efforts to avoid that result.[1] If
instead, Citi is concerned that, by designating first, as it is required to do, it may designate a witness
that plaintiffs were not intending to depose (thereby increasing the number of witnesses), that
concern is not a ground on which to refuse to respond to a 30(b)(6) notice. That concern is also
seemingly inconsistent with Citi's assertion that testimony relating to the 30(b)(6) notice would
come from its derivatives custodians, as it should not be unreasonable to expect that all those
custodians will be deposed. For Citi to respond to the 30(b)(6) notice thus would not be inefficient.
On the other hand, it would be inefficient for plaintiffs to have to take scores of individual
depositions, which could result in volumes of "I don't knows," to piece together a potentially
incomplete understanding of the fundamental processes of Citi's derivatives business during the

---

[1]  For this reason, Citi's citation to *Cipriani v. Dick's Sporting Goods, Inc.*, 2012 WL 5869818, at *2
(D. Conn. Nov. 19, 2012) and *Bellinger v. Astrue*, 2011 WL 4529602, at *4 (E.D.N.Y. Sept. 28, 2011) is
unpersuasive. In those cases, unlike here, 30(b)(6) depositions were being sought that would have required
the witnesses potentially to appear multiple times. Citi's citation to *Dongguk Univ. v. Yale Univ.*, 270 F.R.D.
70, 75-79 (D.Conn. 2010), is similarly unconvincing. In that case, 30(b)(6) depositions were tabled primarily
because they related to "communications" or "statements," discovery over which in that case was more
efficiently accomplished through individual depositions and the production of those very communications and
statements.

Claudia L. Hammerman, Esq.
March 17, 2014
Page 3

relevant time period, when a handful of corporate depositions would provide a complete picture of those topics at the start and help to frame the remainder of fact discovery.[2] This is the most efficient manner in which to proceed. *See, e.g.,* 8A Fed. Prac. & Proc. Civ. § 2103 (3d ed.) ("[T]here may be much reason for use of a Rule 30(b)(6) deposition early in many cases to obtain information on the electronic information systems employed by the corporation before launching broad-gauged discovery of electronically stored information.").

Accordingly, please advise if, in fact, Citi will comply with Rule 30 and designate witnesses for plaintiffs' topics. Absent proper and prompt designation, we will seek the Court's assistance.

Also, please note that, as we indicated during the meet and confer, we would like to proceed with these depositions at the outset. In that regard, the document we previously served incorrectly noticed the deposition for May 5. While we look forward to working with you on scheduling so as not to unduly inconvenience Citi's witnesses, in the interest of making clear our desire not to delay the 30(b)(6) depositions, we enclose a corrected 30(b)(6) notice, which notices the deposition for April 1, 2014.

## II.    Limiting The Number Of Depositions

We have considered Citi's proposal to limit each side to sixty fact depositions, and we can confirm that plaintiffs do not agree to set a limitation on the number of fact depositions the parties may take. Given the complexity of the case, the number of products at issue, the overall amounts at stake, and Citi's failure to produce certain organization charts and other information needed to select individual deponents with any confidence, placing a restriction on the number of fact depositions, at least at this juncture, is wholly inappropriate.

---

[2]    *See, e.g., Dongguk Univ.,* 270 F.R.D. at 74 ("A party may also have an interest in getting the corporation's testimony on an issue, rather than the testimony of an individual. In such a case, courts have allowed 30(b)(6) depositions in order to obtain testimony binding on the corporation even though that testimony was likely to essentially duplicate information which had already been stated in an individual deposition."); *New Jersey v. Sprint Corp.,* 2010 WL 610671, at *2 (D. Kan. Feb. 19, 2010) ("The testimony provided by a corporate representative at a 30(b)(6) deposition binds the corporation. This is quite unlike a deposition of an employee of that corporation, which is little more than that individual employee's view of the case and is not binding on the corporation. Even if the substance of the information ultimately provided mirrors that of the testimony given by [a corporation's] former directors and employees, plaintiff still is entitled to tie down the definitive positions of [the corporation] itself, rather than that of the individuals who work for [the corporation]."); *Steinman v. Spinal Concepts, Inc.,* 2007 WL 4198186, at *6 (W.D.N.Y. Nov. 7, 2007) (sanctioning defendant for producing only individual witnesses and failing to designate a 30(b)(6) witness, because "[w]hile plaintiffs deposed these witnesses extensively and these witnesses may have been informative, they did not expressly step into the corporate defendant's shoes as would a Rule 30(b)(6) representative so as to make their answers be the defendant's binding answers").

Claudia L. Hammerman, Esq.
March 17, 2014
Page 4

### III.    <u>Third-Party Depositions</u>

In the March 13 letter, Citi requested confirmation regarding whether plaintiffs intend to proceed with the third-party depositions noticed in the coming weeks. We can inform you that plaintiffs will not proceed with the third-party depositions scheduled for the week of March 24, 2014, but intend to re-schedule those depositions. We expect to advise you promptly regarding the remaining third-party depositions currently scheduled for the end of March and in April.

Kind regards,

*Diane C. Hutnyan /BJ*

Diane C. Hutnyan

Encl.

cc:    Rex Lee, Esq. (via email)
       Ellison Ward, Esq. (via email)
       Peter Behmke, Esq. (via email)
       J. Derek Mize, Esq. (via email)
       William A. Clareman, Esq. (via email)
       Erika Berg, Esq. (via email)
       James Wright, Esq. (via email)

QUINN EMANUEL
URQUHART & SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, New York 10010-1603
*Counsel for the Official Committee of Unsecured
Creditors of Lehman Brothers Holdings Inc.*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------ X

| | |
|---|---|
| In re: : | Chapter 11 |
| : | Case No. 08-13555 (JMP) |
| LEHMAN BROTHERS HOLDINGS INC., *et al.*, : | |
| : | |
| Debtors. : | |

------------------------------------------------------------ X

| | |
|---|---|
| LEHMAN BROTHERS HOLDINGS INC., LEHMAN : | |
| BROTHERS SPECIAL FINANCING INC., LEHMAN : | |
| BROTHERS COMMODITY SERVICES INC., LEHMAN : | |
| BROTHERS COMMERCIAL CORP. and : | |
| OFFICIAL COMMITTEE OF UNSECURED : | |
| CREDITORS OF LEHMAN BROTHERS HOLDINGS : | |
| INC., : | |
| Plaintiffs : | |
| : | |
| : | |
| -against- : | |
| : | Adversary Proceeding |
| : | |
| CITIBANK, N.A., CITIGROUP GLOBAL MARKETS : | No.: 12-01044 (JMP) |
| LTD., CITIGROUP FINANCIAL PRODUCTS INC., : | |
| CITIGROUP ENERGY INC., CITI CANYON LTD., CITI : | |
| SWAPCO INC., FYI LTD., FFI FUND LTD., and : | |
| OLIFANT FUND, LTD. : | |
| : | |
| : | |
| : | |
| Defendants and : | |
| Defendant Intervenors. : | |

------------------------------------------------------------ X

**PLAINTIFFS' CORRECTED RULE 30(b)(6)**
**DEPOSITION NOTICE TO CITIBANK *ET AL*.**

PLEASE TAKE NOTICE that, pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure, Plaintiffs Lehman Brothers Holdings Inc., Lehman Brothers Special Financing Inc., Lehman Brothers Commodity Services Inc., Lehman Brothers Commercial Corp., and Intervenor-Plaintiff Official Committee of Unsecured Creditors of Lehman Brothers Holdings Inc., by and through its attorneys, will take the deposition, upon oral examination, under oath, of Defendants Citibank, N.A., Citigroup Global Markets Ltd., Citigroup Financial Products Inc., Citigroup Energy Inc., Citi Canyon Ltd., and Citi Swapco Inc., through the officers, directors, agents, or other persons with the most knowledge concerning the topics listed in Schedule A hereto.  The deposition will commence at 9:30 a.m. on April 1, 2014 at 51 Madison Avenue, 22nd Floor, New York, New York 10010, or at such date, time, and place as is otherwise agreed to by the parties or ordered by the Court.  The deposition will be taken by a notary public or other authorized officer and will continue from day to day until completed at a future date or dates.

PLEASE TAKE FURTHER NOTICE that, pursuant to Federal Rule of Civil Procedure 30(b)(3), the deposition will be videotaped and recorded stenographically.

2

Dated:      New York, NY
             March 17, 2014

QUINN EMANUEL URQUHART & SULLIVAN LLP

By:    */s/ Andrew J. Rossman*

    Daniel Cunningham
    Andrew J. Rossman
    51 Madison Avenue
    New York, New York 10010

    Diane C. Hutnyan
    865 S. Figueroa St., 10th Floor
    Los Angeles, California 90017

*Special Counsel for the Official Committee Of Unsecured Creditors Of Lehman Brothers Holdings Inc.*

3

<u>**SCHEDULE A**</u>

<u>Definitions</u>

As used herein,

1. "Business Unit" means any front office, middle office, or back office function, desk, or group, including but not limited to any trading desks, risk management groups, operations units, collateral management groups, market making and non-market making groups, management trading books, proprietary trading groups, asset/liability management groups.

2. "Citi" means Citibank, N.A., Citigroup Global Markets Ltd., Citigroup Financial Products, Inc., Citigroup Energy Inc., Citi Canyon Ltd., and/or Citi Swapco Inc.

3. "Derivatives" means any transaction whose value is derived from an underlying asset, index, or other determinant of value, including but not limited to credit derivatives (including credit default swaps referred to as structured products and securitized products), interest rate derivatives, foreign exchange derivatives, equity derivatives, and commodity derivatives.

4. "Derivatives Information" means any information pertaining to Derivatives transactions, including but not limited to trade details, indications, bid/offers, pricing, mark to market values, risk management, profit and loss, performance management such as sales credits, profitability of individual transactions, profitability per counterparty, and collateral management of derivatives and related exposure including cash securities and exchange traded products.

<u>Examination Topics</u>

Each topic herein seeks information regarding the period from January 1, 2008 to December 31, 2008.  The topics on which examination is requested are:

1. The structure and organization of Citi's Derivatives business and operations, including but not limited to:

    (a) the structure and organization of all of Citi's Business Units engaged in Derivatives trading or Derivatives-related activities, including, but not

4

limited to, operations, sales and marketing, risk management, and
counterparty credit risk management; and

(b) the identification and description, including primary business purpose,
of each trading desk engaged in Derivatives trading, including but not
limited to identification of traders, sales staff/marketers, and other
personnel responsible for communicating with Derivative counterparties
and other Derivative market-makers.

2.      The identification and description of any systems or databases used by Citi to
        process, gather, and store Derivatives Information, or to which Citi contributed or
        provided Derivatives Information.

3.      The identification and description of any models, tools, or spreadsheets on which
        Citi trading, sales and marketing, or credit or risk management personnel relied in
        the daily trading, marketing, or risk management of Derivatives and related
        exposure.

4.      The identification and description of any outside services that Citi used or relied
        on for the management of Derivatives, including, but not limited to, any services
        used for purposes of trade compression, netting, or otherwise offsetting, reducing,
        or managing Derivatives and related exposure.

5.      Citi's policies and procedures for maintaining, archiving, indexing, and storing
        data related to Derivatives trades and positions, including, but not limited to,
        electronic and telephonic communications.

6.      Citi's policies and procedures regarding the authority of Citi's Derivatives desks
        to enter into trades with one another, including but not limited to which desks had
        such authority and which did not.

7.      Citi's policies and procedures for marking Derivatives trades to market, including
        but not limited to the sources and uses of mid-market values and other market
        data, and any adjustments made to market values, whether for trading, profit and
        loss, risk management, or collateral management purposes.

8.      Citi's policies and procedures for valuing Derivatives positions for financial
        reporting, management reporting, regulatory capital, and tax or accounting
        purposes, including but not limited to the use of mid-market values and other
        market data, compliance with FAS 157, any adjustments made to market values,
        and any control process for reviewing and adjusting marks on a daily, monthly or
        quarterly basis.

9.      Citi's policies and procedures for establishing reserves or valuation adjustments
        related to Derivatives trades, whether for trading, risk management, collateral

management, financial reporting, regulatory capital, tax, accounting, or other
purposes, including but not limited to the timing and frequency of such reserves.

10. Citi's policies and procedures regarding the measurement, valuation, or
management of counterparty credit risk for Derivatives trades, including but not
limited to the use of credit value adjustments ("CVA"), counterparty exposure
limits, trading in counterparty credit default swaps, hedging practices, and
collateralization.

11. Citi's policies and procedures for providing or receiving prices and quotations for
Derivatives trades to or from third parties, including but not limited to customers,
brokers, and market data providers.

12. Citi's policies and procedures for managing exposure with respect to Derivatives
trades, including the calculation and use of all metrics employed to measure such
exposure, such as DV01, CV01, value-at-risk ("VaR"), and any other potential
future exposure metrics.

13. Citi's policies and procedures for calculating profit-and-loss, sales credits, and
any other performance or compensation measurements for Business Units,
traders, salespersons, or other personnel involved in Derivatives transactions.

14. Citi's policies and procedures for processing Derivatives transactions in Citi's
ticketing, risk management, and accounting systems.

15. Citi's policies and procedures for managing the collection of cash related to
settlements of Derivatives positions.

## CERTIFICATE OF SERVICE

The undersigned, an attorney, hereby certifies that on March 17, 2014 a true and correct

copy of the foregoing CORRECTED RULE 30(b)(6) DEPOSITION NOTICE was caused to be

served by e-mail and hand delivery on the parties listed below:

Claudia Hammerman, Esq. – CHammerman@paulweiss.com

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
51 West 52nd Street
New York, New York 10019
*Counsel for Citibank, N.A.*

and by email and Federal Express on the parties listed below:

James A. Wright, Esq. – James.Wright@ropesgray.com

ROPES & GRAY LLP
1211 Avenue of the Americas
New York, New York 10036
*Counsel for FYI Ltd., FFI Fund Ltd., and Olifant Fund Ltd.*

Peter J. Behmke, Esq. – pbehmke@curtis.com

CURTIS, MALLET-PREVOST, COLT & MOSLE LLP
101 Park Avenue
New York, New York 10178
*Counsel for Lehman Plaintiffs*

*/s/ Rex Lee*

7

Exhibit 11

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

1285 AVENUE OF THE AMERICAS
NEW YORK, NEW YORK 10019-6064
TELEPHONE (212) 373-3000

LLOYD K GARRISON    (1946-1991)
RANDOLPH E PAUL    (1946 1956)
SIMON H RIFKIND    (1950 1995)
LOUIS S WEISS    (1927-1950)
JOHN F WHARTON    (1927-1977)

UNIT 3601 OFFICE TOWER A BEIJING FORTUNE PLAZA
NO 7 DONGSANHUAN ZHONGLU
CHAOYANG DISTRICT
BEIJING 100020
PEOPLE'S REPUBLIC OF CHINA
TELEPHONE (86-10) 5826-6300

12TH FLOOR HONG KONG CLUB BUILDING
3A CHATER ROAD CENTRAL
HONG KONG
TELEPHONE (852) 2846-0300

ALDER CASTLE
10 NOBLE STREET
LONDON EC2V 7JU  U K
TELEPHONE (44 20) 7367 1600

FUKOKU SEIMEI BUILDING
2-2 UCHISAIWAICHO 2-CHOME
CHIYODA-KU TOKYO 100-0011 JAPAN
TELEPHONE (81-3) 3597-8101

TORONTO DOMINION CENTRE
77 KING STREET WEST SUITE 3100
PO BOX 226
TORONTO ONTARIO M5K 1J3
TELEPHONE (416) 504-0520

2001 K STREET NW
WASHINGTON DC 20006-1047
TELEPHONE (202) 223-7300

500 DELAWARE AVENUE SUITE 200
POST OFFICE BOX 32
WILMINGTON DE 19899 0032
TELEPHONE (302) 655-4410

WRITER'S DIRECT DIAL NUMBER
212.373.3321

WRITER'S DIRECT FACSIMILE
212.492.0321

WRITER'S DIRECT E-MAIL ADDRESS
chammerman@paulweiss.com

MATTHEW W ABBOTT
ALLAN J ARFFA
ROBERT A ATKINS
DAVID J BALL
JOHN F BAUGHMAN
LYNN B BAYARD
CRAIG A BENSON
MITCHELL L BERG
MARK S BERGMAN
BRUCE BIRENBOIM
H CHRISTOPHER BOEHNING
ANGELO BONVINO
JAMES L BROCHIN
RICHARD J BRONSTEIN
DAVID W BROWN
SUSANNA M BUERGEL
PATRICK S CAMPBELL*
JESSICA S CAREY
JEANETTE K CHAN
YVONNE Y F CHAN
LEWIS R CLAYTON
JAY COHEN
KELLEY A CORNISH
CHRISTOPHER J CUMMINGS
CHARLES E DAVIDOW
DOUGLAS R DAVIS
THOMAS V DE LA BASTIDE III
ARIEL J DECKELBAUM
ALICE BELISLE EATON
ANDREW J EHRLICH
GREGORY A EZRING
LESLIE GORDON FAGEN
MARC FALCONE
ROSS A FIELDSTON
ANDREW C FINCH
BRAD J FINKELSTEIN
BRIAN P FINNEGAN
ROBERTO FINZI
PETER E FISCH
ROBERT C FLEDER
MARTIN FLUMENBAUM
ANDREW J FOLEY
HARRIS B FREIDUS
MANUEL S FREY
ANDREW L GAINES
KENNETH A GALLO
MICHAEL E GERTZMAN
ADAM M GIVERTZ
SALVATORE GOGLIORMELLA
ROBERT D GOLDBAUM
NEIL GOLDMAN
ERIC S GOLDSTEIN
ERIC GOODISON
CHARLES H GOOGE JR
ANDREW G GORDON
UDI GROFMAN
NICHOLAS GROOMBRIDGE
BRUCE A GUTENPLAN
GAINES GWATHMEY III
ALAN S HALPERIN
CLAUDIA HAMMERMAN
GERARD E HARPER
BRIAN S HERMANN
ROBERT M HIRSH
MICHELE HIRSHMAN
MICHAEL S HONG
DAVID S HUNTINGTON
LORETTA A IPPOLITO
JAREN JANGHORBANI

MEREDITH J KANE
ROBERTA A KAPLAN
BRAD S KARP
PATRICK N KARSNITZ
JOHN C KENNEDY
ALAN W KORNBERG
DANIEL J KRAMER
DAVID K LAKHDHIR
STEPHEN P LAMB*
JOHN E LANGE
DANIEL J LEFFELL
XIAOYU GREG LIU
JEFFREY D MARELL
MARCO V MASOTTI
EDWIN S MAYNARD
DAVID W MAYO
ELIZABETH R McCOLM
MARK F MENDELSOHN
WILLIAM B MICHAEL
TOBY S MYERSON
CATHERINE NYARADY
JANE B O'BRIEN
ALEX YOUNG K OH
BRAD R OKUN
KELLEY D PARKER
MARC E PERLMUTTER
VALERIE E RADWANER
CARL L REISNER
WALTER G RICCIARDI
WALTER RIEMAN
RICHARD A ROSEN
ANDREW N ROSENBERG
JACQUELINE P RUBIN
RAPHAEL M RUSSO
JEFFREY D SAFERSTEIN
JEFFREY B SAMUELS
DALE M SARRO
TERRY E SCHIMEK
KENNETH M SCHNEIDER
ROBERT B SCHUMER
JAMES H SCHWAB
JOHN M SCOTT
STEPHEN J SHIMSHAK
DAVID R SICULAR
MOSES SILVERMAN
STEVEN SIMKIN
JOSEPH J SIMONS
MARILYN SOBEL
AUDRA J SOLOWAY
SCOTT M SONTAG
TARUN M STEWART
ERIC ALAN STONE
AIDAN SYNNOTT
ROBYN F TARNOFSKY
MONICA K THURMOND
DANIEL J TOAL
LIZA M VELAZQUEZ
MARIA T VULLO
ALEXANDRA M WALSH*
LAWRENCE G WEE
THEODORE V WELLS JR
BETH A WILKINSON
STEVEN J WILLIAMS
LAWRENCE I WITDORCHIC
MARK B WLAZLO
JULIA MASON WOOD
JORDAN E YARETT
KAYE N YOSHINO
TRACEY A ZACCONE
T ROBERT ZOCHOWSKI JR

*NOT ADMITTED TO THE NEW YORK BAR

March 20, 2014

**By Email**

Diane C. Hutnyan
Quinn Emanuel
865 South Figueroa Street, 10th Floor
Los Angeles, CA  90017-2543

Peter Behmke
Curtis, Mallet-Prevost, Colt & Mosle LLP
101 Park Avenue
New York, New York 10178

*Lehman Brothers Holdings Inc., et al. v. Citibank, N.A., et al.*
Adv. Proc. No. 12-01044 (JMP)

Dear Diane and Peter:

We write in response to your March 17, 2014 letter regarding plaintiffs' derivatives-related Rule 30(b)(6) notice, and deposition planning more generally.

For several months now, defendants have been attempting to engage plaintiffs in a cooperative discussion regarding deposition scheduling. To that end, on March 4, 2014, we asked for a meet and confer to discuss deposition planning, and specifically invited a conversation regarding possible ways in which the parties might limit the overall burden of deposition discovery, particularly with respect to derivatives issues, either by limiting the number or duration of depositions. (*See* March 4, 2014 letter from C. Hammerman, at 3.) Instead of responding in kind to this request, on March 5, 2014, plaintiffs served two Rule 30(b)(6) deposition notices, one of which addressed derivatives issues and listed 15 subjects seeking all manner of information, including testimony regarding the systems and databases used for derivatives trading, pricing models used by the businesses, risk management for derivatives, third party services used by the businesses, intercompany trading policies, profit and loss policies, processes used

Doc# USI 9293633v3

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

Diane C. Hutnyan & Peter Behmke                                    2

for quoting and receiving prices from other market participants, counterparty credit limits, VaR limits, FAS 157 compliance, and many other things. The notice spanned all derivatives trading businesses at Citi, and requested that the depositions begin on May 5 (a return date that was later amended, on March 17, 2014, to April 1).

During our meet and confer on March 11, we explained that given the number of subjects and the numerous trading businesses at issue, responding to these topics could not possibly be done by a single witness, or even several witnesses. We therefore asked that plaintiffs begin identifying fact witnesses from whom testimony would be sought on derivatives issues, to enable defendants to designate, as appropriate, corporate representatives from among plaintiffs' deposition list to limit the overall burden and number of depositions that would be taken in this case. Plaintiffs refused this request, and have insisted instead that defendants "go first" by designating Rule 30(b)(6) witnesses in the first instance.

We are frustrated by plaintiffs' refusal to participate in good faith in a discussion regarding reasonable limits on derivatives discovery. At this stage, there is no legitimate reason for plaintiffs to insist on hiding the ball regarding which witnesses you wish to depose as part of a broader conversation about responding to the Rule 30(b)(6) notices. There is also no credible basis for plaintiffs to claim that the Rule 30(b)(6) depositions are a necessary first step for plaintiffs to decide which witnesses they need, as plaintiffs are, by now, well-acquainted with Citi's derivatives custodians and their respective roles in this case. Over the past several years, the parties have discussed the subject of derivatives custodians at length. At plaintiffs' request, Citi narrowed its initial responses to plaintiffs' interrogatory number 5 – which called for the identities of individuals knowledgeable about the close-out calculations – to individuals that played a "central role" in calculating the claims, and on May 9, 2013, we provided plaintiffs with an annotated list of custodians describing their job functions. (See Attachment A hereto.) In May and August 2013, we provided plaintiffs with additional information in the form of organizational charts for the derivatives businesses that we were able to locate. (See Attachment B hereto, collecting organizational charts.) Later, when plaintiffs requested that 32 additional derivatives custodians be added to the case, we agreed over protest, simply to move the discovery process forward.

Rather than proceed at this stage to schedule derivatives depositions in an orderly and cooperative manner, however, you have instead focused singularly on the staggeringly broad Rule 30(b)(6) notices, for which many different witnesses will need to be produced. Therefore, in order to move this process forward, Citi proposes to proceed as follows: in response to plaintiffs' Rule 30(b)(6) notices, we will designate senior traders and business heads – such as Brian Archer, Mickey Bhatia, Marc Pagano, Jeff Feig, Steve Compton, Stuart Staley, Eliot Rubenzahl, John Heppolette and Frederic Jallot – as Citi's corporate representatives to respond to those topics identified in plaintiffs'

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

Diane C. Hutnyan & Peter Behmke                                        3

Rule 30(b)(6) notice that we are able to understand.[1] These individuals, given their
seniority within the businesses, would naturally be expected to have the most
comprehensive and thoroughgoing knowledge about these subjects. We also expect that
plaintiffs intend to take testimony from these witnesses in their individual capacities in
any event, and those individual depositions will likely cover all of the noticed subjects
regardless of who Citi designates as corporate representatives.

      As we have also discussed, Citi will make each of these witnesses
available for deposition only once. The Rule 30(b)(6) depositions will therefore
simultaneously serve as plaintiffs' opportunity to depose these witnesses in their
individual capacities. We will begin the process of reaching out to these witnesses to get
their schedules now, with the intention of making witnesses available beginning on or
about April 15 and on a rolling basis thereafter, to give plaintiffs adequate time to prepare
both for the Rule 30(b)(6) and individual depositions. As you know, these are senior
business people and we will expect plaintiffs' cooperation with respect to scheduling. Of
course, should we learn during the course of these scheduling discussions or in preparing
these witnesses for their depositions that a different corporate representative would be
more appropriate for any topic, we will advise you of that fact promptly.

      Please let us know by March 24 if this approach to scheduling depositions
is acceptable to plaintiffs. In addition, as we discussed previously, to the extent plaintiffs
wish to seek Rule 30(b)(6) deposition testimony concerning the meaning of specific
derivatives-related documents in Citi's production that are not understandable to
plaintiffs' counsel or Lehman's team of 30 derivatives traders employed by the estate, we
will need to be provided with exemplars of the documents in advance of the depositions
in order to prepare our witnesses. Alternatively, as we have also explained, we stand
willing to review any documents in our production that you do not understand, and
explain what they are to the best of our ability to avoid wasting time needlessly during
depositions. We would expect the same courtesy from plaintiffs in response to questions
we may have about various documents and spreadsheets provided to us in discovery.

         *           *           *

---

[1]   As we have previously noted, we do not understand what is sought by topics 14 and
15 in plaintiffs' Rule 30(b)(6) notice. We therefore cannot designate a corporate
representative on those subjects.

Doc#: US1:9293633v3

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

Diane C. Hutnyan & Peter Behmke                                        4

        We write without prejudice to any of defendants' rights, all of which are expressly reserved.

                Very truly yours,

                Claudia Hammerman

cc:    Counsel of Record

Attachment A

To:      rexlee@quinnemanuel.com

From:    William Clareman/PaulWeiss

cc:

Date:    05/09/2013

Subject: LBHI v. Citibank, NA - Derivatives Discovery

Rex, attached please find the annotated list of potential derivatives custodians I mentioned in my earlier message. This is an annotated version of the list I originally sent to you on September 11, 2012. The Sept. 11 list was, as you recall, a narrowed version of Citi's response to plaintiffs' interrogatory no. 5, which we culled at plaintiffs' request in an attempt to identify only those individuals who played a "key" or "central" role in the close out process.

This annotated list is being provided to you on an informal, Rule 408 basis in order to facilitate our discussions of potential derivatives custodians. I look forward to discussing this with you at 4:30pm today.

Best

Billy

William A. Clareman | Associate
Paul, Weiss, Rifkind, Wharton & Garrison LLP
1285 Avenue of the Americas | New York, NY 10019-6064
(212) 373-3248 (Direct Phone) | (212) 492-0248 (Direct Fax)
wclareman@paulweiss.com | www.paulweiss.com



Annotated List - Derivatives Close out.pdf


BINDERS

## Subprime Portfolio Group

1. Frederic Jallot – Trading Desk Head, Securitization ABS
2. Simon D. Jones – Trader, Securitization ABS
3. Joshua Kogan – Quantitative Research Analyst
4. Richard Skeet – Trader, Securitization ABS

## Portfolio & Exotic Credit Derivatives

1. Mickey Bhatia – Business Head
2. Jay Huang – Trading Desk Head, CDO/SIV Trading
3. Shaheda Khan – Business Unit Manager
4. Vikram Prasad – Trading Desk Head, US Correlation Trading

## Emerging Markets Credit Trading

1. Virginia Laird – Director, Eurobond Trading
2. Marc Pagano – Business Head
3. Rob Smith – Quantitative Research Analyst

## Credit Trading/ Distressed

1. Brian Archer – Business Head
2. Scott Balkan – Trader, Distressed Flow Names (Cable/Manufacturing and Telecom/Media/Tech Special)
3. Michele Berard – Business Unit Manager
4. Bis Chatterjee – Trader, US Credit Markets (Retail/Gaming)
5. Brian Connors – Trader, Corporate Bonds: Investment Grade (Tech/Media/Tel/Consumers)
6. Conor Davis – Managing Director, Loan Sales
7. Robert Dockray – Trader, Eurobond Trading
8. Tim Gately – Trading Desk Head (London)
9. Tom Giardi – Trader, Corporate Bonds: Investment Grade (Banks/Finance/REITs)
10. Scott Goodwin – Trader, High Yield Trading (Tech/Media/Package/Paper)
11. Derek Hafer – Trader, Corporate Bonds: Investment Grade (Consumers/Rails/Pharms)
12. Anthony Kay – Director, Yen Credit Trading
13. Naresh Narayan – Trading Desk Head (Tokyo)

2

14.  Alan Pierce – Trader, Eurobond Trading

15.  Michael Schoell – Trader, Corporate Bonds: Investment Grade

16.  Matt Watson – Trader, Eurobond Trading

## Global Securitized Markets

1.  Teddy Counihan – Trader, RMBS Trading & Securitization

2.  Warren Geiger – Trader, RMBS Trading & Securitization

3.  Rohit Hemdev – Trader, Securitization ABS

4.  Taylor Leahy – Trader, Distressed Flow Names

5.  Jennifer Podurgiel – Business Unit Manager

6.  Eliot Rubenzahl – Trading Desk Head, RMBS Trading & Securitization

## Municipal Derivatives

1.  John Heppolette – Trading Desk Head, MSD Structured Products & Trading

2.  Peter O'Connor – Trader, MSD Structured Products & Trading

## Rates

1.  Stuart Bancroft – Business Unit Manager

2.  Barry Clark – Trader, Derivatives Trading

3.  Christopher Cox – Managing Director, AUS/NZ FI Management

4.  Ray Fitzpatrick – Business Analyst

5.  Matthew Jerman – Managing Director, European Derivatives Trading

6.  Alain Verdickt – Trader, G10 Rates Management

7.  Steve Compton – Business Head

## Foreign Exchange (LatAm)

1.  Nilton David – Trader, LatAm Hub Trading

2.  Ajay Kasuganti – Business Unit Manager

3.  Alejandro Torres – Financial Reporting Specialist

4.  Jose Luis Yepez – Regional Product Head, LatAm Hub Trading

## Foreign Exchange (Asia)

1.  Arnold Bengco – Senior Trader, RCU

2.    Geraldine Goh – Structured Product Team Leader, FX Counseling

3.    Nadir Mahmud – Managing Director, FI Administration

4.    Varadarajan Subbaraman – Senior Trader, Rates Trading

**Foreign Exchange (CEEMEA)**

1.    James Bindler – Trading Desk Head, FX – World Currency Desk

2.    Neil Boston – Architecture Senior Specialist, FXLM Derivatives (London)

3.    Rachelle Herman – Business Unit Manager (London)

4.    Nigel Khakoo – Managing Director, FX – Options Trading

5.    Mike Lawrence – Operations Support Senior Manager

6.    Neil O'Donnell – Product Controller

7.    Giles Page – Trader, FX – World Currency Desk

8.    Samantha Rich – Manager Training

9.    Karol Tokarczyk – Trader, FX – World Currency Desk

**Foreign Exchange (G10)**

1.    Robert Degroot – Spot Trading (London)

2.    Jeffrey Feig – Global Head

3.    Pritpal Gill – ASPAC Head, LM/FX Trading

4.    Eric Hirschorn – Global Head, FX Technology

5.    Simon Jones – Spot Trading, Global AT (New York)

6.    Dokun Omidiora – Business Unit Manager (Europe)

7.    Chad Shampine – Trader, Forwards

8.    Itay Tuchman – STIRT Trading (London)

**Commodities**

1.    John Borin – Manager, Middle Office

2.    Edith Campbell – Business Unit Manager (US)

3.    Charles Carlton – Trader, Commodities Derivatives – Gas

4.    Eric Elder – Trader, Commodities – ERCOT Power

5.    Hector Godoy – Trader, Liquified Natural Gas

6.    Dale Neuner – Operations Department Manager

7.    Navin Parasram – Trader, Exotics

8.    Dylan Seff – Trader, Commodities – East Power

4

9.   Mark Sickafoose — Trader, Commodities — East/West Power and
     Basis Gas

10.  Carrie Southard — Business Unit Manager (Europe)

11.  Chris Stratton — Product Controller

12.  Kathryn Willoughby — Operations Support Unit Supervisor

13.  John Young — Structurer, Commodities Derivatives

**Citi Canyon Ltd.**

1.   Paul Heckman [employed by Canyon Partners LLC]

# Attachment B



Municipal Capital Markets Organization Chart (April 2008)



GLOBAL G10 RATES ORGANIZATIONAL CHART – SEPTEMBER 30th, 2008



GLOBAL G10 RATES ORGANIZATIONAL CHART – SEPTEMBER 30th, 2008



# G10FX Organizational Hierarchy

Jeff Feig





Sep 2008

# G10FX Senior Management Team





Exhibit 12

**quinn emanuel** trial lawyers | new york

51 Madison Avenue, 22nd Floor, New York, New York 10010-1601 | TEL (212) 849-7000 FAX (212) 849-7100

WRITER'S DIRECT DIAL NO.
(212) 849-7362

WRITER'S INTERNET ADDRESS
ellisonward@quinnemanuel.com

March 20, 2014

Claudia Hammerman, Esq.
Paul, Weiss, Rifkind, Wharton & Garrison LLP
1285 Avenue of the Americas
New York, New York 10019

Re:    *Lehman Brothers Holdings Inc., et al. v. Citibank, N.A., et al.*
       *(In re Lehman Bros. Holdings Inc.)*, No. 12-01044 (Bankr. S.D.N.Y.)

Dear Claudia:

Enclosed please find a notice for the depositions of Brian Connors, Robert Dockray, Shahed Shafi, Antoine Pain, Josh Kogan, Itay Tuchman, Didier Magloire, Alain Verdickt, Tom Giardi, Richard Skeet, and Varadarajan Subbaraman. Please let us know no later than March 27, 2014, if you do not represent any of these individuals.

We are generally available to meet and confer with you regarding these deposition notices.

Sincerely yours,

Ellison S. Ward

**quinn emanuel urquhart & sullivan, llp**
LOS ANGELES | SAN FRANCISCO | SILICON VALLEY | CHICAGO | WASHINGTON, DC | LONDON | TOKYO | MANNHEIM | MOSCOW | HAMBURG | PARIS | MUNICH | SYDNEY | HONG KONG | BRUSSELS

QUINN EMANUEL URQUHART & SULLIVAN, LLP
Andrew J. Rossman
Daniel P. Cunningham
Diane C. Hutnyan
51 Madison Avenue, 22nd Floor
New York, New York 10010
*Counsel for the Official Committee of Unsecured Creditors of Lehman Brothers Holdings Inc.*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------ X

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | Case No. 08-13555 (JMP) |
| LEHMAN BROTHERS HOLDINGS INC., *et al.*, | : | |
| | : | |
| Debtors. | : | |

------------------------------------------------ X

| | | |
|---|---|---|
| LEHMAN BROTHERS HOLDINGS INC., LEHMAN | : | |
| BROTHERS SPECIAL FINANCING INC., LEHMAN | : | |
| BROTHERS COMMODITY SERVICES INC., LEHMAN | : | |
| BROTHERS COMMERCIAL CORP., and | : | |
| OFFICIAL COMMITTEE OF UNSECURED | : | |
| CREDITORS OF LEHMAN BROTHERS HOLDINGS | : | Adversary Proceeding |
| INC., *et al.* | : | No.: 12-01044 (JMP) |
| Plaintiffs and Plaintiff Intervenor, | : | |
| | : | |
| -against- | : | |
| | : | |
| | : | |
| CITIBANK, N.A., CITIGROUP GLOBAL MARKETS | : | |
| LTD., CITIGROUP FINANCIAL PRODUCTS INC., | : | |
| CITIGROUP ENERGY INC., CITI CANYON LTD., CITI | : | |
| SWAPCO INC., FYI LTD., FFI FUND LTD, AND | : | |
| OLIFANT FUND, LTD. | : | |
| | : | |
| Defendants and Defendant Intervenors. | : | |

------------------------------------------------ X

## NOTICE OF DEPOSITIONS OF BRIAN CONNORS, ROBERT DOCKRAY, SHAHED SHAFI, ANTOINE PAIN, JOSH KOGAN, ITAY TUCHMAN, DIDIER MAGLOIRE, ALAIN VERDICKT, TOM GIARDI, RICHARD SKEET, AND VARADARAJAN SUBBARAMAN PURSUANT TO FED. R. BANKR. P. 7030

PLEASE TAKE NOTICE that, pursuant to Rule 7030 of the Federal Rules of Bankruptcy

Procedure and Rule 30 of the Federal Rules of Civil Procedure, Plaintiffs Lehman Brothers

Holdings Inc, Lehman Brothers Special Financing Inc,. Lehman Brothers Commodity Services

Inc., Lehman Brothers Commercial Corp., and Intervenor-Plaintiff Official Committee of

Unsecured Creditors of Lehman Brothers Holdings, Inc., by and through their attorneys, will

take the depositions upon oral examination of Brian Connors, Robert Dockray, Shahed Shafi,

Antoine Pain, Josh Kogan, Itay Tuchman, Didier Magloire, Alain Verdickt, Tom Giardi, Richard

Skeet, and Varadarajan Subbaraman at the following dates and times:

1. DEPONENT: Brian Connors

   DATE: April 21, 2014

   TIME: 9:00 a.m.

2. DEPONENT: Robert Dockray

   DATE: April 22, 2014

   TIME: 9:00 a.m.

3. DEPONENT: Shahed Shafi

   DATE: April 23, 2014

   TIME: 9:00 a.m.

4. DEPONENT: Antoine Pain

   DATE: April 24, 2014

   TIME: 9:00 a.m.

5. DEPONENT: Josh Kogan

   DATE: April 25, 2014

   TIME: 9:00 a.m.

6. DEPONENT: Itay Tuchman

   DATE: April 28, 2014

   TIME: 9:00 a.m.

7. DEPONENT: Didier Magloire

   DATE: April 29, 2014

   TIME: 9:00 a.m.

8. DEPONENT: Alain Verdickt

   DATE: April 30, 2014

   TIME: 9:00 a.m.

9. DEPONENT: Tom Giardi

   DATE: April 28, 2014

   TIME: 9:00 a.m.

10. DEPONENT: Richard Skeet

    DATE: April 29, 2014

    TIME: 9:00 a.m.

11. DEPONENT: Varadarajan Subbaraman

    DATE: April 30, 2014

    TIME: 9:00 a.m.

All depositions will take place at the offices of Quinn Emanuel, Urquhart & Sullivan, LLP, 51 Madison Avenue, 22nd Floor, New York, NY 10010, or at another time and place as may be agreed upon by counsel, and will continue from day to day until completed. The depositions will be taken before a person qualified to administer oaths and will be videotaped

3

and recorded stenographically.

Dated:  March 20, 2014

QUINN EMANUEL URQUHART & SULLIVAN LLP

By:/s/ Diane C. Hutnyan

Andrew J. Rossman
Daniel P. Cunningham
Diane C. Hutnyan
51 Madison Avenue, 22nd Floor
New York, New York 10010
Telephone: (212) 849-7000
Facsimile: (212) 849-7100

*Special Counsel for Official Committee of
Unsecured Creditors of Lehman Brothers Holdings
Inc.*

## CERTIFICATE OF SERVICE

The undersigned, an attorney, hereby certifies that on March 20, 2014 a true and correct

copy of the foregoing DEPOSITION NOTICE was caused to be served by e-mail on the parties

listed below:

Claudia Hammerman, Esq. – CHammerman@paulweiss.com
Stephen J. Shimshak, Esq. – Sshimshak@paulweiss.com
William Clareman, Esq. – Wclareman@paulweiss.com
George Kroup, Esq. – Gkroup@paulweiss.com

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
51 West 52nd Street
New York, New York 10019
*Counsel for Citibank, N.A.*

D. Ross Martin, Esq. – Ross.Martin@ropesgray.com
James A. Wright, Esq. – James.Wright@ropesgray.com
Lisa Coyle, Esq. – Lisa.Coyle@ropesgray.com
Michael Jo, Esq. – Michael.Jo@ropesgray.com
Catherine Mondell, Esq. – Catherine.Mondell@ropesgray.com

ROPES & GRAY LLP
1211 Avenue of the Americas
New York, New York 10036
*Counsel for FYI Ltd., FFI Fund Ltd., and Olifant Fund Ltd.*

Turner P. Smith, Esq. – tsmith@curtis.com
L.P. Harrison 3rd, Esq. – lharrison@curtis.com
Andrew H. Seiden, Esq. – aseiden@curtis.com
Peter J. Behmke, Eqs. – pbehmke@curtis.com

CURTIS, MALLET-PREVOST, COLT & MOSLE LLP
101 Park Avenue
New York, New York 10178
*Counsel for the Lehman Plaintiffs*

/s/ Ellison S. Ward

Exhibit 13

**quinn emanuel** trial lawyers | los angeles

865 South Figueroa Street, 10th Floor, Los Angeles, California 90017-2543 | TEL (213) 443-3000 FAX (213) 443-3100

WRITER'S DIRECT DIAL NO.
(213) 443-3666

WRITER'S INTERNET ADDRESS
dianehutnyan@quinnemanuel.com

March 23, 2014

Claudia L. Hammerman, Esq.
Paul, Weiss, Rifkind, Wharton & Garrison LLP
1285 Avenue of the Americas
New York, New York 10019

Re:     *Lehman Brothers Holdings Inc., et al v. Citibank, N.A., et al.,*
        **Adv. Proc. No. 12-01044 (S.D.N.Y.) (JMP)**

Dear Claudia:

        I write regarding Citi's organizational charts.

        Plaintiffs previously requested documents sufficient to show the organizational structure of Citi's derivatives trading business. *See, e.g.* Plaintiffs' First Request for Production, No. 76. Thus far, we understand that Citi has only produced a limited number of organizational charts of its derivatives businesses and for only certain product areas. The charts Citi has produced also appear to be incomplete. For example, while Citi has produced a chart purporting to relate to Global Credit Markets, that chart appears to identify merely the head trader for certain credit groups while omitting the rest of the traders, product controllers and others that comprised those groups. Indeed, we have seen virtually no organizational information showing other parts of the derivatives trading business such as risk, operations, finance or sales and marketing personnel. Previously, in response to our having raised this issue, Citi asserted that its "derivatives businesses do not have a policy requiring the generation of organizational charts." *See* August 16, 2013 email from E. Berg to R Lee. However, that assertion fails to indicate whether such charts do exist and, if so, whether Citi has conducted a reasonable and diligent search to find them.

        In addition, we request organizational charts showing the structure of Citibank's Global Transaction Services and Institutional Clients Group in the summer of 2008. These documents will aid us in efficiently planning for depositions and avoiding the potential for duplicative witnesses. They are also responsive to document requests 1 and 12 of Plaintiffs' First Request for Production.

quinn emanuel urquhart & sullivan, llp

NEW YORK | SAN FRANCISCO | SILICON VALLEY | CHICAGO | WASHINGTON, DC | LONDON | TOKYO | MANNHEIM | MOSCOW | HAMBURG | PARIS |
MUNICH | SYDNEY | HONG KONG | BRUSSELS

To help bring this issue to a close, please confirm that Citi has produced all organizational charts in its possession, custody or control and that no others exist. To the extent Citi has not produced all of the charts in its possession, please produce them immediately. On the other hand, to the extent Citi certifies that its production is complete, please identify by bates number all the charts that Citi has produced. Currently, we are aware of the organizational charts that had been informally produced on May 6, 2013 and August 16, 2013, as well as those bates marked CITI-LEH00958145 and CITI-LEH00751354 – 359. Independently, please let us know who Citi has chosen as its representative in response to Topic No. 1 of plaintiffs' derivatives-related 30(b)(6) notice.

Kind regards,

Diane C. Hutnyan

cc:    Rex Lee, Esq. (via email)
       Ellison Ward, Esq. (via email)
       Peter Behmke, Esq. (via email)
       J. Derek Mize, Esq. (via email)
       William A. Clareman, Esq. (via email)
       Erika Berg, Esq. (via email)
       James Wright, Esq. (via email)

2

Exhibit 14

*PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP*

1285 AVENUE OF THE AMERICAS
NEW YORK, NEW YORK 10019-6064

TELEPHONE (212) 373-3000

LLOYD K. GARRISON    (1946-1991)
RANDOLPH E. PAUL     (1946-1956)
SIMON H. RIFKIND     (1950-1995)
LOUIS S. WEISS       (1927-1950)
JOHN F. WHARTON      (1927-1977)

WRITER'S DIRECT DIAL NUMBER

212.373.3248

WRITER'S DIRECT FACSIMILE

212.492.0248

WRITER'S DIRECT E-MAIL ADDRESS

wclareman@paulweiss.com

UNIT 3601, OFFICE TOWER A, BEIJING FORTUNE PLAZA
NO. 7 DONGSANHUAN ZHONGLU
CHAOYANG DISTRICT
BEIJING 100020
PEOPLE'S REPUBLIC OF CHINA
TELEPHONE (86-10) 5828-6300

12TH FLOOR, HONG KONG CLUB BUILDING
3A CHATER ROAD, CENTRAL
HONG KONG
TELEPHONE (852) 2846-0300

ALDER CASTLE
10 NOBLE STREET
LONDON EC2V 7JU, U.K.
TELEPHONE (44 20) 7367 1600

FUKOKU SEIMEI BUILDING
2-2 UCHISAIWAICHO 2-CHOME
CHIYODA-KU, TOKYO 100-0011, JAPAN
TELEPHONE (81-3) 3597-8101

TORONTO-DOMINION CENTRE
77 KING STREET WEST, SUITE 3100
P.O. BOX 226
TORONTO, ONTARIO M5K 1J3
TELEPHONE (416) 504-0520

2001 K STREET, NW
WASHINGTON, DC 20006-1047
TELEPHONE (202) 223-7300

500 DELAWARE AVENUE, SUITE 200
POST OFFICE BOX 32
WILMINGTON, DE 19899-0032
TELEPHONE (302) 655-4410

MATTHEW W. ABBOTT
ALLAN J. ARFFA
ROBERT A. ATKINS
DAVID J. BALL
JOHN F. BAUGHMAN
LYNN B. BAYARD
DANIEL J. BELLER
CRAIG A. BENSON
MITCHELL L. BERG
MARK S. BERGMAN
BRUCE BIRENBOIM
H. CHRISTOPHER BOEHNING
ANGELO BONVINO
RICHARD J. BRONSTEIN
DAVID W. BROWN
SUSANNA M. BUERGEL
PATRICK S. CAMPBELL*
JESSICA S. CAREY
JEANETTE K. CHAN
YVONNE Y. F. CHAN
LEWIS R. CLAYTON
JAY COHEN
KELLEY A. CORNISH
CHRISTOPHER J. CUMMINGS
CHARLES E. DAVIDOW
DOUGLAS R. DAVIS
THOMAS V. DE LA BASTIDE III
ARIEL J. DECKELBAUM
ALICE BELISLE EATON
ANDREW J. EHRLICH
GREGORY A. EZRING
LESLIE GORDON FAGEN
MARC FALCONE
ROSS A. FIELDSTON
ANDREW C. FINCH
BRAD J. FINKELSTEIN
BRIAN P. FINNEGAN
ROBERTO FINZI
PETER E. FISCH
ROBERT C. FLEDER
MARTIN FLUMENBAUM
ANDREW J. FOLEY
HARRIS B. FREIDUS
MANUEL S. FREY
ANDREW L. GAINES
KENNETH A. GALLO
MICHAEL E. GERTZMAN
ADAM M. GIVERTZ
SALVATORE GOGLIORMELLA
ROBERT D. GOLDBAUM
NEIL GOLDMAN
ERIC S. GOLDSTEIN
ERIC GOODISON
CHARLES H. GOGGE, JR.
ANDREW G. GORDON
UDI GROFMAN
NICHOLAS GROOMBRIDGE
BRUCE A. GUTENPLAN
GAINES GWATHMEY, III
ALAN S. HALPERIN
JUSTIN G. HAMILL
CLAUDIA HAMMERMAN
GERARD E. HARPER
BRIAN S. HERMANN
ROBERT M. HIRSH
MICHELE HIRSHMAN
MICHAEL S. HONG
DAVID S. HUNTINGTON
LORETTA A. IPPOLITO
JAREN JANGHORBANI

MEREDITH J. KANE
ROBERTA A. KAPLAN
BRAD S. KARP
PATRICK N. KARSNITZ
JOHN C. KENNEDY
ALAN W. KORNBERG
DANIEL J. KRAMER
DAVID K. LAKHDHIR
STEPHEN P. LAMB*
JOHN E. LANGE
DANIEL J. LEFFELL
XIAOYU GREG LIU
JEFFREY D. MARELL
MARCO V. MASOTTI
EDWIN S. MAYNARD
DAVID W. MAYO
ELIZABETH R. McCOLM
MARK F. MENDELSOHN
WILLIAM B. MICHAEL
TOBY S. MYERSON
CATHERINE NYARADY
JANE B. O'BRIEN
ALEX YOUNG K. OH
BRAD R. OKUN
KELLEY D. PARKER
MARC E. PERLMUTTER
VALERIE E. RADWANER
CARL L. REISNER
WALTER G. RICCIARDI
WALTER RIEMAN
RICHARD A. ROSEN
ANDREW N. ROSENBERG
JACQUELINE P. RUBIN
RAPHAEL M. RUSSO
JEFFREY D. SAFERSTEIN
JEFFREY B. SAMUELS
DALE M. SARRO
TERRY E. SCHIMEK
KENNETH M. SCHNEIDER
ROBERT B. SCHUMER
JAMES H. SCHWAB
JOHN M. SCOTT
STEPHEN J. SHIMSHAK
DAVID R. SICULAR
MOSES SILVERMAN
STEVEN SIMKIN
JOSEPH J. SIMONS
MARILYN SOBEL
AUDRA J. SOLOWAY
SCOTT M. SONTAG
TARUN M. STEWART
ERIC ALAN STONE
AIDAN SYNNOTT
ROBYN F. TARNOFSKY
MONICA K. THURMOND
DANIEL J. TOAL
LIZA M. VELAZQUEZ
MARIA T. VULLO
ALEXANDRA M. WALSH*
LAWRENCE G. WEE
THEODORE V. WELLS, JR.
BETH A. WILKINSON
STEVEN J. WILLIAMS
LAWRENCE I. WITDORCHIC
MARK B. WLAZLO
JULIA MASON WOOD
JORDAN E. YARETT
KAYE N. YOSHINO
TONG YU
TRACEY A. ZACCONE
T ROBERT ZOCHOWSKI, JR

*NOT ADMITTED TO THE NEW YORK BAR

March 30, 2014

**By Email**

Diane C. Hutnyan
Quinn Emanuel
865 South Figueroa Street, 10th Floor
Los Angeles, CA  90017-2543

J. Derek Mize
Curtis, Mallet-Prevost, Colt & Mosle LLP
101 Park Avenue
New York, New York 10178

*Lehman Brothers Holdings Inc., et al. v. Citibank, N.A., et al.*
Adv. Proc. No. 12-01044 (JMP)

Dear Diane and Derek:

We write in response to plaintiffs' letter of March 23, 2014 regarding defendants' production of organizational charts.

As noted in your letter, plaintiffs' first request for the production of documents sought, among other things, "documents sufficient to show the organizational structure, reporting relationships, and individuals involved in Citi's derivatives trading businesses at any time during September 2008." (Pls. First Request for Production of Documents, Request No. 76.)  Defendants objected to that request on the basis of overbreadth, but agreed to negotiate in good faith to narrow it (*see* Defs. Responses and Objections to Plaintiffs' First Request for Production of documents), and subsequently agreed to provide plaintiffs with information that has now been produced to plaintiffs during the course of discovery in this case.

Defendants have responded to Request No. 76 in several ways.  First, in connection with defendants' response to *plaintiffs Interrogatory No. 5* – which called for

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

Diane C. Hutnyan & J. Derek Mize                                                          2

the identity of the derivative traders knowledgeable about Citi's close out calculations –
we provided you with an annotated list of 70 individuals in the derivatives trading
businesses that played a "central" and/or "key" role in the close out process, setting forth
the individuals' job titles and descriptions as of September 2008. (See May 9, 2013 email
from W. Clareman to R. Lee.) Later, after plaintiffs specifically requested organizational
charts for the derivatives trading businesses, we approached each of these businesses and
requested that they search for any organizational charts from September 2008. Although
Citi did not have a policy that required such organizational charts to be created or
maintained, we received organizational charts from some of the businesses, and produced
what we collected as a result of that search. Both by providing the annotated custodian
list, and by conducting a reasonably diligent search for any organizational charts that
existed for the derivatives trading businesses (and producing the results of that search),
defendants have more than satisfied their obligations to produce information responsive
to Request No. 76.[1]

          Prior to your March 23 letter, plaintiffs have never previously sought the
production of "all organizational charts in [Citi's] possession, custody or control," and
Citi would never agree to such a preposterously broad request. With respect to the more
specific request for organizational charts for all of Citibank's Global Transactional
Services ("GTS") and Institutional Clients Group ("ICG"), the assertion that these types
of documents are responsive to plaintiffs' request numbers 1 and 12 is patently absurd, as
neither request has anything to do with Citi's organizational structure at all.[2]
Notwithstanding the belated nature of this request, we will endeavor to determine
whether any documents exist that are responsive to this new request, provided that the

---

[1]    Of course, the production of organizational charts is not the only way to respond to a request for
information "sufficient to show the organizational structure, reporting relationships, and individuals
involved in Citi's derivatives trading businesses." Email correspondence produced by defendants in
this case serves the same purpose by showing who reports to whom, and is also sufficient to show
organizational structure and reporting relationships at Citi.

[2]    Request No. 1 seeks: "All documents concerning Citibank's request for $3-5 billion made to LBHI on
or about June 12, 2008, including but not limited to: (a) all documents concerning the purpose, intent,
or business justification for Citibank's request, including all documents concerning the identification
and calculation of exposures considered by Citibank in connection with that request; (b) all documents
concerning any negotiation(s) or agreements between Citibank and Lehman conducted or reached on
or about June 12, 2008 or thereafter concerning Citibank's request; (c) all communications, whether
internal or external, concerning Citibank's request; and (d) any actions Citibank would have taken or
considered taking if Lehman did not meet Citibank's request."

       Request No. 12 seeks: "All documents concerning any contemplation or decision by Citibank to
increase, modify, terminate, limit or reduce its level of business activity with Lehman, including but
not limited to the following types of business: (a) CLS or clearing and settlement of Lehman's trades;
(b) any extensions of credit to Lehman; (c) tri-party or other repurchase financing with Lehman; or (d)
derivatives transactions (whether new trades or acceptance of novations)."

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

Diane C. Hutnyan & J. Derek Mize                                          3

supplemental search we now agree to conduct will not be raised as an excuse to postpone or delay any depositions in this case.

      With respect to the separate question raised in your March 23 letter concerning Citi's designation of witnesses in response to Topic No. 1 of plaintiffs' derivatives-related 30(b)(6) notice, we made a proposal in our letter of March 20, 2014, and are yet to hear a response. As we explained, in light of the extraordinary breadth of plaintiffs' Rule 30(b)(6) notice, which spans 15 topics and all of the derivatives trading businesses, each of these topics will require testimony from a significant number of witnesses. We therefore proposed to respond by scheduling depositions of senior traders and business heads beginning in mid-April, as those are the witnesses that will likely have the greatest breadth of knowledge regarding all of the subjects identified in the Rule 30(b)(6) notice, and will therefore be the most efficient way to respond and to avoid needlessly multiplying the number of depositions taken in the case. Because Citi will make these traders available for deposition only once, the Rule 30(b)(6) depositions will simultaneously provide you with an opportunity to examine these witnesses in their individual capacities, but we assume that all of the subjects identified in your Rule 30(b)(6) notice would be raised in the individual depositions of these senior traders, whether or not they were designated as corporate representatives.

      In the last week, we have begun to discuss scheduling with the proposed Rule 30(b)(6) designees, as well as the witnesses you identified in your deposition notices of March 20, 2014 and other traders from whom you have indicated depositions will be sought. We proposed via email on March 27 to schedule a meet and confer call on March 31 at 2pm to discuss deposition scheduling, to which we also received no response. If that time and day is not convenient, please propose an alternative on either March 31 or April 1.

          \*          \*          \*

      We write without prejudice to any of defendants' rights, all of which are expressly reserved.

                Very truly yours,

                William A. Clareman

cc:    Counsel of Record

Exhibit 15

**quinn emanuel** trial lawyers | los angeles

865 South Figueroa Street, 10th Floor, Los Angeles, California  90017-2543 | TEL (213) 443-3000 FAX (213) 443-3100

WRITER'S INTERNET ADDRESS
dianehutnyan@quinnemanuel.com

March 31, 2014

<u>VIA E-MAIL</u>
Claudia L. Hammerman, Esq.
Paul, Weiss, Rifkind, Wharton & Garrison LLP
1285 Avenue of the Americas
New York, NY 10019-6064

Re:     *Lehman Brothers Holdings Inc., et al. v. Citibank, N.A., et al.*
        Adv. Proc. No. 12-01044 (JMP)

Dear Claudia:

      We are in receipt of your March 20 and March 30, 2014 letters regarding, *inter alia*, our Rule 30(b)(6) notices offering to designate senior traders and business heads as Citi's corporate representatives. However, even now, we have still not received actual designations for any of the topics notifying us who will be presented to testify on each of them. Stating that you would "designate senior traders and business heads – such as" nine listed people does not even tell us whether the eventual designees will be culled from among the names on that list, or whether those names were meant to be merely illustrative of what level of employee we can expect to depose. Please immediately notify us, in writing, of your actual designations for each topic, along with proposed dates for the depositions, so that we can resolve this issue without burdening the Court with it.

      We reject Citi's "proposal" to designate senior traders and business heads that will only be deposed once. It is Citi's obligation to designate witnesses, not to "propose" them. And it must live with the consequences of those decisions. You have decided to designate senior traders and business heads despite your previous assertions that the 30(b)(6) topics we propounded could be answered by any number of Citi employees. As we already explained in our March 17 letter, we will recall any 30(b)(6) deponent if we feel that facts uncovered during the discovery process require further testimony from that deponent. Therefore, if you choose to designate individuals for these depositions that will also likely be fact witnesses, then you put them in the position of having their deposition taken twice.

**quinn emanuel urquhart & sullivan, llp**
NEW YORK | SAN FRANCISCO | SILICON VALLEY | CHICAGO | WASHINGTON, DC | LONDON | TOKYO | MANNHEIM | MOSCOW | HAMBURG | PARIS | MUNICH | SYDNEY | HONG KONG | BRUSSELS

Finally, your March 30 letter acknowledges receipt of our March 20 deposition notices but we have not yet received confirmation of those, or alternate, dates. Please confirm that the deponents will be presented on the dates noticed, or let us know of any scheduling issues in writing, right away so that we can prepare for any meet and confer that might still be necessary.

We will respond to the balance of your March 30 letter shortly.

Kind regards,

Diane C. Hutnyan

Cc:     Rex Lee, Esq.
        Ellison Ward, Esq.
        Peter Behmke, Esq.
        J. Derek Mize, Esq.
        William A. Clareman, Esq.
        Erika Berg, Esq.
        James Wright, Esq.

Exhibit 16

# PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

1285 AVENUE OF THE AMERICAS
NEW YORK, NEW YORK 10019-6064

TELEPHONE (212) 373-3000

LLOYD K GARRISON (1946-1991)
RANDOLPH E PAUL (1946-1956)
SIMON H RIFKIND (1950-1995)
LOUIS S WEISS (1927-1950)
JOHN F WHARTON (1927-1977)

WRITER'S DIRECT DIAL NUMBER

212.373.3321

WRITER'S DIRECT FACSIMILE

212.492.0321

WRITER'S DIRECT E-MAIL ADDRESS

chammerman@paulweiss.com

UNIT 3601 OFFICE TOWER A BEIJING FORTUNE PLAZA
NO 7 DONGSANHUAN ZHONGLU
CHAOYANG DISTRICT
BEIJING 100020
PEOPLE'S REPUBLIC OF CHINA
TELEPHONE (86-10) 5828-6300

12TH FLOOR, HONG KONG CLUB BUILDING
3A CHATER ROAD CENTRAL
HONG KONG
TELEPHONE (852) 2846-0300

ALDER CASTLE
10 NOBLE STREET
LONDON EC2V 7JU, U K
TELEPHONE (44 20) 7367 1600

FUKOKU SEIMEI BUILDING
2-2 UCHISAIWAICHO 2-CHOME
CHIYODA-KU TOKYO 100-0011 JAPAN
TELEPHONE (81-3) 3597-8101

TORONTO-DOMINION CENTRE
77 KING STREET WEST SUITE 3100
TORONTO, ONTARIO M5K 1J3
TELEPHONE (416) 504-0520

2001 K STREET NW
WASHINGTON DC 20006-1047
TELEPHONE (202) 223-7300

500 DELAWARE AVENUE, SUITE 200
POST OFFICE BOX 32
WILMINGTON DE 19899-0032
TELEPHONE (302) 655-4410

MATTHEW W ABBOTT
ALLAN J ARFFA
ROBERT A ATKINS
DAVID J BALL
JOHN F BAUGHMAN
LYNN B BAYARD
DANIEL J BELLER
CRAIG A BENSON
MITCHELL L BERG
MARK S BERGMAN
BRUCE BIRENBOIM
H CHRISTOPHER BOEHNING
ANGELO BONVINO
JAMES L BROCHIN
RICHARD J BRONSTEIN
DAVID W BROWN
SUSANNA M BUERGEL
PATRICK S CAMPBELL*
JESSICA S CAREY
JEANETTE K CHAN
YVONNE Y F CHAN
LEWIS R CLAYTON
JAY COHEN
KELLEY A CORNISH
CHRISTOPHER J CUMMINGS
CHARLES E DAVIDOW
DOUGLAS R DAVIS
THOMAS V DE LA BASTIDE III
ARIEL J DECKELBAUM
ALICE BELISLE EATON
ANDREW J EHRLICH
GREGORY A EZRING
LESLIE GORDON FAGEN
MARC FALCONE
ROSS A FIELDSTON
ANDREW C FINCH
BRAD J FINKELSTEIN
BRIAN P FINNEGAN
ROBERTO FINZI
PETER E FISCH
ROBERT C FLEDER
MARTIN FLUMENBAUM
ANDREW J FOLEY
HARRIS B FREIDUS
MANUEL S FREY
ANDREW L GAINES
KENNETH A GALLO
MICHAEL E GERTZMAN
ADAM M GIVERTZ
SALVATORE GOGLIORMELLA
ROBERT D GOLDBAUM
NEIL GOLDMAN
ERIC S GOLDSTEIN
ERIC GOODISON
CHARLES H GOOGE JR
ANDREW G GORDON
UDI GROFMAN
NICHOLAS GROOMBRIDGE
BRUCE A GUTENPLAN
GAINES GWATHMEY III
ALAN S HALPERIN
JUSTIN D HAMILL
CLAUDIA HAMMERMAN
GERARD E HARPER
BRIAN S HERMANN
ROBERT M HIRSH
MICHELE HIRSHMAN
MICHAEL S HONG
DAVID S HUNTINGTON
LORETTA A IPPOLITO
JAREN JANGHORBANI

MEREDITH J KANE
ROBERTA A KAPLAN
BRAD S KARP
PATRICK N KARSNITZ
JOHN C KENNEDY
ALAN W KORNBERG
DANIEL J KRAMER
DAVID K LAKHDHIR
STEPHEN P LAMB*
JOHN E LANGE
DANIEL J LEFFELL
XIAOYU GREG LIU
JEFFREY D MARELL
MARCO V MASOTTI
EDWIN S MAYNARD
DAVID W MAYO
ELIZABETH R McCOLM
MARK F MENDELSOHN
WILLIAM B MICHAEL
TOBY S MYERSON
CATHERINE NYARADY
JANE B O'BRIEN
ALEX YOUNG K OH
BRAD R OKUN
KELLEY D PARKER
MARC E PERLMUTTER
VALERIE E RADWANER
CARL L REISNER
WALTER G RICCIARDI
WALTER RIEMAN
RICHARD A ROSEN
ANDREW N ROSENBERG
JACQUELINE P RUBIN
RAPHAEL M RUSSO
JEFFREY D SAFERSTEIN
JEFFREY B SAMUELS
DALE M SARRO
TERRY E SCHIMEK
KENNETH M SCHNEIDER
ROBERT B SCHUMER
JAMES H SCHWAB
JOHN M SCOTT
STEPHEN J SHIMSHAK
DAVID R SICULAR
MOSES SILVERMAN
STEVEN SIMKIN
JOSEPH J SIMONS
MARILYN SOBEL
AUDRA J SOLOWAY
SCOTT M SONTAG
TARUN M STEWART
ERIC ALAN STONE
AIDAN SYNNOTT
ROBYN F TARNOFSKY
MONICA K THURMOND
DANIEL J TOAL
LIZA M VELAZQUEZ
MARIA T VULLO
ALEXANDRA M WALSH*
LAWRENCE G WEE
THEODORE V WELLS JR
BETH A WILKINSON
STEVEN J WILLIAMS
LAWRENCE I WITDORCHIC
MARK B WLAZLO
JULIA MASON WOOD
JORDAN E YARETT
KAYE N YOSHINO
TONG YU
TRACEY A ZACCONE
T ROBERT ZOCHOWSKI JR

*NOT ADMITTED TO THE NEW YORK BAR

April 1, 2014

## By Email

Diane C. Hutnyan
Quinn Emanuel
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017-2543

J. Derek Mize
Curtis, Mallet-Prevost, Colt & Mosle LLP
101 Park Avenue
New York, New York 10178

*Lehman Brothers Holdings Inc., et al. v. Citibank, N.A., et al.*
Adv. Proc. No. 12-01044 (JMP)

Dear Diane:

I am in receipt of your letter of yesterday regarding plaintiffs' derivatives-related deposition notices.

In light of our repeated requests since Thursday of last week to schedule a meet and confer to discuss the issues raised in your letter, the combative tone of your correspondence is entirely misplaced. As we hoped to discuss during a meet and confer call, since receiving your Rule 30(b)(6) notices, we have been working in good faith to identify suitable witnesses, which has been challenging given the number of topics and businesses at Citi to which they apply. As we explained in our letters of March 20 and 30, many of the topics are, in our view, best addressed by senior traders and business heads. However, as we have said repeatedly, we will only agree to make those witnesses available for deposition once. We are surprised that this entirely reasonable and predictable limitation on the number of depositions is causing any controversy. Plaintiffs have our documents, and therefore are in a position to address all of the factual issues raised in them during the forthcoming depositions. It would be a rare occurrence that

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

Diane C. Hutnyan & J. Derek Mize                                                    2

anything entirely new would be learned during deposition discovery that would
necessitate recalling any witnesses, given all of the documents and data that have been
produced by defendants to date.

Separately, we have been reaching out to the individual witnesses
identified in your March 20 deposition notices. Not coincidentally in light of plaintiffs'
general reluctance to identify derivatives witnesses from whom depositions will be
sought, only one of the witnesses – Shahed Shafi – is a current Citi employee located in
New York. Mr. Shafi will be out of the country during the last two weeks in April, and is
not available to be deposed until early May. The remaining five current employees are
all located abroad in London, Hong Kong, Singapore, Australia and Japan, and will not
be available in New York on the dates of the notices. We have reached out to them and
hoped to discuss alternative scheduling during the meet and confer we have been
requesting. With respect to the former employees, we have begun locating and reaching
out to them to determine their availability and – for foreign witnesses who no longer
work at Citi – their willingness to sit for a deposition in this case without formal service
of process under the Hague Convention. At the same time, we have also been working to
identify other trader custodians that plaintiffs have indicated they wish to depose that are
more easily scheduled, because the witnesses are current Citi employees located in New
York. We had hoped to discuss and propose dates for these local witnesses during the
meet and confer we have been attempting to schedule with you.

We hope to work cooperatively in this case to manage a very challenging
deposition schedule involving a large number of witnesses located both here and abroad,
in a way that is most efficient and economical and which avoids unnecessary burdens,
including most importantly, ensuring that witnesses are not deposed twice. To our
disappointment, plaintiffs do not appear to share these goals, at least with respect to
derivatives-related discovery. If plaintiffs refuse to engage cooperatively regarding these
scheduling matters, we will have no choice but to request a conference with the Court to
seek a suitable protective order. We hope, instead, that plaintiffs will agree to schedule a
meet and confer and commit to engaging in a cooperative and productive effort to
schedule derivatives-related discovery.

*              *              *

We write without prejudice to any of defendants' rights, all of which are
expressly reserved.

Very truly yours,

Claudia Hammerman /WAC

Claudia Hammerman

cc:    Counsel of Record

Doc#: US1:9339029v2

Exhibit 17

**quinn emanuel** trial lawyers | los angeles

865 South Figueroa Street, 10th Floor, Los Angeles, California 90017-2543 | TEL (213) 443-3000 FAX (213) 443-3100

WRITER'S DIRECT DIAL NO.
**(213) 443-3666**

WRITER'S INTERNET ADDRESS
**dianebutnyan@quinnemanuel.com**

April 2, 2014

Claudia Hammerman, Esq.
Paul, Weiss, Rifkind, Wharton & Garrison LLP
1285 Avenue of the Americas
New York, New York 10019-6064

Re:     *Lehman Brothers Holding Inc., et al. v. Citibank, N.A. et al.*
        Adv. Proc. No. 12-01044 (JPM)

Dear Claudia:

I write with regard to your April 1, 2014 letter.

Though you point to Citi's "repeated requests" for a meet and confer, your reliance on the meet and confer process is misplaced.  As an initial matter, a meet and confer is not necessary until there is an actual dispute.  Pursuant to Local Rule 7007-1(b), the meet and confer process involves parties "conferr[ing] among themselves to resolve **the dispute**[.]" (emphasis added).  *See also Prescient Partners, L.P. v. Fieldcrest Cannon. Inc.*, 1998 WL 67672, at *2–*3 (S.D.N.Y. Feb. 18, 1998) (quoting *Deckon v. Chidebere*, 1994 WL 494885, at *5 (S.D.N.Y. Sept. 9, 1994)) ("[T]he meet-and-confer requirement mandates that parties actually meet, in person or by telephone, and make a genuine effort to resolve **the dispute**…") (emphasis added).

There is no current need for a meet and confer, at least to our knowledge.  We have already sufficiently met and conferred on Citi's failure to offer proper 30(b)(6) witnesses.  Please give us the courtesy of your actual designations without further delay.  If we do not receive them shortly, we will present that issue to the Court so that we can move forward.

I suppose other disputes may arise regarding Citi's refusal to acknowledge our right to gather additional facts from initial deponents it has designated, or about the timeframe in which Citi makes its witnesses available.  But until we have your actual designees and proposed dates, another meet and confer does not seem necessary.  Further, putting your designations and proposed dates in writing is an economical and efficient approach because it permits us to review

**quinn emanuel urquhart & sullivan, llp**
NEW YORK | SAN FRANCISCO | SILICON VALLEY | CHICAGO | WASHINGTON, DC | LONDON | TOKYO | MANNHEIM | MOSCOW | HAMBURG | PARIS |
MUNICH | SYDNEY | HONG KONG | BRUSSELS

them and prepare a response before we discuss them. We have been waiting for your designations since March 5, 2014, so if we do not receive them soon, we will conclude you refuse to provide them and take steps accordingly.

You also propose a meet and confer to "discuss and propose dates" for the derivatives witnesses which Lehman noticed on March 20. In the absence of a dispute, there is nothing to meet and confer about. We request once more that you confirm, in writing, that the deponents noticed on March 20 will be presented on the dates specified, or outline concrete alternatives. We certainly appreciate the information in your April 1 letter about your efforts to gather some of this information, but without having received complete information, we cannot determine yet if there is a dispute to be resolved. Your response, or non-response, to this request will permit us to ascertain whether there is a dispute that requires resolution.

Finally, despite your assertions to the contrary, Plaintiffs join you in hoping to work cooperatively and efficiently on these matters and others. For this very reason, we decline your suggestions to draw out discussion where it is unnecessary at this time.

Kind regards,

Diane C. Hutnyan

cc:    J. Derek Mize, Esq. (via email)
       Rex Lee, Esq. (via email)
       Ellison Ward, Esq. (via email)
       Erika Berg, Esq. (via email)
       William A. Clareman, Esq. (via email)
       Peter Behmke, Esq. (via email)
       George Kroup, Esq. (via email)
       James Wright, Esq. (via email)

2

Exhibit 18

**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**

1285 AVENUE OF THE AMERICAS
NEW YORK, NEW YORK 10019-6064
TELEPHONE (212) 373-3000

LLOYD K GARRISON (1946-1991)
RANDOLPH E PAUL (1946-1956)
SIMON H RIFKIND (1950-1995)
LOUIS S WEISS (1927-1950)
JOHN F WHARTON (1927-1977)

WRITER'S DIRECT DIAL NUMBER
212.373.3321

WRITER'S DIRECT FACSIMILE
212.492.0321

WRITER'S DIRECT E-MAIL ADDRESS
chammerman@paulweiss.com

UNIT 3601, OFFICE TOWER A BEIJING FORTUNE PLAZA
NO 7 DONGSANHUAN ZHONGLU
CHAOYANG DISTRICT
BEIJING 100020
PEOPLE S REPUBLIC OF CHINA
TELEPHONE (86-10) 5828-6300

12TH FLOOR, HONG KONG CLUB BUILDING
3A CHATER ROAD, CENTRAL
HONG KONG
TELEPHONE (852) 2846-0300

ALDER CASTLE
10 NOBLE STREET
LONDON EC2V 7JU, U K
TELEPHONE (44 20) 7367 1600

FUKOKU SEIMEI BUILDING
2-2 UCHISAIWAICHO 2-CHOME
CHIYODA-KU TOKYO 100-0011, JAPAN
TELEPHONE (81-3) 3597-8101

TORONTO-DOMINION CENTRE
77 KING STREET WEST, SUITE 3100
PO BOX 226
TORONTO, ONTARIO M5K 1J3
TELEPHONE (416) 504-0520

2001 K STREET NW
WASHINGTON, DC 20006-1047
TELEPHONE (202) 223-7300

500 DELAWARE AVENUE, SUITE 200
POST OFFICE BOX 32
WILMINGTON, DE 19899-0032
TELEPHONE (302) 655-4410

MATTHEW W ABBOTT
ALLAN J ARFFA
ROBERT A ATKINS
DAVID J BALL
JOHN F BAUGHMAN
LYNN B BAYARD
DANIEL J BELLER
CRAIG A BENSON
MITCHELL L BERG
MARK S BERGMAN
BRUCE BIRENBOIM
H CHRISTOPHER BOEHNING
ANGELO BONVINO
JAMES L BROCHIN
RICHARD J BRONSTEIN
DAVID W BROWN
SUSANNA M BUERGEL
PATRICK S CAMPBELL*
JESSICA S CAREY
JEANETTE K CHAN
YVONNE Y F CHAN
LEWIS R CLAYTON
JAY COHEN
KELLEY A CORNISH
CHRISTOPHER J CUMMINGS
CHARLES E DAVIDOW
DOUGLAS R DAVIS
THOMAS V DE LA BASTIDE III
ARIEL J DECKELBAUM
ALICE BELISLE EATON
ANDREW J EHRLICH
GREGORY A EZRING
LESLIE GORDON FAGEN
MARC FALCONE
ROSS A FIELDSTON
ANDREW C FINCH
BRAD J FINKELSTEIN
BRIAN P FINNEGAN
ROBERTO FINZI
PETER E FISCH
ROBERT C FLEDER
MARTIN FLUMENBAUM
ANDREW J FOLEY
HARRIS B FREIDUS
MANUEL S FREY
ANDREW L GAINES
KENNETH A GALLO
MICHAEL E GERTZMAN
ADAM M GIVERTZ
SALVATORE GOGLIORMELLA
ROBERT D GOLDBAUM
NEIL GOLDMAN
ERIC S GOLDSTEIN
ERIC GOODISON
CHARLES H GOOGE, JR
ANDREW G GORDON
UDI GROFMAN
NICHOLAS GROOMBRIDGE
BRUCE A GUTENPLAN
GAINES GWATHMEY III
ALAN S HALPERIN
JUSTIN G HAMILL
CLAUDIA HAMMERMAN
GERARD E HARPER
BRIAN S HERMANN
ROBERT M HIRSH
MICHELE HIRSHMAN
MICHAEL S HONG
DAVID S HUNTINGTON
LORETTA A IPPOLITO
JAREN JANGHORBANI

MEREDITH J KANE
ROBERTA A KAPLAN
BRAD S KARP
PATRICK N KARSNITZ
JOHN C KENNEDY
ALAN W KORNBERG
DANIEL J KRAMER
DAVID K LAKHDHIR
STEPHEN P LAMB*
JOHN E LANGE
DANIEL J LEFFELL
XIAOYU GREG LIU
JEFFREY D MARELL
MARCO V MASOTTI
EDWIN S MAYNARD
DAVID W MAYO
ELIZABETH R McCOLM
MARK F MENDELSOHN
WILLIAM B MICHAEL
TOBY S MYERSON
CATHERINE NYARADY
JANE B O'BRIEN
ALEX YOUNG K OH
BRAD R OKUN
KELLEY D PARKER
MARC E PERLMUTTER
VALERIE E RADWANER
CARL L REISNER
WALTER G RICCIARDI
WALTER RIEMAN
RICHARD A ROSEN
ANDREW N ROSENBERG
JACQUELINE P RUBIN
RAPHAEL M RUSSO
JEFFREY D SAFERSTEIN
JEFFREY B SAMUELS
DALE M SARRO
TERRY E SCHIMEK
KENNETH M SCHNEIDER
ROBERT B SCHUMER
JAMES H SCHWAB
JOHN M SCOTT
STEPHEN J SHIMSHAK
DAVID R SICULAR
MOSES SILVERMAN
STEVEN SIMKIN
JOSEPH J SIMONS
MARILYN SOBEL
AUDRA J SOLOWAY
SCOTT M SONTAG
TARUN M STEWART
ERIC ALAN STONE
AIDAN SYNNOTT
ROBYN F TARNOFSKY
MONICA K THURMOND
DANIEL J TOAL
LIZA M VELAZQUEZ
MARIA T VULLO
ALEXANDRA M WALSH*
LAWRENCE G WEE
THEODORE V WELLS, JR
BETH A WILKINSON
STEVEN J WILLIAMS
LAWRENCE I WITDORCHIC
MARK B WLAZLO
JULIA MASON WOOD
JORDAN E YARETT
KAYE N YOSHINO
TONG YU
TRACEY A ZACCONE
T ROBERT ZOCHOWSKI, JR

*NOT ADMITTED TO THE NEW YORK BAR

April 3, 2014

**By Email**

Diane C. Hutnyan
Quinn Emanuel
865 South Figueroa Street, 10th Floor
Los Angeles, CA  90017-2543

J. Derek Mize
Curtis, Mallet-Prevost, Colt & Mosle LLP
101 Park Avenue
New York, New York 10178

*Lehman Brothers Holdings Inc., et al. v. Citibank, N.A., et al.*
Adv. Proc. No. 12-01044 (SCC)

Dear Diane:

I write in response to your April 3 letter regarding derivatives-related depositions.

We are disappointed with plaintiffs' persistent refusal to engage in good faith to meet and confer regarding this discovery. In the broader context of this case, in which we have successfully met and conferred with your co-counsel regarding deposition scheduling regarding the non-derivatives claims in precisely the manner you reject as neither "economical" nor "efficient" — and have through that process scheduled more than a dozen depositions in the time you have devoted entirely to letter writing — we can only interpret plaintiffs' behavior as a deliberate effort to delay the commencement of derivatives-related depositions. Your protestations that plaintiffs wish to be cooperative and efficient in planning for these depositions is flatly contradicted by the record, and by your refusal to engage in any dialogue on the asserted grounds that you cannot be compelled to do so under the applicable local rules of procedure. To put it gently, the

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

Diane C. Hutnyan & J. Derek Mize                                                    2

claim that you wish to be cooperative is extremely difficult to square with the simultaneous refusal to discuss our differences in a meet and confer.

To review the history of the parties' exchanges regarding this discovery:

Under the existing scheduling order, deposition discovery was permitted to begin on February 3, 2014 and ends on June 27, 2014. On December 17, 2013, defendants wrote to plaintiffs to begin planning for depositions, and provided a preliminary list of individuals whose testimony might be sought during the deposition discovery phase of the case, and inquired which of the various witnesses would be represented by Lehman's counsel, and which would not. We did not receive a response, and on January 15, 2014, we wrote again to inquire about plaintiffs' progress in gathering the information needed to respond to our letter. On January 22, 2014, we received a partial response identifying some of the individuals who would be represented by plaintiffs' counsel. This response did not, however, provide any information about any depositions that plaintiffs wished to take.

On March 4, 2014, we again wrote to plaintiffs concerning deposition planning, and identified additional, derivatives-specific witnesses we wished to depose, and requested a meet and confer to discuss deposition scheduling. In response, on March 5, 2014, plaintiffs served two Rule 30(b)(6) deposition notices, one by Quinn Emanuel addressing derivatives covering 15 topics (many more including subtopics), and one by Curtis Mallet addressing other aspects of the case, both of which were returnable on May 5, 2014. On March 10, 2014, we received from Curtis Mallet a list of 26 witnesses whom they wished to depose, and on March 11, 2014 we had an initial meet and confer to discuss deposition scheduling concerning these witnesses. At that time, we received nothing from plaintiffs regarding derivatives-related witnesses they wished to depose.

During the meet and confer on March 11, 2014, we explained that given the breadth of the sweeping Rule 30(b)(6) deposition topics pertaining to derivatives, many witnesses would be required to address all of the subjects identified, and we explained that designations could be most economically made if plaintiffs provided a list of fact witnesses from whom testimony would be sought. (*See* March 13, 2014 letter from C. Hammerman, at 4-5.) In response, on March 17, 2014 – and despite being more than one-and-a-half months into the deposition discovery period – plaintiffs refused to identify any witnesses at all, and insisted that we instead first make designations in response to plaintiffs extremely broad Rule 30(b)(6) notice, which plaintiffs amended to make returnable on April 1, 2014. (*See* March 17, 2014 letter from D. Hutnyan, at 1-3.) Ironically, although plaintiffs refused to identify any derivatives witnesses from whom fact depositions would be sought, plaintiffs simultaneously refused to agree to limit the number of depositions to 60 per side. (*Id.* at 3.) In response to plaintiffs' position, we offered to designate a list of nine head traders whose depositions would likely be taken in any event in the case – and which depositions would inevitably cover the *topics* set forth in the Rule 30(b)(6) notice – and proposed that plaintiffs begin taking these depositions in mid-April. (March 20, 2014 letter from C. Hammerman, at 2-3.) Again, plaintiffs

Diane C. Hutnyan & J. Derek Mize                                    3

refused to accept this proposal, and in response to our further complaint that plaintiffs
still had not noticed any depositions of any fact witnesses pertaining to derivatives, on
March 20, 2014, plaintiffs noticed depositions from eleven derivatives traders, only one
of whom is located in New York and presently employed by Citi (and can therefore be
scheduled with relative ease and flexibility). The remaining five current employees are
all located abroad – four in Asia and Australia. Five of the eleven witnesses are former
employees, three of whom are located outside the United States.

        Plaintiffs' conduct clearly evidences a desire to drag out the deposition
process for as long as possible. We are now less than three months from the end of fact
discovery, and still plaintiffs have only identified 11 derivatives-related witnesses whose
depositions will be sought. In the interest of moving this process forward, and in order to
devise a deposition schedule that can be completed roughly within the time period
contemplated by the existing scheduling order, we will accommodate plaintiffs' demand
to put in writing our designations and proposed dates. As we have explained previously,
all of Citi's witnesses will only be deposed once, and to the extent any witness is
designated as a corporate representative pursuant to Rule 30(b)(6), that Rule 30(b)(6)
deposition will double as plaintiffs' sole opportunity to depose the witness in his or her
individual capacity as well. Moreover, for planning purposes, we will as a general matter
designate the first current employee whose deposition is taken from each of the various
derivatives trading businesses in response to Topics 1(a) and 1(b) for their respective
businesses. We will designate the senior traders we identified previously with respect to
the remaining Topics, with the exception of Topic 5 (concerning technological archiving
issues), and Topics 14 and 15, which we do not understand and which require
clarification in order to enable us to make appropriate designations.

        Consistent with the foregoing, we propose the deposition schedule set
forth below. In addition to proposing dates for the current employees plaintiffs have
noticed and certain of the head traders referenced in our letter of March 20, 2014, we
have also proposed dates for derivatives traders who are located in New York, and who
are still employed by Citi, because plaintiffs have indicated they will seek their
depositions and because they are located in New York.

- April 11, 2014: Joshua Kogan, both in his individual capacity and as
  Citi's corporate representative regarding Topics 1(a) and (b) in
  plaintiffs' derivatives-related Rule 30(b)(6) notice pertaining to the
  Subprime Portfolio Group.[1]

---

[1]    With respect to plaintiffs' request for organizational charts for the derivatives trading businesses, we
have located an organizational chart for SPG that was collected by Paul Weiss years ago in connection
with another matter. We cannot confirm at this time whether the chart is entirely accurate as of
September 2008. A copy of that chart is attached hereto.

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

Diane C. Hutnyan & J. Derek Mize                                                4

- April 16, 2014:  Stuart Staley, both in his individual capacity and as a corporate representative regarding Topics 1–4, and 6–13 in plaintiffs' derivatives-related Rule 30(b)(6) notice pertaining to Commodities.

- May 1, 2014:  Vikram Prasad, both in his individual capacity and as a corporate representative regarding Topics 1(a) and (b) in plaintiffs' derivatives-related Rule 30(b)(6) notice pertaining to Portfolio & Exotics Credit Derivatives ("PECD").

- May 7, 2014:  Shahed Shafi, both in his individual capacity and as a corporate representative regarding Topics 1(a) and (b) in plaintiffs' derivatives-related Rule 30(b)(6) notice pertaining to Flow Credit Trading.

- May 9, 2014:  Eliot Rubenzahl, both in his individual capacity and as a corporate representative regarding Topics 1–4, and 6–13 in plaintiffs' derivatives-related Rule 30(b)(6) notice pertaining to Global Securitized Markets ("GSM").

- May 13, 2014:  Jay Huang (PECD), in his individual capacity.

- May 16, 2014:  Mickey Bhatia, both in his individual capacity and as a corporate representative regarding Topics 2–4, and 6–13 in plaintiffs' derivatives-related Rule 30(b)(6) notice pertaining to PECD.

- May 20, 2014:  Ted Counihan (GSM), in his individual capacity.

- May 30, 2014:  Itay Tuchman, both in his individual capacity and as a corporate representative regarding Topics 1(a) and (b) in plaintiffs' derivatives-related Rule 30(b)(6) notice pertaining to the G10 FX business.

- June 5, 2014:  Brian Archer, in both his individual capacity and in response to Topics 2–4, and 6–13 in plaintiffs' derivatives-related Rule 30(b)(6) notice pertaining to Flow Credit Trading.

- June 10, 2014:  John Heppolette, in both his individual capacity and in response to Topics 1–4, and 6–13 in plaintiffs' derivatives-related Rule 30(b)(6) notice pertaining to Municipal Capital Markets.

- July 1, 2014:  Marc Pagano, in both his individual capacity and in response to Topics 1–4, and 6–13 in plaintiffs' derivatives-related Rule 30(b)(6) notice pertaining to Emerging Markets Credit Trading.

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

Diane C. Hutnyan & J. Derek Mize                                                    5

      We are continuing to work with Alain Verdickt (based in Australia), Varadarajan Subbaraman (based in Singapore), and Didier Magloire (based in Hong Kong), to determine dates they can be made available in New York for deposition. We are also continuing to discuss scheduling with Frederic Jallot and Jeff Feig, whom we expect to designate as corporate representatives for Topics 2–4, and 6–13 in plaintiffs' derivatives-related Rule 30(b)(6) notice pertaining to SPG and the G10 FX business.

      Moreover, as we have previously noted, given the number of witnesses and subjects identified in plaintiffs' Rule 30(b)(6) notice, we reserve the right to alter our designations in advance of each deposition as we learn more about the scope of the witnesses' knowledge regarding the various subject matters identified. In all events, we will endeavor to inform plaintiffs sufficiently ahead of time if we need to withdraw any of the Rule 30(b)(6) designations referred to above.

              \*            \*            \*

      We write without prejudice to any of defendants' rights, all of which are expressly reserved.

                   Very truly yours,

                   Claudia Hammerman / WAC

                   Claudia Hammerman

cc:    Counsel of Record

Attachment A



Sub-Prime Portfolio Group

Exhibit 19

**Clareman, William**

| | |
|---|---|
| **From:** | Rex Lee <rexlee@quinnemanuel.com> |
| **Sent:** | Monday, April 07, 2014 10:34 PM |
| **To:** | Clareman, William; Diane Hutnyan; 'J. Derek Mize (dmize@curtis.com)'; 'Peter J. Behmke (pbehmke@curtis.com)'; Ellison Ward; 'Wright, James' |
| **Cc:** | Hammerman, Claudia; Velazquez, Liza; Shimshak, Stephen J; Kroup, George W |
| **Subject:** | RE: LBHI v. Citibank, NA |

Billy,

April 15 will not work either for Kogan.  If he is otherwise unavailable in April, we appreciate you looking into his availability for May.

Thanks,
Rex

**From:** Clareman, William [mailto:wclareman@paulweiss.com]
**Sent:** Monday, April 07, 2014 9:31 PM
**To:** Rex Lee; Diane Hutnyan; J. Derek Mize (dmize@curtis.com); Peter J. Behmke (pbehmke@curtis.com); Ellison Ward; Wright, James
**Cc:** Hammerman, Claudia; Velazquez, Liza; Shimshak, Stephen J; Kroup, George W
**Subject:** RE: LBHI v. Citibank, NA

Rex:

For Josh Kogan's deposition, we previously told you that April 25 doesn't work for the witness, which is why we proposed April 11 as an alternative.  Both Josh and Stuart are located abroad, and we expect plaintiffs to be accommodating of the fact that travel to the US poses unique burdens for foreign witnesses, and to be flexible in scheduling their depositions around dates they have other commitments in the United States (as Curtis Mallet has been).  Our proposals for both of these witnesses were made based on this consideration.

I can explore with Kogan tomorrow whether April 15 would work for him.  But if I'm going to make that request, I would like to know in advance whether that would work for plaintiffs.  Please let me know tonight if April 15 is acceptable for Kogan's deposition.  Based on my previous conversations with him about scheduling, he will not otherwise be available in the US in April for a deposition.  I will also inquire about his availability in May.

With respect to Staley, he previously told us that the week of April 21 would not work.  He may have availability the week of April 28; we will follow up with Stuart and revert with a proposal later this week.  (I presume that week is flexible for plaintiffs, as you noticed depositions on April 28 , 29 and 30.)

I look forward to your response.

Best

Billy

**William A. Clareman** | Associate
**Paul, Weiss, Rifkind, Wharton & Garrison LLP**
1285 Avenue of the Americas | New York, NY 10019-6064

1

(212) 373-3248 (Direct Phone) | (212) 492-0248 (Direct Fax)
wclareman@paulweiss.com | www.paulweiss.com

**From:** Rex Lee [mailto:rexlee@quinnemanuel.com]
**Sent:** Monday, April 07, 2014 7:50 PM
**To:** Clareman, William; Diane Hutnyan; J. Derek Mize (dmize@curtis.com); Peter J. Behmke (pbehmke@curtis.com);
Ellison Ward; Wright, James
**Cc:** Hammerman, Claudia; Velazquez, Liza; Shimshak, Stephen J; Kroup, George W
**Subject:** RE: LBHI v. Citibank, NA

Billy,

Those dates will not work for us.  Please propose alternative dates for these witnesses.  In particular, for Mr. Kogan, we
would suggest April 25, the date on which we noticed his deposition.  Please let us know whether Mr. Staley would also
be available the week of April 21.

Thanks,
Rex

**From:** Clareman, William [mailto:wclareman@paulweiss.com]
**Sent:** Monday, April 07, 2014 11:02 AM
**To:** Diane Hutnyan; J. Derek Mize (dmize@curtis.com); Peter J. Behmke (pbehmke@curtis.com); Rex Lee; Ellison Ward;
Wright, James
**Cc:** Hammerman, Claudia; Velazquez, Liza; Shimshak, Stephen J; Kroup, George W
**Subject:** RE: LBHI v. Citibank, NA

Counsel:  Our April 3 letter proposed a schedule to begin derivatives-related depositions, including two in April (Josh
Kogan on April 11, and Stuart Staley on April 16).  Both of these witnesses are located abroad.  To accommodate these
deposition dates, both need to make travel arrangements.  Having not heard from plaintiffs in response, we assume
these dates will work.  Unless we hear otherwise by the end of the day today, we will treat these first two deposition
dates as agreed, and will confirm as much for the witnesses so they can finalize their travel schedules.

Thanks in advance for your cooperation.

Best regards

Billy

**William A. Clareman** | Associate
**Paul, Weiss, Rifkind, Wharton & Garrison LLP**
1285 Avenue of the Americas | New York, NY 10019-6064
(212) 373-3248 (Direct Phone) | (212) 492-0248 (Direct Fax)
wclareman@paulweiss.com | www.paulweiss.com

**From:** Clareman, William
**Sent:** Thursday, April 03, 2014 9:24 PM
**To:** Diane Hutnyan (dianehutnyan@quinnemanuel.com); J. Derek Mize (dmize@curtis.com); Peter J. Behmke
(pbehmke@curtis.com); Rex Lee (rexlee@quinnemanuel.com); Ellison Ward; 'Wright, James'
**Cc:** Hammerman, Claudia; Velazquez, Liza; Shimshak, Stephen J; Kroup, George W
**Subject:** LBHI v. Citibank, NA

Counsel:

Please see the attached correspondence.

Best regards

Billy

**William A. Clareman** | Associate
**Paul, Weiss, Rifkind, Wharton & Garrison LLP**
1285 Avenue of the Americas | New York, NY 10019-6064
(212) 373-3248 (Direct Phone) | (212) 492-0248 (Direct Fax)
wclareman@paulweiss.com | www.paulweiss.com

This message is intended only for the use of the Addressee and may contain information that is privileged and confidential. If you are not the intended recipient, you are hereby notified that any dissemination of this communication is strictly prohibited. If you have received this communication in error, please erase all copies of the message and its attachments and notify us immediately.

Exhibit 20

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

1285 AVENUE OF THE AMERICAS
NEW YORK, NEW YORK 10019-6064
TELEPHONE (212) 373-3000

LLOYD K. GARRISON  (1946-1991)
RANDOLPH E. PAUL  (1946-1956)
SIMON H. RIFKIND  (1950-1995)
LOUIS S. WEISS  (1927-1950)
JOHN F. WHARTON  (1927-1977)

UNIT 3601, OFFICE TOWER A, BEIJING FORTUNE PLAZA
NO. 7 DONGSANHUAN ZHONGLU
CHAOYANG DISTRICT
BEIJING 100020
PEOPLE'S REPUBLIC OF CHINA
TELEPHONE (86-10) 5828-6300

12TH FLOOR, HONG KONG CLUB BUILDING
3A CHATER ROAD, CENTRAL
HONG KONG
TELEPHONE (852) 2846-0300

ALDER CASTLE
10 NOBLE STREET
LONDON EC2V 7JU, U.K.
TELEPHONE (44 20) 7367 1600

FUKOKU SEIMEI BUILDING
2-2 UCHISAIWAICHO 2-CHOME
CHIYODA-KU, TOKYO 100-0011, JAPAN
TELEPHONE (81-3) 3597-8101

TORONTO-DOMINION CENTRE
77 KING STREET WEST, SUITE 3100
P.O. BOX 226
TORONTO, ONTARIO M5K 1J3
TELEPHONE (416) 504-0520

2001 K STREET, NW
WASHINGTON, DC 20006-1047
TELEPHONE (202) 223-7300

500 DELAWARE AVENUE, SUITE 200
POST OFFICE BOX 32
WILMINGTON, DE 19899-0032
TELEPHONE (302) 855-4410

WRITER'S DIRECT DIAL NUMBER
212.373.3321

WRITER'S DIRECT FACSIMILE
212.492.0321

WRITER'S DIRECT E-MAIL ADDRESS
chammerman@paulweiss.com

MATTHEW W. ABBOTT
ALLAN J. ARFFA
ROBERT A. ATKINS
DAVID J. BALL
JOHN F. BAUGHMAN
LYNN B. BAYARD
DANIEL J. BELLER
CRAIG A. BENSON
MITCHELL L. BERG
MARK S. BERGMAN
BRUCE BIRENBOIM
H. CHRISTOPHER BOEHNING
ANGELO BONVINO
JAMES L. BROCHIN
RICHARD J. BRONSTEIN
DAVID W. BROWN
SUSANNA M. BUERGEL
PATRICK S. CAMPBELL*
JESSICA S. CAREY
JEANETTE K. CHAN
YVONNE Y. F. CHAN
LEWIS R. CLAYTON
JAY COHEN
KELLEY A. CORNISH
CHRISTOPHER J. CUMMINGS
CHARLES E. DAVIDOW
DOUGLAS R. DAVIS
THOMAS V. DE LA BASTIDE III
ARIEL J. DECKELBAUM
ALICE BELISLE EATON
ANDREW J. EHRLICH
GREGORY A. EZRING
LESLIE GORDON FAGEN
MARC FALCONE
ROSS A. FIELDSTON
ANDREW C. FINCH
BRAD J. FINKELSTEIN
BRIAN P. FINNEGAN
ROBERTO FINZI
PETER E. FISCH
ROBERT C. FLEDER
MARTIN FLUMENBAUM
ANDREW J. FOLEY
HARRIS B. FREIDUS
MANUEL S. FREY
ANDREW L. GAINES
KENNETH A. GALLO
MICHAEL E. GERTZMAN
ADAM M. GIVERTZ
SALVATORE GOGLIORMELLA
ROBERT D. GOLDBAUM
NEIL GOLDMAN
ERIC S. GOLDSTEIN
ERIC GOODISON
CHARLES H. GOOGE, JR.
ANDREW G. GORDON
UDI GROFMAN
NICHOLAS GROOMBRIDGE
BRUCE A. GUTENPLAN
GAINES GWATHMEY, III
ALAN S. HALPERIN
JUSTIN G. HAMILL
CLAUDIA HAMMERMAN
GERARD E. HARPER
BRIAN S. HERMANN
ROBERT M. HIRSH
MICHELE HIRSHMAN
MICHAEL S. HONG
DAVID S. HUNTINGTON
LORETTA A. IPPOLITO
JAREN JANGHORBANI

MEREDITH J. KANE
ROBERTA A. KAPLAN
BRAD S. KARP
PATRICK N. KARSNITZ
JOHN C. KENNEDY
ALAN W. KORNBERG
DANIEL J. KRAMER
DAVID K. LAKHDHIR
STEPHEN P. LAMB*
JOHN E. LANGE
DANIEL J. LEFFELL
XIAOYU GREG LIU
JEFFREY D. MARELL
MARCO V. MASOTTI
EDWIN S. MAYNARD
DAVID W. MAYO
ELIZABETH R. McCOLM
MARK F. MENDELSOHN
WILLIAM B. MICHAEL
TOBY S. MYERSON
CATHERINE NYARADY
JANE B. O'BRIEN
ALEX YOUNG K. OH
BRAD R. OKUN
KELLEY D. PARKER
MARC E. PERLMUTTER
VALERIE E. RADWANER
CARL L. REISNER
WALTER G. RICCIARDI
WALTER RIEMAN
RICHARD A. ROSEN
ANDREW N. ROSENBERG
JACQUELINE P. RUBIN
RAPHAEL M. RUSSO
JEFFREY D. SAFERSTEIN
JEFFREY B. SAMUELS
DALE M. SARRO
TERRY E. SCHIMEK
KENNETH M. SCHNEIDER
ROBERT B. SCHUMER
JAMES H. SCHWAB
JOHN M. SCOTT
STEPHEN J. SHIMSHAK
DAVID R. SICULAR
MOSES SILVERMAN
STEVEN SIMKIN
JOSEPH J. SIMONS
MARILYN SOBEL
AUDRA J. SOLOWAY
TARUN M. STEWART
ERIC ALAN STONE
AIDAN SYNNOTT
ROBYN F. TARNOFSKY
MONICA K. THURMOND
DANIEL J. TOAL
LIZA M. VELAZQUEZ
MARIA T. VULLO
ALEXANDRA M. WALSH*
LAWRENCE G. WEE
THEODORE V. WELLS, JR.
BETH A. WILKINSON
STEVEN J. WILLIAMS
LAWRENCE I. WITDORCHIC
MARK B. WLAZLO
JULIA MASON WOOD
JORDAN E. YARETT
KAYE N. YOSHINO
TONG YU
TRACEY A. ZACCONE
T. ROBERT ZOCHOWSKI, JR.

*NOT ADMITTED TO THE NEW YORK BAR

April 8, 2014

**By Email**

Diane C. Hutnyan
Quinn Emanuel
865 South Figueroa Street, 10th Floor
Los Angeles, CA  90017-2543

J. Derek Mize
Curtis, Mallet-Prevost, Colt & Mosle LLP
101 Park Avenue
New York, New York 10178

*Lehman Brothers Holdings Inc., et al. v. Citibank, N.A., et al.*
Adv. Proc. No. 12-01044 (SCC)

Dear Diane and Derek:

We write regarding the difficulties that we are encountering with deposition scheduling for the witnesses being handled by both of your firms.  We have attempted to work cooperatively with both of your firms to schedule depositions, and to that end we have made several scheduling proposals for which we continue to await a response.  To give context to our remarks, the dates we propose to you are the end result of considerable effort spent with each witness and the witness's schedule to identify days when they can absent themselves from work and, in many cases, travel long distances.  When we propose dates to you, the witnesses block those dates out on their calendar, foreclosing other business travel, business meetings, and other events, including personal events, during those dates.  The resources of your two firms are substantial; we believe that, absent extenuating circumstances, it should take no more than 48 hours (indeed, considerably less), for you to get back to us as to whether a proposed date will work.  That interval provides sufficient time for counsel to consult their calendars to determine availability.  Given plaintiffs' refusal to cap depositions in this case at sixty per side, we can only conclude that lawyers at each of your firms have sufficiently cleared

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

Diane C. Hutnyan & J. Derek Mize                                    2

their calendars to accomplish the depositions you intend to seek within the time allotted under the scheduling order. For these reasons, we summarize our outstanding proposals below and ask that you confirm these dates by no later than the close of business tomorrow, April 9. If we do not hear from you by that time, we will consider the proposed dates as confirmed.

*First*, in a letter dated April 3, 2014, we proposed dates for twelve derivatives-related depositions that plaintiffs informed us they wished to take, including ten designations in response to plaintiffs' Rule 30(b)(6) notice. Yesterday, hearing nothing from you, we sent a follow-up request regarding the first two proposed dates—April 11 for Joshua Kogan (resident in London but available in New York that day), and April 16 for Stuart Staley (also resident in London but available in New York that day)—and were advised that neither date would work. You also rejected April 15 as an alternative date for Mr. Kogan. We offer Mr. Staley's deposition on April 30 as an alternative. Again, as with the other proposals in our April 3 letter, we request your confirmation by the close of business tomorrow as to whether this will work.

*Second*, you have still not confirmed whether you will take Thomas Schwartz's deposition on Tuesday, May 20, a date we first proposed during a meet and confer on Tuesday, April 1. It should not take plaintiffs' counsel a week to determine if they are available for a deposition date six weeks from now. Please confirm by close of business tomorrow whether or not you will be taking Mr. Schwartz's deposition on that day, as he has been holding the date open and requires a response.

*Third*, as set forth in George Kroup's April 3 letter (and repeated during a call yesterday), we do not consider the date of Melissa Torres's deposition to be an open issue. Plaintiffs noticed Ms. Torres' deposition for Tuesday, April 29, and during our meet and confer call on April 1 we confirmed with you that Ms. Torres was available that day. You agreed that the deposition would go forward on April 29. Barring any unforeseen developments, we expect that you will proceed with this deposition on the date you noticed it, a date that was confirmed four weeks before the deposition.

Separately, during our meet and confer call on April 1, we asked that you provide us with current contact information for former Lehman employees listed in our March 4 letter resident in foreign countries whom you have been able to locate. As we explained, because these former employees have all told you that they will not appear voluntarily for deposition, we require their contact information if we are to initiate proceedings under the Hague Convention to obtain their testimony. Because you have been in contact with these individuals, their contact information should be readily available to you, and we ask that you provide it to us by the close of business tomorrow.

*Finally*, we understand that you have not yet made any effort to obtain the testimony of Paolo Tonucci or Ian Lowitt, the only individuals plaintiffs have identified as witnesses to Citi's alleged oral waiver of its setoff rights in the $2 billion deposit. During our March 11 meet and confer concerning deposition scheduling, we asked you

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

Diane C. Hutnyan & J. Derek Mize                                    3

whether you intended to seek their testimony. You said you were still considering whether you would. Two weeks later, on March 25, we again asked what steps you intended to take to depose Messrs. Lowitt and Tonucci. As to Mr. Tonucci, you replied that because he is in Australia and will likely testify only if compelled to do so, you do not plan to seek his deposition. As to Mr. Lowitt, you told us that he is available to testify in New York, but that you have no present intention of noticing his deposition. We made clear our position that, because Messrs. Lowitt and Tonucci will testify about matters for which plaintiffs bear the burden of proof—the alleged oral waiver of setoff rights in the $2 billion, and LBHI's alleged fraudulent intent in transferring $500 million to LBI on September 14, 2008—defendants see no need for their testimony and will not seek their depositions. Plaintiffs have still not given us any indication that they want testimony from these witnesses who appear to be central to plaintiffs' affirmative claims. Nevertheless, should plaintiffs notice one or both of their depositions, we ask that you coordinate scheduling and other logistical matters with us, as we will no doubt wish to cross-examine them.

                        *            *            *

        We write without prejudice to any of defendants' rights, all of which are expressly reserved.

                            Very truly yours,

                            Claudia L. Hammerman

cc:    Counsel of Record

Exhibit 21

**quinn emanuel** trial lawyers | los angeles

865 South Figueroa Street, 10th Floor, Los Angeles, California 90017-2543 | TEL (213) 443-3000 FAX (213) 443-3100

WRITER'S DIRECT DIAL NO.
**(213) 443-3666**

WRITER'S INTERNET ADDRESS
dianehutnyan@quinnemanuel.com

April 9, 2014

Claudia Hammerman, Esq.
Paul, Weiss, Rifkind, Wharton & Garrison LLP
1285 Avenue of the Americas
New York, New York 10019-6064

Re: *Lehman Brothers Holdings Inc., et al. v. Citibank, N.A., et al.*
Adv. Proc. No. 12-01044 (SCC)

Dear Claudia:

I write with regard to the deposition scheduling issues outlined in your letters of April 3 and April 8, 2014.

Your April 3 letter accuses Plaintiffs of, among other things, "desir[ing] to drag out the deposition process for as long as possible" and demonstrating "a deliberate effort to delay the commencement of derivatives-related depositions." Yet since March 25, Plaintiffs have received three different substantial waves of documents from Defendants, including a production as recently as April 4. *See* Letter from Ezra Sternstein to Derek Mize and Rex Lee dated March 26, 2014; Letter from Ezra Sternstein to Derek Mize and Rex Lee dated March 31, 2014; Letter from Ezra Sternstein to Derek Mize and Rex Lee dated April 4, 2014. In fact, Citi has produced over 150,000 documents since the Court's deadline for substantial completion of document production. Each of these belated productions by Citi "drag[s] out" discovery and "delay[s] the commencement" of depositions; indeed, they delay the entire case schedule. And without having received any useful organizational charts, Plaintiffs wanted to start their depositions with 30(b)(6) witnesses, which Citi has stymied by refusing to provide any witness names until quite recently. Accordingly, any suggestion that it is Plaintiffs who have delayed the scheduling of depositions is clearly frivolous.

Moreover, the consistent accusations that we have refused to cooperate in promptly scheduling depositions in this case do not have any basis, and in fact highlight Citi's own negative attitude toward cooperating in this process. It is Defendants who argued over the plain

**quinn emanuel urquhart & sullivan, llp**
NEW YORK | SAN FRANCISCO | SILICON VALLEY | CHICAGO | WASHINGTON, DC | LONDON | TOKYO | MANNHEIM | MOSCOW | HAMBURG | PARIS |
MUNICH | SYDNEY | HONG KONG | BRUSSELS

words of Rule 30(b)(6), thus delaying Plaintiffs' noticed 30(b)(6) depositions, and have offered concrete dates for only three of the eleven fact witnesses that Plaintiffs noticed nearly three weeks ago.

We also do not accept Defendants' attempt to impose artificial deadlines and threats to "consider the proposed dates as confirmed" in the event that Plaintiffs don't adhere to them. We understand and appreciate the sacrifices that witnesses make during this time, when *both* parties are asking their respective employees (or former employees) to remain flexible and patient as the parties reach a mutually agreeable schedule. We do not accept that Citi's witnesses are unable to wait for a definitive answer for more than your arbitrary deadline of 48 hours following each proposal. To be very clear, if we do not confirm a date by your unilaterally imposed deadline, the date is not confirmed. If there is some reason you need an expedited answer as to a particular witness, please let us know; but otherwise we will expect you to be patient and courteous as we prepare our response, and we will do the same.

The statement that Defendants find Plaintiffs' desire to be cooperative in deposition scheduling "difficult to square with the simultaneous refusal to discuss our differences in a meet and confer" is nonsensical. Again, there is no need for a meet and confer unless there is a dispute; parties that are cooperating with respect to scheduling have no need for a meet and confer. We remain, however, happy to continue discussions to cooperatively schedule witnesses on both sides. Further, Plaintiffs have found that—particularly given how much consultation is required to come up with workable dates for a given deposition, as your April 8 letter outlines— the process of proposing and accepting dates in writing by letter or e-mail is a very functional one. We propose to continue moving forward with this productive scheduling process, and hope that Defendants will demonstrate their commitment to cooperation by focusing on scheduling rather than *ad hominem* attacks.

In that spirit, we seek to address the following discovery issues in an effort to make our positions clear and move both parties towards resolution.

## I.    Citi's 30(B)(6) Designees

With regard to your 30(b)(6) designees, we have identified the following issues:

### A.    Citi's "general" 30(b)(6) designees are unacceptable.

Regarding Topic 1, Citi has proposed to, "as a general matter, designate the first current employee whose deposition is taken from each of the various derivatives trading businesses in response to Topics 1(a) and 1(b) for their respective businesses." Plaintiffs object to this default designation. As we have previously explained, Rule 30(b)(6) of the Federal Rules of Civil Procedure obligates you to designate corporate representatives to testify in response to a 30(b)(6) notice, and does not permit you to impose prerequisites on those designations or to shift the obligation to designate onto the noticing party. *See* Letter from Diane Hutnyan to Claudia Hammerman dated March 17, 2014. We request that you immediately designate witnesses for outstanding 30(b)(6) topics (particularly Topics 1(a) and (b), 5, 14, and 15) and businesses (particularly rates businesses). We also remind you that, while we will work in good faith to limit the burden of testifying on Citi witnesses where possible, where Citi selects 30(b)(6)

designees that will also be fact witnesses, it exposes those individuals to the risk of being deposed twice. *See* Letter from Diane Hutnyan to Claudia Hammerman dated March 31, 2014.

B.     Clarification on Topics 14 and 15.

In light of Defendants' inability to understand Topics 14 and 15, we offer these brief clarifications:

Topic 14: "Citi's policies and procedures for processing Derivatives transactions in Citi's ticketing, risk management, and accounting systems." This topic seeks to understand the migration of the Lehman trades to Citi's management book. We are aware that certain Derivatives businesses use a ticketing system to generate trade details, which are then inputted into risk and account systems. The designee for this topic should be able to explain how this process worked at Citi.

Topic 15: "Citi's policies and procedures for managing the collection of cash related to settlements of Derivatives positions." This topic seeks to understand the operational process for how cash was taken in and recorded at Citi in connection with the settlement of derivatives positions. This includes the processes for both cash due under the trades and cash due to meet margin calls.

Please promptly designate witnesses who can testify regarding these topics.

II.     **Deposition Scheduling**

With regard to deposition scheduling, we have identified the following issues:

A.     Plaintiffs' March 20 deposition notices.

In its April 3 letter, Citi unilaterally selected and proposed dates for two "derivatives traders who are located in New York, and who are still employed by Citi": Jay Huang and Ted Counihan. While we appreciate your suggestions for additional fact witnesses that we have not noticed, we intend to proceed with the witnesses we notice in the order we notice them, to the extent permitted by the witnesses' schedules. We do not accept your proposed dates for these witnesses.

At the same time that your proposed deposition schedule in the April 3 letter adds non-noticed witnesses, it omits five of the Citi employees that Plaintiffs *did* notice: Brian Connors, Robert Dockray, Antoine Pain, Tom Giardi, and Richard Skeet.[1] Please provide dates for these witnesses promptly.

---

[1] We acknowledge and appreciate that you are "working with" the remaining Citi employees or former employees noticed on March 20 but absent from your deposition schedule proposal: Alain Verdickt, Varadarajan Subbaraman, and Didier Magloire.

3

B.    Additional deposition scheduling.

While, as described above, we object to Defendants' method of demanding confirmation of dates for Stuart Staley, Thomas Schwartz, and Melissa Torres, our responses to these dates are as follows[2]:

- Stuart Staley: Plaintiffs accept April 30 for the deposition of Mr. Staley.

- Thomas Schwartz: Your suggested date of May 20 for Mr. Schwartz's deposition does not work with our schedule. Please propose an alternative date for Mr. Schwartz during the week of June 2.

- Melissa Torres: In spite of Citi's unilateral declaration that "we do not consider the date of Melissa Torres's deposition to be an open issue," given that Citi has produced over a thousand custodial documents for Ms. Torres since March 21, Plaintiffs can no longer agree to a date of April 29 for her deposition. Furthermore, we have made changes to "confirmed" deposition dates for Reto Faber and Thomas Isaac at Citi's request, and expect you to extend us the same courtesy. Please propose an alternative date for Ms. Torres during the week of May 26.

We also accept the dates proposed in your April 3 letter for Vikram Prasad, Shahed Shafi, Itay Tuchman, John Heppolette, and Marc Pagano.

C.    Contact information for former Lehman employees.

In your letter of April 8, you asked us to provide current contact information for former Lehman employees who reside in foreign countries. As was discussed in our meet and confer on April 1, there are laws in many of the foreign jurisdictions in which the former Lehman employees reside that do not allow the disclosure of personal identifying information. For example, the United Kingdom's Data Protection Act of 1998, which was enacted by the United Kingdom Parliament in accordance with the European Union Data Protection Directive of 1995, prohibits the disclosure of an individual's name and contact information without consent. The requirements of notice and consent vary between jurisdictions, and we do not intend to fully research this highly developed area of law for every jurisdiction in which one of the former Lehman employees reside. We believe this information is accessible to you through social media and other sources such as Lexis Nexis and Bloomberg.

III.    **Citi's Ongoing Document Production**

As previously mentioned, although we are now over two months out from the substantial completion deadline for document production, Citi has continued to make ongoing, voluminous

---

[2] Your letter does not appear to propose a new date for Joshua Kogan.

4

document productions.[3]  Given that Citi appears to be producing more and more documents every week, Plaintiffs cannot reliably commit to offered deposition dates unless we have received a comprehensive set of documents with which to prepare for those depositions—and indeed, these late productions threaten to throw off the entire case schedule.  Accordingly, we request that Citi certify that its document production is now, in fact, substantially complete.  Our acceptance of deposition dates for several deponents, set forth above, is conditioned on Citi providing such a certification.  Additionally, to the extent that Citi's late production of documents leaves Plaintiffs with insufficient time to review and understand those documents prior to a deposition, we reserve the right to reschedule the deposition or recall the witness.

Kind regards,

Diane C. Hutnyan

cc:    William A. Clareman, Esq. (via email)
       George Kroup, Esq. (via email)
       Ezra Sternstein, Esq. (via email)
       James Wright, Esq. (via email)
       Peter Behmke, Esq. (via email)
       J. Derek Mize, Esq. (via email)
       Ada Añon, Esq. (via email)
       Rex Lee, Esq. (via email)
       Ellison Ward, Esq. (via email)

---

[3]  Citi's late productions are having a direct impact on our ability to prepare for the upcoming depositions.  For example, within the past month we have received 1,337 custodial documents for Melissa Torres, whom you proposed that Plaintiffs depose on April 29.  Similarly, within the past month Citi has produced 3,587 documents for Vikram Prasad, whom you have offered for deposition on May 1.  For Stuart Staley, whose deposition you propose for April 30, you have produced a total of 1,009 documents – 596 of which were produced within the last month.

5

Exhibit 22

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

1285 AVENUE OF THE AMERICAS
NEW YORK, NEW YORK 10019-6064

TELEPHONE (212) 373-3000

LLOYD K. GARRISON (1946-1991)
RANDOLPH E. PAUL (1946-1956)
SIMON H. RIFKIND (1950-1995)
LOUIS S. WEISS (1927-1950)
JOHN F. WHARTON (1927-1977)

WRITER'S DIRECT DIAL NUMBER

212.373.3321

WRITER'S DIRECT FACSIMILE

212.492.0321

WRITER'S DIRECT E-MAIL ADDRESS

chammerman@paulweiss.com

UNIT 3601, OFFICE TOWER A, BEIJING FORTUNE PLAZA
NO. 7 DONGSANHUAN ZHONGLU
CHAOYANG DISTRICT
BEIJING 100020
PEOPLE'S REPUBLIC OF CHINA
TELEPHONE (86-10) 5828-6300

12TH FLOOR, HONG KONG CLUB BUILDING
3A CHATER ROAD, CENTRAL
HONG KONG
TELEPHONE (852) 2846-0300

ALDER CASTLE
10 NOBLE STREET
LONDON EC2V 7JU, U.K.
TELEPHONE (44 20) 7367 1600

FUKOKU SEIMEI BUILDING
2-2 UCHISAIWAICHO 2-CHOME
CHIYODA-KU, TOKYO 100-0011, JAPAN
TELEPHONE (81-3) 3597-8101

TORONTO-DOMINION CENTRE
77 KING STREET WEST, SUITE 3100
TORONTO, ONTARIO M5K 1J3
TELEPHONE (416) 504-0520

2001 K STREET, NW
WASHINGTON, DC 20006-1047
TELEPHONE (202) 223-7300

500 DELAWARE AVENUE, SUITE 200
POST OFFICE BOX 32
WILMINGTON, DE 19899-0032
TELEPHONE (302) 655-4410

MATTHEW W. ABBOTT
ALLAN J. ARFFA
ROBERT A. ATKINS
DAVID J. BALL
JOHN F. BAUGHMAN
LYNN B. BAYARD
DANIEL J. BELLER
CRAIG A. BENSON
MITCHELL L. BERG
MARK S. BERGMAN
BRUCE BIRENBOIM
H. CHRISTOPHER BOEHNING
ANGELO BONVINO
JAMES L. BROCHIN
RICHARD J. BRONSTEIN
DAVID W. BROWN
SUSANNA M. BUERGEL
PATRICK S. CAMPBELL*
JESSICA S. CAREY
JEANETTE K. CHAN
YVONNE Y. F. CHAN
LEWIS R. CLAYTON
JAY COHEN
KELLEY A. CORNISH
CHRISTOPHER J. CUMMINGS
CHARLES E. DAVIDOW
DOUGLAS R. DAVIS
THOMAS V. DE LA BASTIDE III
ARIEL J. DECKELBAUM
ALICE BELISLE EATON
ANDREW J. EHRLICH
GREGORY A. EZRING
LESLIE GORDON FAGEN
MARC FALCONE
ROSS A. FIELDSTON
ANDREW C. FINCH
BRAD J. FINKELSTEIN
BRIAN P. FINNEGAN
ROBERTO FINZI
PETER E. FISCH
ROBERT C. FLEDER
MARTIN FLUMENBAUM
ANDREW J. FOLEY
HARRIS B. FREIDUS
MANUEL S. FREY
ANDREW L. GAINES
KENNETH A. GALLO
MICHAEL E. GERTZMAN
ADAM M. GIVERTZ
SALVATORE GOGLIORMELLA
ROBERT D. GOLDBAUM
NEIL GOLDMAN
ERIC S. GOLDSTEIN
ERIC GOODISON
CHARLES H. GOOGE, JR.
ANDREW G. GORDON
UDI GROFMAN
NICHOLAS GROOMBRIDGE
BRUCE A. GUTENPLAN
GAINES GWATHMEY III
ALAN S. HALPERIN
JUSTIN G. HAMILL
CLAUDIA HAMMERMAN
GERARD E. HARPER
BRIAN S. HERMANN
ROBERT M. HIRSH
MICHELE HIRSHMAN
MICHAEL S. HONG
DAVID S. HUNTINGTON
LORETTA A. IPPOLITO
JAREN JANGHORBANI

MEREDITH J. KANE
ROBERTA A. KAPLAN
BRAD S. KARP
PATRICK N. KARSNITZ
JOHN C. KENNEDY
ALAN W. KORNBERG
DANIEL J. KRAMER
DAVID K. LAKHDHIR
STEPHEN P. LAMB*
JOHN E. LANGE
DANIEL J. LEFFELL
XIAOYU GREG LIU
JEFFREY D. MARELL
MARCO V. MASOTTI
EDWIN S. MAYNARD
DAVID W. MAYO
ELIZABETH R. McCOLM
MARK F. MENDELSOHN
WILLIAM B. MICHAEL
TOBY S. MYERSON
CATHERINE NYARADY
JANE B. O'BRIEN
ALEX YOUNG K OH
BRAD R. OKUN
KELLEY D. PARKER
MARC E. PERLMUTTER
VALERIE E. RADWANER
CARL L. REISNER
WALTER G. RICCIARDI
WALTER RIEMAN
RICHARD A. ROSEN
ANDREW N. ROSENBERG
JACQUELINE P. RUBIN
RAPHAEL M. RUSSO
JEFFREY D. SAFERSTEIN
JEFFREY B. SAMUELS
DALE M. SARRO
TERRY E. SCHIMEK
KENNETH M. SCHNEIDER
ROBERT B. SCHUMER
JAMES H. SCHWAB
JOHN M. SCOTT
STEPHEN J. SHIMSHAK
DAVID R. SICULAR
MOSES SILVERMAN
STEVEN SIMKIN
JOSEPH J. SIMONS
MARILYN SOBEL
AUDRA J. SOLOWAY
SCOTT M. SONTAG
TARUN M. STEWART
ERIC ALAN STONE
AIDAN SYNNOTT
ROBYN F. TARNOFSKY
MONICA K. THURMOND
DANIEL J. TOAL
LIZA M. VELAZQUEZ
MARIA T. VULLO
ALEXANDRA M. WALSH*
LAWRENCE G. WEE
THEODORE V. WELLS, JR.
BETH A. WILKINSON
STEVEN J. WILLIAMS
LAWRENCE I. WITDORCHIC
MARK B. WLAZLO
JULIA MASON WOOD
JORDAN E. YARETT
KAYE N. YOSHINO
TONG YU
TRACEY A. ZACCONE
T. ROBERT ZOCHOWSKI, JR.

*NOT ADMITTED TO THE NEW YORK BAR

April 11, 2014

**By Email**

Diane C. Hutnyan                         J. Derek Mize
Quinn Emanuel                            Curtis, Mallet-Prevost, Colt & Mosle LLP
865 South Figueroa Street, 10th Floor    101 Park Avenue
Los Angeles, CA 90017-2543               New York, New York 10178

*Lehman Brothers Holdings Inc., et al. v. Citibank, N.A., et al.*
Adv. Proc. No. 12-01044 (SCC)

Dear Diane and Derek:

I write in response to your April 9, 2014 letter regarding deposition scheduling in this case.

At the outset, we vehemently disagree that there is any legitimate justification for counsel to delay more than 48 hours to respond to a proposed deposition date. All that is required is for counsel to consult their respective schedules, and then respond as to whether they are available or not. If for reasons we cannot understand, more than 48 hours are needed, we expect some form of explanation that we can convey to the witness in order to justify the continued inconvenience and need to block out an entire trading day for the deposition. Moreover, the failure to respond promptly is hindering our ability to move forward efficiently with scheduling. For example, we proposed dates on April 3, 2014 for the depositions of Brian Archer, Mickey Bhatia, and Eliot Rubenzahl, but have heard no response from plaintiffs. Are these dates unworkable, such that we need to find alternatives? Or are we to understand these dates are acceptable? Was the lack of a response simply an oversight? We simply cannot fathom

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

*Diane C. Hutnyan & J. Derek Mize*                                                    2

why it would take counsel more than a week to determine if they are available to take a deposition on a proffered date. You have insisted on addressing scheduling matters entirely in writing on the grounds that doing so is more efficient than on the phone in a meet and confer. That is obviously not the case if written proposals are ignored.

    We also reject the accusation that defendants' production of documents has caused any delay, or that the production was not "substantially complete" on January 31, 2014. By January 31, 2014, defendants had produced approximately 300,000 documents. Since that time, we produced an additional 56,000 documents – not 150,000, as alleged in your letter – the majority of which was due to a processing error, which we promptly disclosed to you upon its discovery. More than 10,000 of the more recently produced documents consist of productions from archives of P&L reports that plaintiffs requested, and as to which the parties reached agreements late in the document discovery period; approximately 1,500 of the more recently produced documents are from the "Bear Stearns" production for which we only reached an agreement regarding search parameters in February.

    You should expect that additional productions of diminishing size will be made in the coming weeks. We also expect that this will be a two-way street. For example, we have just today received the "Group C" discovery. Although the most recent delay may have been caused by the dispute with the big bank group regarding the confidentiality order, the record is clear that plaintiffs never intended to make that production by January 31, 2014. Indeed, we understood that plaintiffs did not even contact the banks about making this production until February 13, 2014. As you also may recall, plaintiffs produced 150 documents relating to Sean Rahavy *the day before* his deposition (including documents reflecting the booking and tracking of the very $2 billion deposit central to this case) and we did not complain or cry foul or demand that the deposition be adjourned. We recognize that issues like this are inevitable in a case of this size and complexity. We expect there to be a reciprocal understanding that issues along these lines are going to arise, and that if the delayed production truly requires a deposition to be adjourned, a specific justification be proffered.

I.      **Plaintiffs' Deposition Notices**

    A.  Deposition Dates Offered in Defendants' April 3 Letter

    We appreciate your confirmation of the deposition dates for Stuart Staley (April 30), Vikram Prasad (May 1), Shahed Shafi (May 7), Itay Tuchman (May 30), John Heppolette (June 10), and Marc Pagano (July 1). As noted above, your April 8 letter neglected to confirm several additional deposition dates we offered for Eliot Rubenzahl (May 9), Mickey Bhatia (May 16), and Brian Archer (June 5), all of whom were offered both in their individual capacities and as corporate representatives in response to plaintiffs' derivatives-related Rule 30(b)(6) notice. (*See* April 3, 2014 Letter at 4.) We expect a response with respect to these depositions by the end of the day on Monday, April 14, 2014.

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

Diane C. Hutnyan & J. Derek Mize                                               3

### B.  Additional Proposals for Derivatives Related Depositions

Since our last correspondence, we have been able to contact the following witnesses and can offer their depositions on the following dates:

- May 1, 2014:  Didier Magloire (based in Hong Kong) will be in New York and can sit for a deposition on May 1.[1]

- May 30, 2014:  Varadarajan Subbaraman (based in Singapore) will be in New York and can sit for a deposition on May 30, 2014.

- June 20, 2014:  Brian Connors (a former employee based in New York) is available for deposition on June 20, 2014.

- June 26, 2014:  Tom Giardi (a former employee based in North Carolina) is available for deposition on June 26, 2014.

- July 3, 2014:  Frederic Jallot (based in London) will be available for deposition in New York on July 3, 2014.  Mr. Jallot will testify both in his individual capacity and as Citi's corporate representative regarding Topics 2–4, and 6–13 in plaintiffs' derivatives-related Rule 30(b)(6) notice pertaining to SPG.

In addition, we have been discussing alternative dates for Joshua Kogan in May.  Mr. Kogan is finalizing his May schedule, and we expect to be able to propose an alternative date sometime next week.

### C.  Former Citi Employees Located Abroad

Three of the depositions noticed by plaintiffs on March 20, 2014 are addressed to former employees of Citi who are located abroad – Richard Skeet, Robert Dockray, and Antoine Pain.  We have attempted to reach all three, but have not yet made contact with any of them (although we have spoken with the in-house counsels of the current employers for Mr. Dockray and Mr. Pain).  We expect that by the end of next week, we will be in a position to either propose dates, or inform plaintiffs if the witnesses

---

[1]  Although the parties have agreed that Mr. Prasad's deposition will go forward on May 1, 2014, the case management schedule is such that – given the number of depositions plaintiffs intend to take – multiple depositions will inevitably need to go forward on certain dates.  We therefore propose that plaintiffs take both Mr. Prasad's deposition and Mr. Magloire's deposition on May 1, 2014.  Moreover, since Mr. Magloire is based in Hong Kong, he will have limited availability for a deposition in the United States.  He has informed us that other than May 1, 2014, he has no other availability for a deposition in the United States until late July 2014.

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

Diane C. Hutnyan & J. Derek Mize                                                    4

will not agree to voluntarily submit to a deposition in New York without compulsory process under the Hague Convention.

### D. Plaintiffs' Rule 30(b)(6) Notices

We have by now written at length regarding our objections to plaintiffs' approach to scheduling depositions and their Rule 30(b)(6) notice pertaining to derivatives. We need not rehash all of those arguments here. As you know, we have offered more than a dozen witnesses in response to your requests, and are continuing to evaluate which additional designations would be appropriate in response to any outstanding issues, including appropriate designees for Topic 5. We appreciate the clarification in your April 9, 2014 letter regarding Topics 14 and 15, and will attempt to locate appropriate witnesses.

Your letter repeats the threat that you may seek to depose Citi's Rule 30(b)(6) designees more than once. We have explained repeatedly that we will not make these witnesses available more than once, and so you are on notice that any additional depositions you might seek to take of these witnesses will be vigorously opposed and likely will require intervention by the Court.

                        *            *            *

We write without prejudice to any of defendants' rights, all of which are expressly reserved.

                                    Very truly yours,

                                    Claudia Hammerman /RF

                                    Claudia L. Hammerman

cc:      Counsel of Record

Exhibit 23

## Clareman, William

| | |
|---|---|
| **From:** | Clareman, William |
| **Sent:** | Tuesday, April 15, 2014 7:27 PM |
| **To:** | Diane  Hutnyan (dianehutnyan@quinnemanuel.com); Rex  Lee (rexlee@quinnemanuel.com); 'Ellison Ward'; J. Derek  Mize (dmize@curtis.com); Peter J. Behmke (pbehmke@curtis.com) |
| **Cc:** | Hammerman, Claudia; Velazquez, Liza; Kroup, George W |
| **Subject:** | LBHI v. Citibank, NA - deposition scheduling |

Diane, Rex:

Alain Verdickt (based in Australia) will be in the U.S. and can be available for deposition in New York on May 5, 2014.  This date is not flexible, as he has no other upcoming availability in the US, so we are hopeful that plaintiffs can go forward on that date.  Assuming May 5, 2014 works, we will also designate Mr. Verdickt as Citi's corporate representative for the Rates business with respect to Topics 1(a) and 1(b) in plaintiffs' derivatives-related Rule 30(b)(6) notice.

We also note that we still have received no response to the dates we proposed in our April 3, 2014 letter for Brian Archer, Mickey Bhatia, and Eliot Rubenzahl, each of whom has been holding these dates in their calendars for nearly two weeks.  The delay in responding to our proposal is excessive.  Please let us know if these dates are confirmed by the end of the day tomorrow.

Best regards

Billy

**William A. Clareman** | Associate
**Paul, Weiss, Rifkind, Wharton & Garrison LLP**
1285 Avenue of the Americas | New York, NY 10019-6064
(212) 373-3248 (Direct Phone) | (212) 492-0248 (Direct Fax)
wclareman@paulweiss.com | www.paulweiss.com

Exhibit 24

**quinn emanuel** trial lawyers | los angeles

865 South Figueroa Street, 10th Floor, Los Angeles, California 90017-2543 | TEL (213) 443-3000 FAX (213) 443-3100

WRITER'S DIRECT DIAL NO.
**(213) 443-3666**

WRITER'S INTERNET ADDRESS
**dianehutnyan@quinnemanuel.com**

April 16, 2014

Claudia L. Hammerman, Esq.
Paul, Weiss, Rifkind, Wharton & Garrison LLP
1285 Avenue of the Americas
New York, New York 10019

Re:    ***Lehman Brothers Holdings inc., et al v. Citibank, N.A., et al.,***
         ***Adv. Proc. No. 12-01044 (S.D.N.Y.) (JMP)***

Dear Claudia:

We write regarding deposition scheduling.

Citi has proposed the following dates in response to plaintiffs' derivatives-related Rule 30(b)(6) notice:  Eliot Rubenzahl (May 9), Mickey Bhatia (May 16), Brian Archer (June 5) and Frederic Jallot (July 3).  Citi has also proposed the following dates in response to plaintiffs' Rule 30(b)(1) notices: Didier Magloire (May 1), Alain Verdickt (May 5) (who Citi has also designated for certain 30(b)(6) topics), Varadarajan Subbaraman (May 30), Brian Connors (June 20) and Tom Giardi (June 26).  We can confirm the proposed dates for Rubenzahl, Bhatia, Archer, Magloire, Connors, Giardi and Jallot.

We cannot, however, commit to May 5 for Mr. Verdickt.  We understand he will be traveling from Australia but we appreciate if Citi can propose other dates for him later that month or the next. With respect to Mr. Subbaraman, we understand from your April 11 letter that he is based in Singapore and will be travelling to New York so as to be available on May 30.  Presently, Itay Tuchman is also scheduled for May 30.  We propose to take Mr. Subbaraman on May 30, and reschedule Mr. Tuchman to another day, either that week or another.

To be clear, for those 30(b)(6) representatives whose dates we have confirmed and whom we did not notice individually, we intend to take these witnesses solely in their corporate capacities. While Citi has asserted that these witnesses will also appear in their individual capacities, plaintiffs have not yet served Rule 30(b)(1) notices for these witnesses and thus will not yet take 30(b)(1)

depositions of them. Whether these witnesses are to sit in their individual capacities is not Citi's unilateral decision to make. Rather, it was Citi's decision originally to refuse to designate representatives in response to plaintiffs' derivatives-related Rule 30(b)(6) notice, and then, after finally relenting, it was again Citi's decision to designate its most senior derivatives personnel to testify on the noticed topics—even though Citi has admitted that virtually anyone in the derivatives businesses could do the same. There is no rule we are aware of that requires plaintiffs to take a 30(b)(1) deposition they have not noticed merely because it serves Citi's strategic interests. For that reason, we fail to see the basis of your threat that Citi will "vigorously" oppose any future effort by plaintiffs to notice these witnesses in their individual capacity. We will proceed with the 30(b)(6) examinations of these witnesses, since Citi has designated them (even though many other less senior individuals would do), and will expect to notice these individuals in their individual capacities when plaintiffs are prepared to do so.


Kind regards,


Diane C. Hutnyan


cc:     Rex Lee, Esq. (via email)
        Ellison Ward, Esq. (via email)
        Peter Behmke, Esq. (via email)
        J. Derek Mize, Esq. (via email)
        William Clareman, Esq. (via email)
        George Kroup, Esq. (via email)
        Erika Berg, Esq. (via email)
        James Wright, Esq. (via email)

2

Exhibit 25

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

1285 AVENUE OF THE AMERICAS
NEW YORK, NEW YORK 10019-6064
TELEPHONE (212) 373 3000

LLOYD K GARRISON (1946 1991)
RANDOLPH E PAUL (1946 1956)
SIMON H RIFKIND (1950 1995)
LOUIS S WEISS (1927 1950)
JOHN F WHARTON (1927 1977)

WRITER'S DIRECT DIAL NUMBER

212 373 3321

WRITER'S DIRECT FACSIMILE

212 492 0321

WRITER'S DIRECT E-MAIL ADDRESS

chammerman@paulweiss.com

April 17, 2014

UNIT 3601 OFFICE TOWER A BEIJING FORTUNE PLAZA
NO 7 DONGSANHUAN ZHONGLU
CHAOYANG DISTRICT
BEIJING 100020
PEOPLE'S REPUBLIC OF CHINA
TELEPHONE (86 10) 5828 6300

12TH FLOOR HONG KONG CLUB BUILDING
3A CHATER ROAD CENTRAL
HONG KONG
TELEPHONE (852) 2846 0300

ALDER CASTLE
10 NOBLE STREET
LONDON EC2V 7JU U K
TELEPHONE (44 20) 7367 1600

FUKOKU SEIMEI BUILDING
2 2 UCHISAIWAICHO 2 CHOME
CHIYODA KU TOKYO 100 0011 JAPAN
TELEPHONE (81 3) 3597 8101

TORONTO DOMINION CENTRE
77 KING STREET WEST SUITE 3100
TORONTO ONTARIO M5K 1J3
TELEPHONE (416) 504 0520

2001 K STREET NW
WASHINGTON DC 20006 1047
TELEPHONE (202) 223 7300

500 DELAWARE AVENUE SUITE 200
POST OFFICE BOX 32
WILMINGTON DE 19899 0032
TELEPHONE (302) 655 4410

**By Email**

Diane C. Hutnyan
Quinn Emanuel
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017-2543

J. Derek Mize
Curtis, Mallet-Prevost, Colt & Mosle LLP
101 Park Avenue
New York, New York 10178

*Lehman Brothers Holdings Inc., et al. v. Citibank, N A , et al*
Adv. Proc. No. 12-01044 (SCC)

Dear Diane:

I am in receipt of your letter of yesterday regarding deposition scheduling for derivatives-related witnesses.

As you know, defendants have objected, repeatedly, to any deposition schedule in this case that contemplates any witnesses being deposed more than once. Although plaintiffs previously assured us that they shared this goal (*see* March 17, 2014 Letter from D. Hutnyan, at 2 ("[i]f Citi's concern is that a witness designated as a 30(b)(6) representative will have to sit for a deposition a second time in an individual capacity, Citi can rest assured that plaintiffs will make reasonable efforts to avoid that result")), your letter of yesterday completely repudiates that promise and asserts that all Rule 30(b)(6) depositions of any witnesses that have not yet been served with a Rule 30(b)(1) deposition notice will be taken solely as a Rule 30(b)(6) deposition, and that you "expect to notice these individuals in their individual capacities" later "when plaintiffs are prepared to do so." (April 16, 2014 Letter from D. Hutnyan, at 2.)

Doc# USI 9365792v3

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

Diane C. Hutnyan & J. Derek Mize                                        2

Plaintiffs' position on this issue is completely unacceptable. You have, to date, noticed individual depositions of only 11 derivatives-related custodians, five of whom are former employees and only one of whom is a current employee who resides in New York. The other five current employees reside in London, Singapore, Hong Kong, Japan and Australia. Instead of identifying additional individual deponents – and despite your claimed need for more than 60 depositions in this case – you have focused exclusively on your Rule 30(b)(6) deposition notice spanning 15 sweeping topics touching on virtually every facet of the management and operations of nine global derivatives businesses that are at issue in the case.

We have already explained that the Rule 30(b)(6) notice will require more than 10 witnesses to furnish a complete response. As a result, in the hopes of scheduling the deposition phase of this case in an efficient manner, we tried to work cooperatively with plaintiffs to identify appropriate fact witnesses (in addition to the 11 noticed by plaintiffs) whose depositions would be sought, so that the substantive topics identified in your Rule 30(b)(6) notice could be addressed simultaneously with fact depositions to limit the overall burden and expense associated with needlessly increasing the overall number of depositions. You repeatedly rejected our invitation to take this collaborative approach and, instead, insisted that Citi designate 30(b)(6) witnesses on these sweeping topics without any input from plaintiffs.

Thus, over a month ago we proposed designating senior traders and/or heads of the various businesses whose depositions will necessarily be taken in this case, and who are in a position to address a majority of the fifteen topics identified in your Rule 30(b)(6) notice. (See March 20, 2014 Letter from C. Hammerman, at 2-3.) At that time, you accepted these designations, acknowledged that these witnesses would be deposed simultaneously in their individual and representative capacities, and reserved the right to recall these witnesses only if you determined that facts later "uncovered during the discovery process require[d] further testimony." (See March 31, 2014 Letter from D. Hutnyan, at 1.) Now – after we have spent the better part of a month scheduling the depositions of these incredibly busy heads of global businesses – plaintiffs have suddenly done an about-face, and take the position that these Rule 30(b)(6) depositions would in effect be the first round of depositions for these witnesses, to be followed by another round of individual depositions at some unspecified time in the future when plaintiffs are "prepared."

We cannot countenance such a fundamentally inefficient, duplicative-by-design discovery program, and the unreasonable costs and burdens associated with it. We reluctantly have come to the conclusion that the parties are at an impasse and require Court intervention. As you know, we have repeatedly requested a meet and confer on the issue of scheduling derivatives-related depositions but you have, to date, refused our requests on the ground that there is no "actual dispute." (See April 2, 2014 Letter from D. Hutnyan, at 2.) Clearly, we disagree with your assessment. The parties have a fundamental disagreement about how deposition discovery should proceed, the number of depositions that may be taken by either side, and how best to accomplish all of this

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

Diane C. Hutnyan & J. Derek Mize    ·                                         3

within the time allotted under the scheduling order – an issue that has been conspicuously ignored in your letters. Given the limited amount of time remaining before the close of fact discovery (which ends on June 27, 2014), we believe it is imperative to seek Court assistance immediately. Of course, if you believe that there is a way to resolve this dispute cooperatively and in a way that does not needlessly increase the number of depositions or require witnesses to be deposed more than once, we – as ever – would welcome the opportunity to meet and confer and reach an amicable resolution. We are available for a meet and confer between now and Monday (including nights and weekends) at your convenience. Absent a consensual resolution by Tuesday, we have no choice but to seek relief from the Court.[1]

*          *          *

We write without prejudice to any of defendants' rights, all of which are expressly reserved.

Very truly yours,

Claudia L. Hammerman

cc:     Counsel of Record

---

[1] Given the position set forth in your April 16, 2014 letter, we are also compelled to suspend the depositions of Stuart Staley, Vikram Prasad, Eliot Rubenzahl, Mickey Bhatia, Brian Archer, John Heppolette, Marc Pagano, and Frederic Jallot until we obtain a ruling by the Court. The agreed-upon dates for the individual depositions noticed by plaintiffs of Didier Magloire, Shahed Shafi, Brian Connors, Tom Giardi, and Varadarajan Subbaraman will remain on the calendar. We will contact Itay Tuchman to determine whether he can be rescheduled. Joshua Kogan's travel schedule for May has been in flux, but we are continuing to work to determine his availability in May or June. With respect to Alain Verdickt, we have already explored the possibility of alternative dates, and May 5, 2014 is his only foreseeable availability in the U.S. Plaintiffs in this case are represented by two firms of considerable talent, and must be able to staff a deposition on that date. Under the circumstances, it is far more reasonable to ask plaintiffs' counsel to adjust their schedules to accommodate the witness from Australia, rather than insist that the witness arrange roundtrip travel to New York (approximately 24 hours each way) on a different date.

Exhibit 26

Hearing Date: October 23, 2013 at 10:00am
Response Deadline: October 2, 2013

Stephen J. Shimshak
Claudia L. Hammerman
PAUL, WEISS, RIFKIND, WHARTON &
  GARRISON LLP
1285 Avenue of the Americas
New York, New York  10019-6064
chammerman@paulweiss.com
*Attorneys for Citibank Defendants*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: | Chapter 11 |
| LEHMAN BROTHERS HOLDINGS INC., *et al.*, | Case No. 08-13555 (JMP) |
| Debtors. | |
| LEHMAN BROTHERS HOLDINGS INC., LEHMAN BROTHERS SPECIAL FINANCING INC., LEHMAN BROTHERS COMMODITY SERVICES INC., LEHMAN BROTHERS COMMERCIAL CORP., AND OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF LEHMAN BROTHERS HOLDINGS INC., | |
| Plaintiffs and Plaintiff Intervenor | Adversary Proceeding No. 12-01044 (JMP) |
| - against - | Re: Docket Nos. 29, 30 |
| CITIBANK, N.A., CITIGROUP GLOBAL MARKETS LTD., CITIGROUP FINANCIAL PRODUCTS INC., CITIGROUP ENERGY INC., CITI CANYON LTD., CITI SWAPCO INC., FYI LTD., FFI FUND LTD., and OLIFANT FUND, LTC., | |
| Defendants and Defendant Intervenors. | |

**CITIBANK'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS'
MOTION, PURSUANT TO 11 U.S.C. §§ 105(A), 363(B)(1), 502(B), AND 509(A), FOR
ENTRY OF AN ORDER PROVISIONALLY ALLOWING CLAIMS FILED BY
CITIBANK, N.A. AND AUTHORIZING LEHMAN BROTHERS HOLDINGS INC. TO
SATISFY THOSE CLAIMS WITH FUNDS ON DEPOSIT**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................ ii

PRELIMINARY STATEMENT ..................................................................................... 1

STATEMENT OF FACTS .............................................................................................. 4

    A.    The $2 Billion Deposit ................................................................................. 4

    B.    Maintenance of the $2 Billion Deposit After Lehman's Bankruptcy ..................... 7

    C.    The "Subject Claims" ................................................................................. 10

    D.    Lehman's Claim Objection and Adversary Proceeding ........................................ 13

ARGUMENT ................................................................................................................... 17

I.    Plaintiffs' Motion to "Provisionally Allow" Defendants' Claims Has No Basis in
    the Bankruptcy Code, the Plan of Reorganization, or Other Applicable Law ................. 17

    A.    Nothing in the Bankruptcy Code or Rules Permits Provisional Allowance ......... 17

    B.    "Provisional Allowance" Violates the Plan and the Confirmation Order ............. 21

    C.    Controlling Precedent Is Clear that Only Final Payment Operates to Stop
        the Accrual of Interest ........................................................................... 23

    D.    Lehman's Collateral Disposition Agreement with JPMorgan Provides No
        Precedential Authority for the Provisional Relief Requested ............................. 26

II.    Equitable Considerations Do Not Support Plaintiffs' Motion, as the Relief
    Requested Is Manifestly Unfair to Defendants ............................................................. 27

III.    Plaintiffs' Extraneous Arguments About Citibank's Right to Post-Petition Interest
    Lack Merit ..................................................................................................... 30

CONCLUSION ............................................................................................................... 34

# TABLE OF AUTHORITIES

Page(s)

CASES

*Amtel, Inc.* v. *Sun Spec Indus. (In re Sun Spec Indus., Inc.)*,
   3 B.R. 703 (Bankr. S.D.N.Y. 1980) ..................................................18

*Armstrong* v. *Ruston (In re Armstrong)*,
   294 B.R. 344 (10th Cir. 2003) .....................................................18

*ASM Capital, LP* v. *Ames Dep't Stores, Inc. (In re Ames Dep't Stores, Inc.)*,
   582 F.3d 422 (2d. Cir. 2009) .....................................................18

*United States* v. *Arrow Air, Inc. (In re Arrow Air)*,
   101 B.R. 332 (S.D. Fla. 1989) ....................................................32

*Bell* v. *Bell (In re Bell)*,
   225 B.R. 203 (2d Cir. 2000) ......................................................19

*In re Boylan Int'l, Ltd.*,
   452 B.R. 43 (Bankr. S.D.N.Y. 2011) ..........................................22

*Contrarian Funds, LLC* v. *WestPoint Stevens, Inc. (In re WestPoint Stevens, Inc.)*,
   333 B.R. 30 (S.D.N.Y. 2005) .....................................................19

*Fawcett* v. *United States (In re Fawcett)*,
   758 F.2d 588 (11th Cir. 1985) .............................................32, 33

*Findley* v. *Blinken (In re Joint E. & S. Dist. Asbestos Litig.)*,
   982 F.2d 721 (2d Cir. 1992) ......................................................22

*In re Frascella Enter.*,
   360 B.R. 435 (Bankr. E.D. Penn. 2007) .....................................18

*Garigen* v. *Morrow*,
   757 N.Y.S.2d 422 (4th Dep't 2003) ...........................................25

*Goldberg* v. *Pac. Indem. Co.*,
   627 F.3d 752 (9th Cir. 2010) .....................................................25

*Indu Craft, Inc.* v. *Bank of Baroda (In re Indu Craft Inc.)*,
   Nos. 11-cv-5996, 11-cv-6303, 11-cv-6304, 2012 WL 3070387
   (S.D.N.Y. July 27, 2012) .........................................................23

*Ionosphere Clubs, Inc.* v. *Doral Ctr., Inc. (In re Ionosphere Clubs, Inc.)*,
   208 B.R. 812 (Bankr. S.D.N.Y. 1997) ........................................22

Doc#: US1:8864898v1

*Kochisarli* v. *Tenoso*,
   No. 02-cv-4320, 2008 WL 1882662 (E.D.N.Y. Apr. 24, 2008)..............................................26

*Law Debenture Trust Co.* v. *Calpine Corp. (In re Calpine Corp.)*,
   356 B.R. 585 (Bankr. S.D.N.Y. 2007).....................................................2, 20, 23, 24

*Litwik* v. *Wolkenberg*,
   130 A.D.2d 630 (2d Dep't 1987).......................................................................26

*Michaels* v. *U.S. Tennis Assoc.*,
   744 N.Y.S.2d 375 (1st Dep't 2002)..................................................................25

*MPEG LA, L.L.C.* v. *Dell Global B.V.*,
   No. 7016-VCP, 2013 WL 812489 (Del. Ch. Mar. 6, 2013)..................................25

*New England Dairies, Inc.* v. *Dairy Mart Convenience Stores, Inc. (In re Dairy Mart*
*Convenience Stores, Inc.)*,
   351 F.3d 86 (2d. Cir. 2003)............................................................................20

*Northerly Corp.* v. *Hermett Realty Corp.*,
   240 N.Y.S.2d 709 (1st Dep't 1963)..................................................................26

*Northerly Corp.* v. *Hermett Realty Corp.*,
   13 N.Y.2d 1137 (1964)..................................................................................26

*Rickel & Assocs., Inc.* v. *Smith (In re Rickel & Assocs., Inc.)*,
   272 B.R. 74 (Bankr. S.D.N.Y. 2002)................................................................19

*Solow* v. *Kalikow (In re Kalikow)*,
   602 F.3d 82 (2d Cir. 2010).............................................................................20

*Tanger* v. *Ferrer*,
   853 N.Y.S.2d 316 (1st Dep't 2008)..................................................................25

*Terex Corp.* v. *Metro. Life Ins. Policy (In re Terex Corp.)*,
   984 F.2d 170 (6th Cir. 1993) .........................................................................32

*U.S. Bank Trust Nat'l Assoc.* v. *AMR Corp. (In re AMR Corp.)*,
   --- F.3d ---, 2013 WL 4840474 (2d Cir. Sept. 12, 2013) ......................................24

STATUTES

11 U.S.C. § 105...............................................................................................1, 17, 20

11 U.S.C. § 331.....................................................................................................18

11 U.S.C. § 363...........................................................................................1, 17, 18, 19

Doc#: US1:8864898v1

11 U.S.C. § 502 ............................................................................................................1, 17, 18

11 U.S.C. § 509 ........................................................................................................1, 17, 19, 20

11 U.S.C. § 553 ...................................................................................................................19

11 U.S.C. § 1101 .................................................................................................................22

11 U.S.C. §1127 ..................................................................................................................22

11 U.S.C. §1141 ..................................................................................................................22

**RULES**

Fed. R. Bankr. P. 3018 .........................................................................................................17

Fed. R. Bankr. P. 2003 ....................................................................................................17-18

**OTHER AUTHORITY**

Braum, Martin Z., *Lehman Reached Beyond Grave Seeking Millions from Nonprofits*,
    Bloomberg (May 14, 2013, 11:20 AM), http://www.bloomberg.com/news/2013-05-
    14/lehman-reaches-beyond-grave-to-grab-millions-from-nonprofits.html ............................28

Doc#: US1:8864898v1

Defendants Citibank, N.A. ("Citibank"), Citigroup Global Markets Ltd., Citigroup

Financial Products Inc., Citigroup Energy Inc., Citi Canyon Ltd., and Citi Swapco Inc.

(collectively, together with Citibank, "Citi") respectfully submit this Memorandum of Law in

Opposition to Plaintiffs' Motion, Pursuant to 11 U.S.C. §§ 105(a), 363(b)(1), 502(b), and 509(a),

for Entry of an Order Provisionally Allowing Claims Filed by Citibank, N.A. and Authorizing

Lehman Brothers Holdings Inc. to Satisfy Those Claims with Funds on Deposit.

## PRELIMINARY STATEMENT

Having delayed bringing its objections to Citibank's claims for more than three

years, plaintiffs (collectively, "Lehman"), led by Lehman Brothers Holdings Inc. ("LBHI"), now

seek unprecedented judicial relief from the further accrual of interest on Citibank's oversecured

claims.  Lehman asks this Court (i) to "provisionally allow" Citibank's claims, (ii) to compel

Citibank to exercise a "provisional setoff" of those claims against a $2 billion LBHI deposit

maintained at Citibank, (iii) to permit Lehman—notwithstanding the "provisional allowance"

and "provisional setoff"—to continue to dispute and litigate in this adversary proceeding both

the allowance of Citibank's claims and the propriety of the setoff, and (iv) to rule that this ploy

somehow cuts off Citibank's right to further post-petition interest on its oversecured claims.  In

fact, there is nothing in the Bankruptcy Code, the Bankruptcy Rules, or other applicable law that

permits Lehman to cut off Citibank's right to post-petition interest other than by full payment of

Citibank's Allowed Claim, together with all accrued interest.  There is no precedent for imposing

the requested relief on an unwilling creditor, and the equities in this case do not remotely support

it.

While the cover page of Lehman's brief invokes four Code provisions—

Sections 502(b), 363(b)(1), 509(a), and 105(a)—as putative statutory bases for the motion,

Lehman's brief conspicuously avoids discussing any of these provisions, and none of them

justifies the unprecedented relief Lehman seeks here. Lehman's brief also fails to confront the

crucial fact that the requested relief is foreclosed by the terms of Lehman's confirmed Plan.

Only "Allowed Claims"—defined as Claims that are undisputed or, if disputed, have been

adjudicated by final order—may be paid under the Plan. Nothing in the Plan allows Lehman to

"provisionally" satisfy claims while continuing to dispute them.

    Nor can Lehman point to a single precedent in support of the relief it seeks here.

While Lehman invokes *Law Debenture Trust Co.* v. *Calpine Corp. (In re Calpine Corp.)*, 356

B.R. 585 (Bankr. S.D.N.Y. 2007) and the Collateral Disposition Agreement it entered into with

JPMorgan Chase Bank, N.A. ("JPMorgan"),[1] neither one helps Lehman. The court in *Calpine*

approved the debtor's payment—final and unconditional, not provisional—of the outstanding

principal and interest due on secured notes to stop further interest accruals. The noteholders'

claim for an additional make-whole payment, however, was left unresolved and subject to further

litigation. Citibank agrees completely with *Calpine*'s ruling that unconditional allowance and

full satisfaction of any portion of Citibank's claims would stop interest accruals on that portion.

Citibank would welcome a decision by Lehman to abandon its "take no prisoners" and "scorched

earth" approach to every aspect of Citibank's claims; Lehman can and should unconditionally

allow Citibank to satisfy subsets of its claims as to which, Citibank submits, Lehman has no

credible objection.

    As for the Collateral Disposition Agreement between Lehman and JPMorgan, the

very title of the instrument proclaims its irrelevance to Lehman's current effort to *force* its

---

[1]    Corrected Notice of Filing of Executed Collateral Disposition Agreement Among Lehman Brothers Holdings
    Inc. and JPMorgan Chase Bank, N.A. *et al.*, Ex. A, *In re Lehman Bros. Holdings Inc.*, No. 08-13555, (Bankr.
    S.D.N.Y. Mar. 16, 2010), Docket No. 7619 (the "CDA" or "Collateral Disposition Agreement").

desired outcome on Citibank. It is not hard to understand why JPMorgan was willing to agree, as part of the Collateral Disposition Agreement, to cut off further interest accruals on its secured claims: the centerpiece of that agreement involved Lehman making a cash payment of more than $550 million to JPMorgan to secure JPMorgan's claims, in place of distressed and illiquid securities (of dubious value) that JPMorgan held as collateral. By contrast, the relief Lehman requests here would confer no benefit on Citibank, but would simply deprive Citibank of its legal right to further post-petition interest for so long as this litigation continues and Citibank's claims remain disputed.

Beyond these inapposite "precedents," Lehman offers no legal basis for cutting off Citibank's rights. Instead, Lehman's brief rehearses its arguments that Citibank, supposedly, is not a secured creditor, or if it is a secured creditor, is not entitled to post-petition interest, or if it is entitled to post-petition interest, is not entitled to post-confirmation interest beyond the rate Lehman is earning on its unsecured claims reserves. Of course, none of these arguments on the merits of Citibank's right to interest provides any basis for "provisional allowance" and "provisional setoff." Indeed, if Lehman were right on *any* of these arguments, this motion— whose sole purpose is to cut off future post-confirmation interest—would be unnecessary. These arguments, which Citibank vigorously disputes, appear inserted by Lehman solely as make-weight, designed to divert this Court's attention from the fact that Lehman has provided no legal support for the extraordinary relief it is asking for.

Finally, Lehman's brief invokes "fairness" and "the practicalities of pending litigation" to justify its motion. According to Lehman, Citibank is asserting a right to post-petition interest at "exorbitant rates" and is using the "potential of post-petition interest as leverage against the Lehman estates." Thus, Lehman argues, the "practicalities of this litigation,

3

including its expected duration, justify provisional allowance and satisfaction of the Subject

Claims." In fact, the equitable considerations run entirely in Citibank's favor. First, the highest

post-petition interest rate Citibank demands on its oversecured claims is hardly exorbitant—it is

the contractually mandated rate of Citibank's "cost of funds plus 1%," which, in Citibank's case,

is a rate substantially *less than half* the rate Lehman claims it is owed by derivatives

counterparties, based on the *same* contractual provisions. Second, it is Lehman that has dictated

the timing and duration of this litigation: it waited three years to bring this action; it

contractually disabled itself from negotiating a fair resolution of Citibank's claims unless and

until it litigated with Citibank for more than 18 months; it has taken unprecedented legal

positions that would seek to invalidate the industry-standard liquidated damages clause in the

ISDA agreements; and it has pursued a "scorched earth" discovery program, including firing off

blunderbuss subpoenas on thirty major market participants on the last days it was permitted to do

so, presumably in a search to somehow bolster its extreme litigation positions. Throughout,

Citibank has sought an early resolution of this matter on reasonable terms or, if necessary, an

early start to the claims objection process. The fact that five years after its bankruptcy Lehman is

still litigating with Citibank over the allowance of Citibank's secured claims is a problem of

Lehman's own making.

There is no basis in law or equity for the relief Lehman seeks, and its motion

should be denied.

### STATEMENT OF FACTS

A.    **The $2 Billion Deposit**

Citibank's claims against LBHI are principally secured by a $2 billion LBHI

deposit at Citibank.

4

LBHI made the $2 billion deposit on June 12, 2008, at a time of significant market uncertainty surrounding Lehman's prospects and in light of the substantial credit exposure Citibank had to LBHI and its subsidiaries. As of that morning, Lehman's stock price had fallen precipitously, Lehman had announced the replacement of its Chief Financial Officer and Chief Operating Officer, Citibank had received a record number of novation requests from Lehman counterparties seeking to get out of derivatives trades with Lehman, and Lehman's use of intraday, unsecured credit lines from Citibank increased significantly. Citibank became concerned about accepting any additional unsecured exposure to Lehman unless Lehman agreed to keep some of its reported $45 billion in liquidity with Citibank.[2]

Citibank asked LBHI to deposit $3 to $5 billion in cash with Citibank. While LBHI would not agree to that amount, it did agree to deposit $2 billion in a standard time deposit account, callable daily, with Citibank's Risk Treasury desk—a desk to which Lehman routinely "sold" excess cash in order to earn interest.[3]

Contrary to Lehman's assertion, the $2 billion was never "segregate[d]," and it has none of the hallmarks of a "special purpose account."[4] Lehman never requested segregation of the $2 billion, and the funds were commingled with Citibank Risk Treasury's other funds. The $2 billion earned interest at Citibank's overnight rate (Fed Funds target minus ⅛), and

---

[2]   Answer to First Amended Complaint and Response to Claims Objection ¶ 40, Feb. 14, 2013, Docket No. 20 ("Answer").

[3]   *Id.* ¶¶ 40, 41, 43.

[4]   Plaintiffs' Memorandum of Law in Support of Plaintiffs' Motion, Pursuant to 11 U.S.C. §§ 105(a), 363(b), 502(b), and 509(a), for Entry of an Order Provisionally Allowing Claims Filed by Citibank, N.A., and Authorizing Lehman Brothers Holdings Inc. to Satisfy Those Claims with Funds on Deposit at 5, Aug. 14, 2013, Docket No. 30 ("Pls.' Br.").

Doc#: US1:8864898v1

Lehman could withdraw the funds on a same day basis.[5]  Lehman's own internal documents (quoted by the Examiner) show that Lehman, too, considered the deposit to be a "$2B term deposit, callable daily."[6]

No written agreement governed the $2 billion deposit or restricted Citibank's setoff rights in the deposit.[7]  Indeed, Lehman's own documents (also quoted by the Examiner) show that Lehman understood—and was specifically told by Citibank—that Citibank had a general right of setoff against the deposit.  For example, an internal Lehman "Call Report," describing a conversation Lehman's Treasurer had with Citibank to discuss alternatives to the $2 billion deposit, states:  "Citi did point out that according to NY law, Citi would have the right to offset deposits, but not securities which were not pledged."[8]  Similarly, a Lehman Treasury official with substantial involvement in the discussions surrounding the $2 billion deposit describes it, in an internal email, as "a callable deposit," and notes that "Accdg [according] to ny law, Citi has a right of offset."[9]

Lehman has offered no evidence whatsoever to support its theory that there was a meeting of the minds to segregate the $2 billion deposit into a "special purpose" account or

---

[5]   Answer ¶¶ 41-43.

[6]   *Id.* ¶ 41(quoting documents cited in the Report of Anton R. Valukas, Examiner, dated March 11, 2010 ("Examiner's Report")).

[7]   Although Citibank and Lehman discussed a potential pledge of investment-grade securities that would be specifically available for offset against Citibank's clearing exposure to LBHI's subsidiaries, no such agreement was ever reached. *Id.* ¶¶ 46-48.

[8]   *Id.* ¶ 42 (quoting LBEX-DOCID 1035842, cited in the Examiner's Report at 1258 n.4722).

[9]   *Id.* (quoting LBEX-DOCID 10783885, cited in the Examiner's Report at 1262 n.4742).

6

otherwise restrict Citibank's setoff rights in the deposit.[10]  The $2 billion deposit is clearly a general deposit, available to Citibank to offset general obligations owed to it by LBHI.

**B.    Maintenance of the $2 Billion Deposit After Lehman's Bankruptcy**

When LBHI filed for bankruptcy on September 15, 2008, the $2 billion remained in the call account.[11]  Lehman has repeatedly agreed in various stipulations to allow Citibank to maintain the $2 billion and to preserve all parties' rights.  For example:

- On September 22, 2008, the parties stipulated that Citibank's "maintenance . . . as its collateral of the cash in the [$2 billion] Account does not constitute a unilateral administrative hold or a violation of the automatic stay."  The stipulation provided that "Citibank may set off" against the $2 billion deposit any post-petition clearing advances to Lehman Brothers Inc. ("LBI") "to the same extent as if they had been made" pre-petition.[12]

- On April 15, 2009, the parties stipulated that Citibank should transfer the $2 billion to an interest-bearing account with FDIC protection.  All interest earned on the account became property of the estate.  The stipulation confirmed that Citibank "shall have no greater or lesser Setoff Rights (and the Debtors shall have

---

[10]  Lehman's First Amended Complaint and Claims Objection, Nov. 16, 2012, Docket No. 13 ("FAC"), offers an additional theory as to why Citibank supposedly has no setoff rights in the account.  According to the FAC, Citibank verbally waived its setoff rights during the calls with Lehman on June 12.  FAC ¶ 42.  This theory lacks any factual support and is expressly contradicted by plaintiffs' own documents acknowledging Citibank's setoff rights in the account.  Moreover, while the FAC fails to identify who at Lehman allegedly witnessed Citibank's purported waiver, the two Lehman individuals plaintiffs have subsequently identified (in response to interrogatories)—Ian Lowitt and Paolo Tonucci—have already gone on record in other proceedings to the contrary.  Mr. Lowitt previously stated that he "[did not] recall being involved" in the June 12 discussions with Citibank concerning the $2 billion deposit, and Mr. Tonucci has testified that he was "not aware" that Lehman asked any bank to waive its setoff rights with respect to deposits requested from Lehman in 2008, and was "not aware" of any request by Lehman that those deposits be segregated.  Answer ¶ 42 (quoting Interview by Fin. Crisis Inquiry Comm'n with Ian Lowitt at 1:02:44 (Aug. 25, 2010), *available at* http://cybercemetery.unt.edu/archive/fcic/20110310171826/http://fcic.gov/resource/interviews (last accessed September 25, 2013); Tr. of February 1, 2010 Evidentiary Hearing on Motions for Summary Judgment at 192:4-193:9, *Bank of Am., N.A.* v. *Lehman Bros. Special Fin. Inc.*, No. 08-01753 (Bankr. S.D.N.Y. Feb. 9, 2010)), Docket No. 81.  It is, therefore, not surprising that plaintiffs fail to raise this "verbal waiver" theory in the present motion.

[11]  Answer ¶ 44.

[12]  Order Pursuant to Section 105 of the Bankruptcy Code Confirming Status of Citibank Clearing Advances at 2-3, *In re Lehman Bros. Holdings, Inc.*, No. 08-13555 (Bankr. S.D.N.Y.), Docket No. 284.

7

no greater or lesser rights to dispute and object to the Setoff Rights) against the Deposit" as a result of the transfer.[13]

- On September 10, 2010, the parties entered into a tolling agreement—renewed 11 times until February 1, 2012—extending the time for either party to assert claims, including turnover or avoidance claims. These stipulations left intact the parties' prior agreements with respect to Citibank's maintenance of the $2 billion deposit and the preservation of each party's position with respect to Citibank's asserted setoff rights in the deposit.[14]

- On July 21, 2011, the Court "so ordered" a stipulation permitting Citibank to "continue to maintain as its collateral the cash (including any interest or income earned thereon) in" a number of accounts, including the account holding the $2 billion.[15]

- On February 27, 2012, the Court "so ordered" the Scheduling Order and Discovery Plan in this action, which stated that "Citibank's maintenance during this proceeding of Plaintiffs' cash deposits, purported interests, or any other item that may be the subject of the Complaint shall not be held to violate the stay."[16] The amended scheduling orders contain substantially identical language.[17]

- On March 5, 2012, the parties stipulated—"subject to the Citi Setoff Rights and the Debtors' rights to dispute, contest or challenge the Citi Setoff Rights"—to use Lehman's prepetition deposits at Citibank, including the $2 billion deposit, as a

---

[13]  Stipulation and Order Authorizing (1) Transfer of Certain Prepetition Deposits, and (2) Preservation of Citibank's Setoff Rights, If Any, In Respect of Amounts Transferred ¶¶ 2-3, *In re Lehman Bros. Holdings, Inc.*, No. 08-13555 (JPM) (Bankr. S.D.N.Y.), Docket No. 3372. While Lehman now complains about the rate of interest it earns on the $2 billion deposit, the relatively low rate was, at least in part, a function of Lehman's desire for FDIC protection on the account.

[14]  Declaration of William A. Clareman in Support of Citibank's Memorandum of Law in Opposition to Plaintiffs' Motion, Pursuant to 11 U.S.C. §§ 105(a), 363(b), 502(b), and 509(a), for Entry of an Order Provisionally Allowing Claims Filed by Citibank, N.A. and Authorizing Lehman Brothers Holdings Inc. to Satisfy Those Claims with Funds on Deposit (Oct. 2, 2013) ("Clareman Decl."), Ex. 1, Tolling and Forbearance Agreement ¶ 5 (Sept. 10, 2010); *Id.*, Ex. 2, Amended and Restated Tolling and Forbearance Agreement ¶¶ 3, 9 (Feb. 1, 2012).

[15]  Stipulation and Order Regarding (1) Transfer and Turnover of Certain Deposits, (2) Preservation of Citibank's Setoff Rights, if any, in Respect of Deposits Transferred or Turned Over, (3) Maintenance of Certain Deposit Accounts, (4) Indemnification of Citibank in Respect of Any Third Party Claims Arising From the Turnover of Deposits and (5) Payment of Account Fees, Schedule at 4, *In re Lehman Bros. Holdings, Inc.*, No 08-13555 (Bankr. S.D.N.Y.), Docket No. 18687.

[16]  Scheduling Order and Discovery Plan at 3, Feb. 27, 2012, Docket No. 5.

[17]  *See, e.g.*, Second Amended Scheduling Order and Discovery Plan at 2-3, Sept. 13, 2013, Docket No. 32.

8

reserve for Citibank's claims under Lehman's plan of reorganization.[18] This stipulation was amended on February 25, 2013.[19]

From the outset of this bankruptcy case, Lehman has been acutely aware that Citibank asserts rights as a secured creditor and claims a right of setoff against the $2 billion deposit. Nonetheless, it was not until 2013 that Lehman raised any concern about the accrual of post-petition interest on Citibank's oversecured claims. Lehman wrote to Citibank on July 29, 2013, proposing an arrangement whereby Lehman would agree to the "provisional" allowance of Citibank's claims and permit Citibank to take a "provisional" setoff against the $2 billion deposit.[20] By this maneuver, Lehman sought to stop any further accrual of post-petition interest on Citibank's claims, while continuing to dispute those claims, the interest already accrued, and any right to setoff. Lehman's letter threatened to seek Court intervention to impose this result if Citibank rejected the proposal. Citibank responded on August 5, 2013, rejecting Lehman's proposal, explaining that the proposed arrangement conferred no benefit at all on Citibank, and that there was no legal basis to compel the result Lehman wanted.[21]

In a follow-up conversation, Citibank explained to Lehman why the proposal offered no conceivable benefit to Citibank. As Citibank explained, the $2 billion deposit is not an identifiable pot of money that Citibank could somehow "use" during the time its claims were

---

[18]   Clareman Decl., Ex. 3, Stipulation Establishing Distribution Reserves for Claims Filed by Citibank, N.A., Citigroup Global Markets Ltd. and Citigroup Global Markets, Inc. in Connection with the Modified Third Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and its Affiliated Debtors ¶ 1(a)(i)-(ii).

[19]   Id., Ex. 4, Amended Stipulation Establishing Distribution Reserves for Claims Filed by Citibank, N.A., Citigroup Global Markets Ltd. and Citigroup Global Markets, Inc. in Connection with the Modified Third Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and its Affiliated Debtors ¶ 2(a)(i)-(ii).

[20]   Pls.' Br. Ex. A.

[21]   Pls.' Br. Ex. B.

Doc#: US1:8864898v1

"provisionally allowed" and "provisionally setoff," subject to clawback.[22] Instead, the $2 billion deposit is simply a ledger entry on Citibank's books reflecting a debt that Citibank owes to LBHI. The setoff Citibank seeks would not give it money to "use"; it would merely provide an accounting outcome whereby the debt Citibank owes LBHI (the $2 billion deposit) would be "crossed off" in tandem with an equal amount of debt that LBHI owes Citibank (Citibank's claims). If, as plaintiffs propose, LBHI will continue to challenge both Citibank's claims and setoff rights in the $2 billion, Citibank has no ability to cancel the $2 billion debt owed to Lehman and record the satisfaction of the debts owed by Lehman.[23]

While Citibank invited Lehman to justify its proposal in light of Citibank's response, this motion followed two weeks later.

## C.   The "Subject Claims"

By this motion, Lehman seeks "provisional allowance" of Citibank's guarantee claims against LBHI based on the underlying obligations of Lehman Brothers Special Financing Inc. ("LBSF"), Lehman Brothers Commercial Corporation Asia Limited ("LBCC Asia"), LBI, Lehman Brothers Commercial Corporation ("LBCC") and Lehman Brothers Commodity Services Inc. ("LBCS") (together the "Subject Claims").[24]   The major components of the Subject Claims are:

---

[22]   Plaintiffs' motion continues to embrace this misconception: plaintiffs contend that, under their proposal, "Citibank can use the $2 Billion Deposit in whatever way it sees fit." Pls.' Br. at 4.

[23]   Declaration of Sugam Mehta ("Mehta Decl.") ¶ 21 (Oct. 2, 2013).

[24]   Pls.' Br. at 7-8. Citibank filed two proofs of claim on account of LBHI's guarantees of its various affiliates: Proof of Claim No. 29883, filed on September 22, 2009, and Proof of Claim No. 67736, filed on November 18, 2011, amending the original claim by reducing the amount sought. Proof of Claims No. 29883 and 67736, *In re Lehman Bros. Holdings Inc.*, No. 08-13555 (Bankr. S.D.N.Y.). The Subject Claims include most, but not all, of the secured claims asserted against LBHI. The Subject Claims exclude certain secured claims asserted against LBHI which are also oversecured. These excluded claims total approximately $38 million, of which roughly

(i)     Citibank's claim (in the principal amount of $1,640,084,656[25]) arising from the termination of an ISDA Master Agreement with LBSF, where LBHI was the credit support provider and guarantor (the "LBSF ISDA Claim");

(ii)    Citibank's claim (in the principal amount of $281,225,562) arising from LBCC Asia's default under a revolving loan facility guaranteed by LBHI (the "LBCC Asia Loan Claim"); and

(iii)   Citibank's claim (in the principal amount of $252,736,357) arising from the termination of the Continuous Linked Settlement ("CLS") Services Amended and Restated Agreement for CLS User Members under which Citi provided clearing services to LBI, and for which LBHI executed an amended guarantee on September 9, 2008, which added LBI as a guaranteed subsidiary, expressly to induce Citibank to continue extending credit to LBI for the clearance and settlement of trades (the "LBI CLS Claim").

Under the governing terms of the ISDA, the LBSF ISDA Claim accrues interest at "a rate per annum equal to the cost (without proof or evidence of actual cost) to the relevant payee (as certified by it) if it were to fund or of funding the relevant amount plus 1%."[26] Under the terms of the revolving loan agreement, the LBCC Asia Loan Claim accrues interest at a rate of "1.50% p[er] a[nnum] over 1 m[onth], 2 m[onth], [or] 3 m[onth] [Hong Kong Interbank Offered Rate] depending on the interest period."[27]

The aggregate principal amount of the Subject Claims, as filed, is $2,195,785,485.[28] Thus, plaintiffs assert that Citibank's claims exhaust the $2 billion deposit

---

$31 million remains outstanding. *See* Proofs of Claim No. 17918, 29873, and 67736, *In re Lehman Bros. Holdings Inc.*, No. 08-13555 (Bankr. S.D.N.Y.).

[25]   All Subject Claims are stated as of the Petition Date, exclusive of all interest accrued since that date.

[26]   Clareman Decl., Ex. 5, 1992 ISDA Master Agreement §§ 6(d)(ii), 14.

[27]   *Id.*, Ex. 7, Second Amendment to Committed Revolving Loan Agreement with Guaranty § 13 (Aug. 18, 2008). Citibank's claims against LBI also include interest, but there is no rate specified in the governing contracts.

[28]   Plaintiffs' definition of Subject Claims includes two claims for which LBCC Asia is the primary obligor that should not be part of the analysis of Citibank's claims and collateral. The claim for certain fees ($175,498) has been completely satisfied and is no longer asserted against LBHI, and the securities claim ($35,844,833) is a contingent claim that remains contingent.

11

and Citibank is not an oversecured creditor for purposes of post-petition interest. Not so. As

plaintiffs well know, the principal amounts owed have been reduced, and will continue to be

reduced, as a result of Citibank's extensive efforts to recover its losses from the primary obligors

and indemnitors, in addition to LBHI. These efforts have already succeeded in reducing the

Subject Claims by approximately $200 million: a $162 million reduction in the LBI CLS Claim

and a $39 million reduction in the LBCC Asia Loan Claim.[29] In fact, Citibank expects to recover

substantially more from LBCC Asia on the LBCC Asia Loan Claim, and Citibank is currently

pursuing Barclays with respect to the remaining deficiency on the LBI CLS Claim.[30]

 The recovery efforts to date render Citibank an oversecured creditor as to the

Subject Claims simply by virtue of the $2 billion deposit; the additional recoveries Citibank

expects will substantially increase its position as an oversecured creditor. Further, plaintiffs have

chosen to ignore that the Subject Claims benefit from additional setoff rights against LBHI and

the primary obligors, separate and apart from the $2 billion deposit, adding to Citibank's position

as an oversecured creditor.[31] Specifically, Citibank holds other LBHI deposits with a combined

balance of approximately $62 million, and Citibank asserts setoff rights against various assets of

---

[29]  Mehta Decl. ¶ 5. In January 2013, Citibank sold the $252,736,357 unsecured claim against LBI—allowed as
part of Citibank's settlement with LBI—for $161,119,427.59 following an auction. *Id.* ¶ 6. Factoring in these
sale proceeds, as well as the application of $829,249.46 in additional deposits that reverted to Citibank under its
settlement with LBI, Citibank reduced its CLS-related principal losses to $90,787,679.95. *Id.* The settlement
with LBI did not provide Citibank with any recovery on its interest claim with respect to its CLS-related
principal losses. Accordingly, Citibank continues to seek interest, along with legal fees, from both LBHI (as
guarantor) and Barclays (as indemnitor). *Id.* ¶¶ 6-7. On or about July 13, 2012, Citibank received a distribution
payment from the Official Liquidators of LBCC Asia on account of Citibank's Re-Amended Proof of Debt,
filed June 10, 2010, against LBCC Asia. The amount of the distribution payment was HKD 305,520,680,
which, using then-prevailing foreign exchange rates, equaled approximately $39 million. *Id.* ¶ 8.

[30]  *Id.* ¶ 8.

[31]  Plaintiffs' brief incorrectly states that there is no collateral other than the $2 billion deposit "in which Citibank
claims an interest that would support a claim under Section 506(b) of the Bankruptcy Code." Pls.' Br. at 14.

Doc#: US1:8864898v1

the primary obligors that would reduce the Subject Claims by, at the very least, an additional $21 million.[32]

### D.   Lehman's Claim Objection and Adversary Proceeding

Although Lehman filed for bankruptcy more than five years ago, this adversary proceeding and claims objection will not be tried until 2015, under the current scheduling order.[33] This protracted schedule—and its implications for the accrual of post-petition interest—is entirely of Lehman's own making.  Lehman has dictated the timing and duration of this litigation:  waiting three years to commence this action; cutting off bi-lateral settlement negotiations regarding Citi's derivatives claims; contractually disabling itself from resolving Citi's derivative claims on fair terms unless and until it had litigated with Citi for more than 18 months; taking unprecedented legal positions seeking to invalidate the industry-standard liquidated damages clause in the ISDA agreements; and insisting on blunderbuss discovery to support this extreme position.  By contrast, Citi has made every effort from the outset of this bankruptcy to engage with the debtors in good faith in the hopes of quickly resolving its claims on a fair and reasonable basis.  For example:

- **Additional derivatives information:**  At the outset of this bankruptcy case and to further bi-lateral settlement discussions, Citi provided substantial information to

---

[32]   Stipulation and Order Regarding (1) Transfer and Turnover of Certain Deposits, (2) Preservation of Citibank's Setoff Rights, if any, in Respect of Deposits Transferred or Turned Over, (3) Maintenance of Certain Deposit Accounts, (4) Indemnification of Citibank in Respect of Any Third party Claims Arising From the Turnover of Deposits and (5) Payment of Account Fees, Schedule at 4, *In re Lehman Bros. Holdings, Inc.*, No 08-13555 (Bankr. S.D.N.Y. July 21, 2011), Docket No. 18687; Stipulation and Order Authorizing (1) Transfer of Certain Prepetition Deposits, and (2) Preservation of Citibank's Setoff Right, if Any, in Respect of Amounts Transferred, Schedule at 1, *In re Lehman Bros. Holdings, Inc.*, No 08-13555 (Bankr. S.D.N.Y. Apr. 6, 2010), Docket No. 8099; Stipulation and Order between Plaintiffs Lehman Brothers Holdings Inc., Lehman Brothers Commercial Corp., Lehman Brothers Special Financing Inc., and Official Committee of Unsecured Creditors and Defendants Citibank, N.A. and Citigroup Global Markets Ltd. with Respect to Certain Continuous Linked Settlement Agreement Unwind Amounts at 5, May 14, 2013, Docket No. 26; Mehta Decl. ¶¶ 10-13.

[33]   Second Amended Scheduling Order and Discovery Plan ¶ 3(d), Sept. 13, 2013, Docket No. 32.

13

Lehman about its derivatives claims—which claims constitute the vast majority of the claims at issue in this litigation, approximately $1.65 billion for Citibank, and $1.9 billion for Citi overall—months before Lehman moved for an order requiring supplemental information pursuant to the Derivatives Questionnaire.[34]

- **Derivatives Questionnaire response:** In addition to the wealth of information already provided to Lehman, Citi then complied thoroughly with the Derivatives Questionnaire requirements and took great pains to provide trade data and supporting documentation in a clear and coherent manner.[35]

- **Interviews with Desk Heads and Senior Traders:** To further the parties' bi-lateral settlement discussions, Citi agreed to make witnesses available to Lehman to explain, in detail, Citi's methodology for valuing the terminated derivatives trades. Citi arranged numerous interviews over the spring and summer of 2010, covering all of the major derivatives products in Citi's claim. These interviews were attended by the senior traders and desk heads who personally oversaw and directed the closeout and valuation of the trades in September 2008.[36]

- **Lehman terminates bi-lateral negotiations over Citi's derivatives claims:** In December 2010, however, Lehman abruptly announced that it was unwilling to continue bi-lateral negotiations with respect to the commercial reasonableness of Citi's derivatives claim.[37] Instead, Lehman decided to re-value the terminated derivatives trades of its 13 largest counterparties (the "Big Banks" or "Big Bank Counterparties") using a mechanical, one-size-fits-all approach and extend "take-it-or-leave-it" settlement offers to these 13 Big Banks based on the numerical output of its mechanical re-valuation.[38] The estate developed the "Derivatives Claims Settlement Framework," which revalued the counterparties' trades based on standardized dates and times, mid-market prices selected by Lehman (and not disclosed to the counterparties), and standardized, rule-based bid/offer

---

[34]   Mehta Decl. ¶ 15; Notice of Presentment of Debtors' Motion Pursuant to Section 502(b)(9) of the Bankruptcy Code and Bankruptcy Rule 3003(c)(3), for Establishment of the Deadline for Filing Proofs of Claim, Approval of the Form and Manner of Notice Thereof and Approval of the Proof of Claim Form, *In re Lehman Bros. Holdings Inc.*, No. 08-13555 (Bankr. S.D.N.Y. May 26, 2009), Docket No. 3654.

[35]   Mehta Decl. ¶ 16.

[36]   *Id.* ¶ 17.

[37]   *Id.* ¶ 18

[38]   *Id.* ¶¶ 18-19.

14

adjustments and liquidity premiums across trade types, without regard to unique valuation issues with respect to particular trades.[39]

- **Lehman inserts MFN provisions in "Framework" settlements:** Citi received its "Framework" offer in the summer of 2011, which it did not accept.[40] A number of the Big Banks did accept their "Framework" offers, however, and Lehman entered into settlement agreements with those banks that contained a Most Favored Nations provision ("MFN").[41] The MFN made it cost-prohibitive for Lehman to settle with any of the Big Banks (including Citi) on terms more favorable than their "Framework" offers. Lehman could only escape the MFN by litigating with a non-settling bank for 18 months—that date came and went on August 18, 2013.[42]

- **Lehman delays bringing this claim objection:** Even then, Lehman did not immediately start the "18 month clock" by objecting to Citi's derivatives claims. Rather, as evidenced by the parties' final tolling agreement, only after Citi threatened in January 2012 to bring a motion to lift the automatic stay to set off its claims against the $2 billion deposit (which would force Lehman to interpose its claim objection) did Lehman finally agree to bring this claim objection simultaneous with the adversary proceeding it proposed to begin over the $2 billion deposit.[43]

- **Lehman's original complaint:** As a result of that agreement, plaintiffs commenced this adversary proceeding on February 8, 2012. Plaintiffs' complaint

---

[39]  Derivatives Claims Settlement Framework (May 27, 2011), *available at* http://dm.epiq11.com/LBH/Document#maxPerPage=25&page=1 (follow "Derivatives Claims Settlement Framework" hyperlink) (last visited Sept. 24, 2013).

[40]  Mehta Decl. ¶ 19.

[41]  Derivatives Claims Settlement Framework § 1.1.

[42]  Debtors' Motion for Approval of Settlement Agreements with (i) Bank of America, N.A. and (ii) Merrill Lynch International and its Affiliates, Ex. A (Termination and Settlement Agreement § 13(a)-(b)(i) (Bank of America)), Ex. B (Termination and Settlement Agreement § 12(a)-(b)(i) (Merrill Lynch)), *In re Lehman Bros. Holdings Inc.*, No. 08-13555 (Bankr. S.D.N.Y. Sept. 28, 2011), Docket No. 20367. The MFN made settlement cost prohibitive by guaranteeing that, if Lehman settled with a Big Bank for an amount that exceeded that bank's Framework number (a "non-Framework Settlement") before litigating with that bank for 18 months, all banks that had accepted a Framework offer would receive a premium payment equal to the percentage by which the non-Framework Settlement exceeded the relevant Framework offer. For example, if Lehman had agreed to settle Citi's derivatives claims for 30% more than its Framework offer and without litigating for at least 18 months, each bank that accepted the Framework settlement would receive an additional payment of 30% of its Framework number.

[43]  Clareman Decl., Ex. 2.

alleged that Citi's $1.9 billion in total derivatives claims were overstated by "over $1 billion."[44]

- **Lehman's amended complaint:** Nine months later, plaintiffs amended their complaint, filing the FAC on November 16, 2012. The new allegations were not based on any facts uncovered in discovery since no documents—beyond those Lehman had for years from the parties' settlement negotiations—had been produced. In the FAC, plaintiffs decided to more than "double down" on their derivatives claim objection, alleging that Citi's derivatives claims are overstated by $2.2 billion such that Citi in fact *owes Lehman* $243 million from the termination of these trades. To support its extreme position, plaintiffs' FAC declares war on the industry-standard liquidated damages provision in the ISDA agreements, arguing that the provision does not mean what it plainly says[45] or, if it does mean what it says, that it is an unenforceable penalty provision.[46]

- **Lehman's "scorched earth" tactics:** To support Lehman's new, extreme theories, plaintiffs have also pursued a "scorched-earth" litigation strategy in this case. To take the most extreme example, on April 29 and 30, 2013—after defendants agreed to a thirty-day extension of time to serve third-party subpoenas—plaintiffs served thirty vastly overbroad subpoenas on nearly all of the Big Banks, all third party vendors of derivatives trade data, all major interdealer brokers and trade compression services, and miscellaneous hedge funds, seeking derivatives information over time periods extending from six months to one year.[47] Citi, by contrast, did not serve a single third-party subpoena, and had been comfortable relying on witness testimony, contemporaneous quotes and screenshots (already shared with Lehman in connection with the Derivative Questionnaire), and contemporaneous market data which both Citi and Lehman had already licensed from vendors to support the reasonableness of Citi's derivatives valuations.[48]

---

[44]   Compl. and Claims Objection ¶ 9, Feb. 8, 2012, Docket No. 1.

[45]   FAC ¶¶ 90-91.

[46]   *Id.* ¶¶ 100-02. Among other extreme positions, Lehman argues that Citi is not entitled to any bid/offer adjustment on the mid-market value of a terminated trade unless Citi executed a specific replacement transaction. *Id.* ¶¶ 92-95. This position ignores the terms of the ISDA (which direct the non-defaulting party to calculate the replacement value of trades whether or not a replacement transaction is executed), standard contract law (providing for replacement value damages upon a breach of contract), and the commercial reality of the derivatives market. In fact, had Citi actually tried to replace all of its 30,000 trades (with a total notional value of $1.18 trillion), the increased market demand would have substantially increased both the cost of transacting and Citi's damages claim.

[47]   Clareman Decl., Exs. 8-37.

[48]   Clareman Decl. ¶ 2.

16

Given Lehman's responsibility for the duration of this dispute, this Court should have no sympathy for Lehman's current complaint about the further accrual of post-petition interest on Citibank's oversecured claims. The accrual of post-petition interest on oversecured claims is a product of the Bankruptcy Code and state law; it is also a direct by-product of claim objection litigation with an oversecured creditor that Lehman should have expected.

**ARGUMENT**

**I.     Plaintiffs' Motion to "Provisionally Allow" Defendants' Claims Has No Basis in the Bankruptcy Code, the Plan of Reorganization, or Other Applicable Law**

Lehman's motion asks for unprecedented relief: an order compelling Citibank to take a provisional setoff of provisionally allowed claims that will remain subject to continued challenge through litigation. Authority for this remedy is purportedly drawn from four Bankruptcy Code sections—502(b), 363(b)(1), 509(a), and 105(a)—but plaintiffs' brief does not even attempt to explain how any of these sections apply or provide a basis for the relief sought; they do not. The other purported grounds cited by Lehman—bankruptcy court precedent and state law—fare no better. There is no basis for the relief Lehman seeks in either the Bankruptcy Code or Rules, the Plan of Reorganization, bankruptcy court precedents, or other applicable law.

**A.     Nothing in the Bankruptcy Code or Rules Permits Provisional Allowance**

Under the Bankruptcy Code, creditor claims generally fall into one of two categories: allowed or disputed, and if disputed, the claim's allowance (or disallowance) must be adjudicated by the bankruptcy court. 11 U.S.C. § 502(b). The Bankruptcy Code and Rules recognize only three, narrow circumstances in which a claim may be allowed on a temporary or provisional basis, and none applies here. First, Rule 3018(a) permits the court to temporarily allow a disputed claim for the sole purpose of permitting a creditor to vote on the plan. Fed. R. Bankr. P. 3018(a). Second, Rule 2003(b)(3) permits the United States Trustee to tabulate votes

17

cast by creditors with disputed claims in the election of a trustee or member of a creditors'

committee in a chapter 7 liquidation. Fed. R. Bankr. P. 2003(b)(3). Third, Section 331 permits

the court to approve the interim payment of fees for professional services provided to the debtor

which remain subject to clawback and final approval under Section 330. 11 U.S.C. § 331. None

of these provisions is even arguably germane to plaintiffs' motion, and none operates to alter or

impair the substantive legal rights of creditors as Lehman is trying to do here.[49]

Section 502(b)—relied upon by Lehman—is a bar to, rather than a basis for,

provisional allowance. Section 502(b) mandates that, "if [an] objection to a claim is made, the

court . . . shall determine the amount of such claim . . . and shall allow such claim in such

amount." 11 U.S.C. § 502(b). Nothing in this section contemplates, much less permits,

provisional allowance of a creditor's claims. The statute's instruction is clear: when a debtor

objects to a claim, that dispute must be resolved by the court's determination of whether the

claim is allowed, and if so, in what amount.[50]

Section 363(b)—relied upon by Lehman—also provides no basis for "provisional

allowance" or "provisional setoff" of Citibank's claims for the simple reason that this Code

provision ceases to apply post-confirmation. Section 363(b), by its terms, allows trustees to

---

[49]   All three of these sections operate to ensure that the bankruptcy *process* is fair. The first two prevent debtors from abusing the provisional disallowance provision of Section 502(b) by strategically objecting to claims from hostile creditors. *See Armstrong* v. *Ruston (In re Armstrong)*, 294 B.R. 344, 354 (10th Cir. 2003); *In re Frascella Enter.*, 360 B.R. 435, 457 (Bankr. E.D. Penn. 2007). The third ensures that debtors receive quality legal and professional services by ensuring that the provision of those services does not cause economic hardship. *See Amtel, Inc.* v. *Sun Spec Indus. (In re Sun Spec Indus., Inc.)*, 3 B.R. 703, 706 (Bankr. S.D.N.Y. 1980) (explaining that the "primary purpose" of Section 331 "is to alleviate economic hardship of counsel who otherwise would have to carry the case").

[50]   *See ASM Capital, LP* v. *Ames Dep't Stores, Inc. (In re Ames Dep't Stores, Inc.)*, 582 F.3d 422, 429 (2d. Cir. 2009) ("Under section 502(a), such claims are deemed allowed when filed unless a party in interest objects, in which case section 502(b) requires the court to provide notice and a hearing and then determine the allowable amount of the claim.").

18

"use, sell, or lease . . . property *of the estate*" outside of the normal course of business.  11 U.S.C.

§ 363(b)(1) (emphasis added).  The Lehman estate no longer exists—the Plan and Confirmation

Order explicitly vested *all* of the Debtors' property in the Reorganized Debtors.[51]  Since there is,

at present, no estate, the $2 billion deposit cannot be "property of the estate," and Section 363(b)

cannot provide a basis for this motion.[52]

  Section 509(a)—relied upon by Lehman—also provides no basis for provisionally

allowing Citibank's claims.  Indeed, Section 509(a) is a subrogation provision that has nothing

whatsoever to do with claim allowance.[53]

---

[51]  The Plan provides that "[u]pon the Effective Date, pursuant to Section 1141(b) and (c) of the Bankruptcy Code, *all Property of the Estate of a Debtor shall vest in that Debtor* free and clear of all Claims, Liens, encumbrances, charges and other interests, except as provided herein."  Notice of Filing of Modified Third Amended Chapter 11 Plan of Lehman Brothers Holdings Inc. and Its Affiliated Debtors, Ex. A § 13.1 *In re Lehman Bros. Holding Inc.*, No. 08-13555 (Bankr. S.D.N.Y. Dec. 6, 2011), Docket No. 23023 ("Plan") (emphasis added).  The Confirmation Order, in slightly different language, states the same.  Order Confirming Modified Third Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and Its Affiliated Debtors ¶ 39, *In re Lehman Bros. Holding Inc.*, No. 08-13555 (Bankr. S.D.N.Y. Dec. 5, 2011), Docket No. 22973 ("Confirmation Order").  *See Bell* v. *Bell (In re Bell)*, 225 F.3d 203, 216 (2d Cir. 2000) ("Under 11 U.S.C. § 1141(b), the confirmation of a plan vests all of the property of the estate in the debtor.") (internal quotations omitted).

[52]  *Cf. Rickel & Assocs., Inc.* v. *Smith (In re Rickel & Assocs., Inc.)*, 272 B.R. 74, 97-98 (Bankr. S.D.N.Y. 2002) ("The turnover claim is legally insufficient for a more basic reason.  Confirmation vests the property of the estate in the debtor, unless the plan or confirmation order provide otherwise.  As a consequence, the bankruptcy estate ceases to exist, and the debtor in possession disappears. . . .  Since there is no estate and no trustee after confirmation, there can be no turnover.").

But even if plaintiffs could properly invoke Section 363(b) (and they cannot), Section 553 of the Bankruptcy Code precludes Lehman's attempt to force a "provisional setoff" to limit Citibank's right to further post-petition interest.  Section 553 provides, in pertinent part, that, except as provided in Section 362 (the automatic stay and its exceptions) and 363 (setoff as part of credit bidding under Section 363(k)), nothing in Title 11 other than disallowance shall affect a creditor's pre-petition setoff right.  Unless and until Citibank's claims are disallowed (not "provisionally allowed," subject to later disallowance), Section 553 prevents Lehman from using Section 363(b) to abridge Citibank's right to the full benefit of its setoff rights.

Further, "[n]othing in the language or relevant subsections of Bankruptcy Code Section 363 . . . provide[] the Bankruptcy Court with authority to impair the claim satisfaction rights of objecting creditors" and 363(b) cannot be used "to determine or preempt plan issues," *Contrarian Funds, LLC* v. *WestPoint Stevens, Inc. (In re WestPoint Stevens, Inc.)*, 333 B.R. 30, 51-52 & n.25 (S.D.N.Y. 2005), *rev'd in part on other grounds*, 600 F.3d 231 (2d Cir. 2010), such as creditors' entitlement to post-petition interest.

[53]  Lehman presumably invokes Section 509(a) because, by this motion, LBHI seeks subrogation to Citibank's rights against the primary obligors—LBSF, LBCC Asia, LBI, LBCC and LBCS—"to the extent LBHI satisfies

Doc#: US1:8864898v1

Section 105(a)—relied upon by Lehman—likewise provides no basis for the "provisional allowance" and "provisional setoff" Lehman seeks to compel here. Section 105(a) plays a purely supplemental role in the Code; it enables the court to implement the Code's other express provisions, but does not create any additional substantive rights. 11 U.S.C. § 105(a). As the Second Circuit explained: "[S]ection 105(a) *limits* the bankruptcy court's equitable powers, which 'must and can only be exercised within the confines of the Bankruptcy Code.' Section 105 'does not authorize the bankruptcy courts to create substantive rights that are otherwise unavailable under applicable law, or constitute a roving commission to do equity.'" *Solow* v. *Kalikow (In re Kalikow)*, 602 F.3d 82, 96 (2d Cir. 2010) (quoting *New England Dairies, Inc.* v. *Dairy Mart Convenience Stores, Inc. (In re Dairy Mart Convenience Stores, Inc..)*, 351 F.3d 86, 92 (2d Cir. 2003)) (emphasis added) (citations omitted).[54] Because Lehman cannot identify a single Bankruptcy Code provision that would authorize the "provisional allowance" or "provisional setoff" of a creditor's claim for the purpose of cutting off a creditor's right to interest—and no such Code provision exists—plaintiffs cannot invoke Section 105(a) as support for their motion.

---

the Subject Claims as guarantor." Pls.' Br. at 15. While plaintiffs' brief is not particularly clear on this point, if plaintiffs are seeking subrogation rights on the basis of "provisional allowance" and "provisional setoff" of Citibank's claims against the $2 billion deposit, subrogation would appear to be foreclosed by the plain language of Section 509(a). That section provides that "an entity that is liable with the debtor on . . . a claim of a creditor against the debtor, and that pays such claim, is subrogated to the rights of such creditor to the extent of such payment." 11 U.S.C. § 509(a). Temporary and conditional satisfaction (subject to clawback) hardly constitutes "payment"—in the ordinary, plain English meaning of that word—for purposes of triggering subrogation rights under Section 509(a).

[54] *See also Calpine*, 356 B.R. at 590 (cited in plaintiffs' brief at 11-12) (referring to Section 105 as a "back stop" to the substantive rights conferred in Section 363 and stating that Section 105 does not authorize courts to create any additional substantive rights).

20

**B.    "Provisional Allowance" Violates the Plan and the Confirmation Order**

In addition to finding no support in the Bankruptcy Code or Rules, the requested

relief is foreclosed by the Plan and Confirmation Order.

Section 9.2 of the Plan directs that, "[n]otwithstanding any other provision hereof

and unless otherwise agreed, *if any portion of a Claim is a Disputed Claim*, no Distribution shall

be made on account of such Claim unless and until such Disputed Claim becomes an Allowed

Claim." Plan § 9.2 (emphasis added). Under the Plan, "Allowed Claims" (as relevant here) are

claims that (i) are not Disputed, or (ii) if the claim is Disputed, has been allowed by Final Order.

Plan § 1.4. "Disputed Claims," on the other hand, include any claim "as to which a timely

objection . . . has been interposed, which objection . . . has not been withdrawn or determined by

Final Order." Plan § 1.46. The Plan contemplates that all claims are either "Allowed" or

"Disputed" and does not recognize any intermediate category of "temporarily" or "provisionally"

allowed claims. Accordingly, a Final Order resolving any objection is required before a

Disputed Claim can become an Allowed Claim, eligible for satisfaction under the Plan.

Because Lehman's motion seeks to preserve all of Lehman's objections to

Citibank's claims, those objections by definition have not been withdrawn or determined by

Final Order. Citibank's claims would remain Disputed under the Plan, and payment in

satisfactions of these Claims—provisionally or otherwise—is expressly prohibited. *See* Plan §

9.2; Plan § 4.2(b) ("[E]ach holder of an Allowed Claim in LBHI Class 2 shall be satisfied

by . . . ."); Plan § 6.1(b)(ii) (authorizing LBHI to "make Distributions to holders of Allowed

Claims in accordance with the Plan"); Plan § 8.3 ("[E]ach Debtor shall make a Distribution of its

21

Available Cash in accordance with the provisions of the Plan to holders of Allowed Claims against such Debtor.").[55]

The provisions of the Plan are binding on LBHI and, under the Confirmation Order, LBHI is authorized to make Distributions only "pursuant to, and as provided for in, the Plan."[56] Lehman's motion, seeking to provisionally satisfy Citibank's Disputed Claims, thus amounts to a motion to modify the Plan since the requested relief contravenes Section 9.2 (and other provisions) of the Plan and would alter the legal relationship between Citibank and LBHI in a manner that would have a substantive effect on Citibank's payment rights under the Plan.[57] Pursuant to Section 1127 of the Bankruptcy Code and Section 15.8 of the Plan, LBHI may not modify the terms of the Plan after it has been substantially consummated.[58] Here, there can be no question that the Plan has been substantially consummated.[59] Accordingly, Lehman's motion should be denied as an impermissible attempt to modify the Plan post-confirmation.

---

[55] Although not cited in Lehman's opening brief, we note that Section 9.4 of the Plan also provides no basis for its motion. Section 9.4 provides that Lehman "shall have the authority to compromise, settle or otherwise resolve or withdraw any objections to Claims and to compromise, settle or otherwise resolve any Disputed Claims in accordance with Section 6.1(b)(i) of the Plan." The request to provisionally allow and satisfy Citibank's claims, while simultaneously reserving all rights to object to such claims, is not a compromise, settlement, or other form of resolution authorized by Section 9.4 of the Plan.

[56] Confirmation Order ¶¶ 6, 8; *see also* 11 U.S.C. § 1141 (stating that "the provisions of a confirmed plan bind the debtor").

[57] *See Findley* v. *Blinken (In re Joint E. & S. Dist. Asbestos Litig.)*, 982 F.2d 721 (2d Cir. 1992) (holding that an alteration of creditor's payment rights constitutes a plan modification); *In re Boylan Int'l, Ltd.*, 452 B.R. 43, 47 (Bankr. S.D.N.Y. 2011) (stating that modification occurs where there is an alteration of the legal relationships among the debtor and its creditors); *see also infra*, Section 3.

[58] *See, e.g., Ionosphere Clubs, Inc.* v. *Doral Ctr., Inc. (In re Ionosphere Clubs, Inc.)*, 208 B.R. 812, 815 (Bankr. S.D.N.Y. 1997) ("Subsection 1127(b) provides the sole means for modification of the plan of reorganization after it has been confirmed. Moreover, any modification must take place before it is substantially consummated.") (internal citation and quotation marks omitted).

[59] The Bankruptcy Code defines substantial consummation as requiring "(A) the transfer of all or substantially all of the property proposed by the plan to be transferred, (B) assumption by the debtor or by the successor to the debtor under the plan of the business or of the management of all or substantially all of the property dealt with by the plan, and (C) commencement of distribution under the plan." 11 U.S.C. § 1101(2). The first two

### C. Controlling Precedent Is Clear that Only Final Payment Operates to Stop the Accrual of Interest

Lehman's requested relief is not only prohibited by the Bankruptcy Code and Rules as well as Lehman's own Plan and Confirmation Order, it is contrary to the very case law Lehman cites as precedent. While it tries to portray "provisional" allowance and satisfaction of claims as an ordinary remedy, the only case Lehman relies on, *Calpine*, 356 B.R. 585, directly undermines Lehman's position. *Calpine* demonstrates the only way a debtor can terminate accrual of post-petition interest on oversecured claims: by paying those claims unconditionally. In that regard, *Calpine* stands for the broader, unanimous principle, found in both federal bankruptcy and state law, that only a final, unconditional payment of the amount owed can have any legal effect on a party's entitlement to interest.

In *Calpine*, noteholders claimed two distinct rights to payment with respect to certain oversecured notes: (i) payment of principal and accrued interest, and (ii) payment under a "make whole" provision designed to compensate noteholders if the debtor chose to repay the notes early. 356 B.R. at 589-90. The debtor did not dispute the noteholders' claim for principal and accrued interest and sought to pay that amount—finally and unconditionally—to stop the accrual of interest on it. *Id.* at 589. The payment would not be subject to further challenge or clawback, and any remaining litigation would be limited to the noteholders' right to the

---

conditions, to the extent applicable, have been satisfied because all property of LBHI's bankruptcy estate has revested with the reorganized debtor and is being managed by LBHI's board of directors or the Plan Administrator. *See* Plan §§ 13.1, 6.1, 7.2 and 7.6; *see also Indu Craft, Inc.* v. *Bank of Baroda (In re Indu Craft Inc.)*, Nos. 11-cv-5996, 11-cv-6303, 11-cv-6304, 2012 WL 3070387, at *14 (S.D.N.Y. July 27, 2012) ("[W]here a plan . . . revests all assets in a reorganized debtor . . . substantial consummation occurs upon satisfaction of only the two conditions set forth in Section 1102(2)(B) and (C).").) The third condition has undoubtedly been met since Lehman will shortly make its fourth interim distribution to creditors. *See* Notice of Fourth Distribution Date and Record Date in Connection with the Modified Third Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and Its Affiliated Debtors, *In re Lehman Bros. Holdings Inc.*, No. 08-13555 (Bankr. S.D.N.Y. Aug. 16, 2013), Docket No. 39492.

23

additional "make whole" payment. *Id.* The trustee objected to this proposal, arguing that no

payments should be made until the dispute regarding the "make whole" premium was resolved.

*Id.* at 596. The court rejected this position in light of the fact that the noteholders' right to

principal and accrued interest was undisputed, the continued accrual of interest on this amount

would harm other creditors, and this portion of the noteholders' claim could be fully resolved

without prejudice to the continuing dispute over the "make whole" payment. *Id.* at 597.[60]

What Lehman proposes here, however, is the polar opposite of *Calpine*. Unlike

*Calpine*, Lehman's proposed payment is not final; indeed, the "provisional setoff" is explicitly

subject to clawback. While *Calpine* provides no support for Lehman's motion, it does suggest

the route Lehman should have chosen to address concerns about the further accrual of post-

petition interest: plaintiffs should agree to allow and satisfy those portions of Citibank's claims

as to which there is no credible basis for objection, and post-petition interest would then stop

accruing on those amounts.[61] However, Lehman has made a different choice, deciding to "go for

---

[60] The Second Circuit's recent decision in the American Airlines bankruptcy, which also concerns a dispute over a make-whole provision, further underscores that only full and final payment of a debt can terminate a debtor's interest obligation. *See U.S. Bank Trust Nat'l Assoc.* v. *AMR Corp. (In re AMR Corp.)*, --- F.3d ---, 2013 WL 4840474 (2d Cir. Sept. 12, 2013). Citing historically low interest rates, the debtors in *AMR* obtained authority during the bankruptcy case to procure $1.5 billion in post-petition financing in order to "indefeasibly repay" certain prepetition secured notes that were accruing interest at higher rates. *Id.* at *1, 3; Motion of Debtors for Order Pursuant to 11 U.S.C. §§ 105(a), 362, 363, 364, 503(b) and 507 and Fed. R. Bankr. P. 4001 and 6004 (i) Authorizing Debtors to Obtain Postpetition Secured First Priority Aircraft Financing and Grant Security Interests and Liens with Respect Thereto, (ii) Authorizing Debtors to Repay Existing Prepetition Debt Relating to Certain Aircraft and (iii) Granting Related Relief at 2, 7-8, *In re AMR Corp.*, Nos. 13-cv-1204, 13-cv-1207, 13-cv-1208 (Bankr. S.D.N.Y. Oct. 9, 2012), Docket No. 4959 (the "AMR Motion").

[61] For example, there is no credible basis for LBHI to object to the amount due on the LBCC Asia Loan. No such objection is raised in the FAC. The only objection raised in the FAC with respect to this claim is the general objection Lehman has interposed to all of Citibank's claims: that the claims are not secured by—and cannot be set off against—the $2 billion deposit because it is allegedly a "special deposit" unavailable for setoff against all of Citibank's unsecured claims. As weak as Lehman's "special deposit" argument is, it has no relevance to the LBCC Asia Loan Claim. As Citibank has pointed out to Lehman on numerous occasions, the LBHI guarantee for the LBCC Asia Loan explicitly provides that Citibank has the right to setoff amounts due under the loan against "any and all deposits (general or special, . . .)" of LBHI. *See* Clareman Decl., Ex. 6, Guaranty made by Lehman Brothers Holdings Inc. in favor of Citibank ¶ 8 (Aug. 30, 2007). Therefore, even if (contrary to fact) the $2 billion were a "special deposit," Citibank could still set off its LBCC Asia Loan Claim against

24

broke" in its claims objection, thereby significantly delaying resolution of all of Citibank's

claims. The continuing accrual of post-petition interest is simply a predictable consequence of

this approach.

New York law aligns precisely with bankruptcy law in rejecting the arrangement

Lehman proposes.[62] Under New York law, tendered payments must be unconditional to be

effective. *See Tanger* v. *Ferrer*, 853 N.Y.S.2d 316, 317 (1st Dep't 2008) (stating that tender

offers made under CPLR 3219 "must be unconditional"); *Michaels* v. *U.S. Tennis Assoc.*, 744

N.Y.S.2d 375, 375 (1st Dep't 2002) ("Absent an unconditional tender of payment of a judgment,

postjudgment interest continues to accrue."). Nearly any condition, no matter how subtle, is

enough to prevent a tender offer from terminating the right to further interest accrual. *See*

*Garigen* v. *Morrow*, 757 N.Y.S.2d 422, 422 (4th Dep't 2003) (holding that a tender of payment

was legally ineffective even when the condition was only "implicit[]"). Lehman's conditional

---

that deposit. One would have thought Lehman would have attempted long ago to limit its interest exposure by
allowing this Citibank claim and its setoff against the $2 billion deposit.

Similarly, plaintiffs' original claim objection alleged that Citi's $1.9 billion of derivatives claims were inflated
by "more than $1 billion." While Citi vehemently disputes the charge that its derivatives claims are inflated,
plaintiffs' initial claim objection clearly implied that a very sizable portion of Citi's derivatives claims was not
disputed. Lehman might also have sought to settle that undisputed portion of the derivatives claims—thereby
ending any further accrual of post-petition interest on that amount—while continuing to challenge and litigate
over the remainder. Instead, nine months later plaintiffs decided to "double down" on their derivatives claim
objection and advance outlandish theories to support new arguments that Citi's claims are inflated by
$2.2 billion, such that Citi in fact owes Lehman $243 million.

[62] New York law provides that, under certain circumstances, an unconditional tender of payment by the defendant
can terminate a plaintiff's right to further interest accrual. Whether those rules apply in federal court, however,
presents a complicated *Erie* question. *See Goldberg* v. *Pac. Indem. Co.*, 627 F.3d 752, 757 (9th Cir. 2010);
*MPEG LA, L.L.C.* v. *Dell Global B.V.*, No. 7016-VCP, 2013 WL 812489, at *5-7 (Del. Ch. Mar. 6, 2013).
That issue does not need to be resolved, however, because plaintiffs' conditional offer—and the "provisional"
satisfaction that plaintiffs' propose—does not remotely satisfy the requirements to terminate interest accrual
under New York law.

25

offer, one expressly made subject to potential clawback, falls far short of what the cases require,

and would therefore have no effect under New York law.[63]

**D.    Lehman's Collateral Disposition Agreement with JPMorgan Provides No Precedential Authority for the Provisional Relief Requested**

Lehman invokes the CDA between LBHI and JPMorgan as some sort of

precedential authority for the relief sought here. But the CDA is readily distinguishable—the

most obvious difference being that the CDA was a consensual arrangement, while plaintiffs seek

to impose one facet of the CDA, provisional allowance and setoff, on Citibank against its will.

The other obvious difference between Lehman's proposal and the CDA—a difference which no

doubt explains the consensual nature of the CDA—is that JPMorgan received substantial benefits

under that agreement. Most notably, JPMorgan received a payment of $557 million from LBHI

in exchange for illiquid securities (of doubtful value) that JPMorgan had been holding as security

for its claims.[64] The benefit to JPMorgan was obvious: JPMorgan received cash in exchange for

---

[63]    The cases Lehman cites in its brief do not contradict the clear rule that full and final payment is required to terminate further interest accrual under New York law. *Kochisarli v. Tenoso*, No. 02-cv-4320, 2008 WL 1882662, at *5-6 (E.D.N.Y. Apr. 24, 2008) (cited Pls.' Br. at 13), for example, does not "actually support[ ]" the proposition that provisional setoff should terminate Citibank's right to interest. That case held that placing funds in an escrow account does *not* terminate interest because the party due to receive the funds did not have access to them. *Id.* Nothing in the case suggests that access alone is sufficient to cut off interest, or that a conditional payment subject to clawback would suffice. *Litwik v. Wolkenberg*, 515 N.Y.S.2d 559, 560 (2d Dep't 1987) (cited Pls.' Br. at 14), applied the unconditional tender rule in finding that defendants' right to interest was terminated when they refused plaintiffs' tender of bank checks for the full amount of principal and interest accrued up to the date of the tender. *Id.* at 631-32. There is no suggestion that anything less than full and unconditional payment would have been enough to halt the further accrual of interest. *Northerly Corp. v. Hermett Realty Corp.*, 240 N.Y.S.2d 709 (1st Dep't 1963), *aff'd*, 13 N.Y.2d 1137 (1964) (cited Pls.' Br. at 14-15), also plainly supports the unconditional tender rule. That case involved two different tender offers by the same party, one with conditions—it would remain subject to further legal challenge—and the other without. 13 N.Y.2d at 1137. The court ruled that only the unconditional offer had any legal effect. 240 N.Y.S.2d at 709.

[64]    *See* Debtors' Motion Pursuant to Section 363 of the Bankruptcy Code and Bankruptcy Rule 6004 for Approval of Collateral Disposition Agreement with JPMorgan Chase Bank N.A., *et al.* ¶ 24, *In re Lehman Bros. Holdings Inc.*, No. 08-13555 (Bankr. S.D.N.Y. Feb. 24, 2010), Docket No. 7269 ("CDA Motion"); Tr. of March 17, 2010 Hearing re: Debtors' Motion for Approval of Collateral Disposition Agreement with JPMorgan Chase Bank, N.A., *et al.* at 62:6-10, *In re Lehman Bros. Holdings Inc.*, No. 08-1355 (Bankr. S.D.N.Y. Mar. 19, 2010), Docket No. 7703 ("CDA Hearing Transcript").

Doc#: US1:8864898v1

distressed and illiquid securities that, according to objective observers, were at that time worth far less than the cash received.[65] Further, JPMorgan was relieved of any duty to manage those securities, thereby eliminating the associated risk that Lehman would complain that JPMorgan had mismanaged them.[66] The CDA also provided JPMorgan with the right to reallocate its setoffs—$20 billion of which it had already exercised before the CDA was signed.[67] The agreement thus ensured that JPMorgan would not lose the right to use collateral simply because the claim against which it had been set off was later disallowed.

In exchange for these substantial benefits, JPMorgan agreed that no further post-petition interest would accrue on its claims. By contrast, Lehman's proposal to Citibank and the relief requested by this motion provide absolutely no benefit to Citibank. It is simply disingenuous to argue, as plaintiffs have, that this motion resembles in any material respect what the Court approved in connection with the consensual CDA.

## II.   Equitable Considerations Do Not Support Plaintiffs' Motion, as the Relief Requested Is Manifestly Unfair to Defendants

Lacking any legal foundation, Lehman invokes "fairness" as justification for its motion.[68] Lehman claims that Citibank is asserting a right to interest at "exorbitant rates" and is

---

[65]   For example, at the hearing on LBHI's motion to approve the CDA, counsel for the LBI SIPA Trustee stated that the illiquid collateral to be transferred had "very little value," and "if JPMorgan were to liquidate [the collateral], there would be a substantial deficit that would still be owing to JPMorgan." CDA Hearing Transcript at 62:6-10.

[66]   *See* CDA Motion ¶ 21 ("The Securities Collateral requires long-term, active and effective management. LBHI believes that in the current poor economic environment, a forced liquidation of the illiquid Collateral would result in highly diminished recoveries to the detriment of all parties."); *id.* ¶ 27 ("The Securities Collateral is illiquid and requires long-term management to enhance recoveries. LBHI and the Debtors are best equipped to fulfill this objective.").

[67]   The CDA provided that any collateral against which a claim had been set off could be "reallocated and applied by a JPMC Entity to an unpaid Claim . . . that has not been disallowed, avoided or invalidated." CDA Motion ¶ 24.

[68]   Pls.' Br. at 4.

27

"using the potential of post-petition interest as leverage against the estate."[69]   Thus, Lehman

argues, the "practicalities of this litigation, including its expected duration, justify provisional

allowance and satisfaction of the Subject Claims," so as to cut off Citibank's further right to

post-petition interest.[70]  Lehman asserts that Citibank will not be prejudiced because it can "use

the $2 billion in whatever way it sees fit" after the provisional set off.[71]  These arguments are

baseless, and the equitable considerations run entirely in Citibank's favor.

Contrary to Lehman's allegations, the interest Citibank seeks is not remotely

"exorbitant."[72]  The highest rate Citibank seeks on its oversecured claims is the rate mandated in

the industry-standard ISDA Master Agreement: Citibank's cost of funds plus one percent.[73]  In

fact, Lehman is seeking to recover interest on amounts allegedly owed by its derivatives

counterparties based on this same contractual rate.  In the pending adversary proceedings under

the caption *Lehman Brothers Special Financing Inc.* v. *Bank of America* (No. 10-03547 (JMP))

(Bankr. S.D.N.Y.) (also known as the "flip clause" litigations), Lehman seeks interest using the

ISDA formula:  cost of funds plus one percent.  We understand Lehman claims, pursuant to this

formula, that it is entitled to interest of as much as 14%[74]—a rate vastly higher than would apply

---

[69]   *Id.* at 2, 4.

[70]   *Id.* at 11.

[71]   *Id.* at 4.  Lehman's argument that, following a provisional setoff, Citibank will be free to "use the $2 billion deposit in whatever way it sees fit," subject to clawback at a later date, ignores commercial reality.  Mehta Decl. ¶ 21.

[72]   *Id.* at 2.

[73]   *See* 1992 ISDA Master Agreement §§ 6(d)(ii), 14 (definitions of "Applicable Rate" and "Default Rate").

[74]   Martin Z. Braum, *Lehman Reached Beyond Grave Seeking Millions from Nonprofits*, Bloomberg (May 14, 2013, 11:20 AM), http://www.bloomberg.com/news/2013-05-14/lehman-reaches-beyond-grave-to-grab-millions-from-nonprofits.html.  Citibank has also seen evidence that, in certain contexts, Lehman is claiming interest on derivatives claims at a rate of 9%—a rate that is also vastly higher than would apply to Citibank.

28

to an A-rated company like Citibank.[75]  When defendants in the pending flip clause litigations

objected to Lehman's repeated requests to stay those litigations—specifically complaining that

Lehman was using the threat of post-petition interest as settlement leverage, and asking the court

to terminate Lehman's right to further interest, if any, to the extent a further stay was granted[76]—

Lehman vigorously defended its right to this interest.  Lehman argued that the interest it was

charging was "based on [its] cost of funds," as "specifically provided for in the ISDA master

agreement."[77]  Lehman's argument that Citibank's much lower rate, calculated under the self-

same provision, is somehow "exorbitant" or creating unfair settlement "leverage" is simply

hypocritical.  Apparently, for Lehman, interest is only improper when someone else earns it.

　　　　Further, Lehman cannot conceivably complain—unlike the defendants in the flip

clause litigations—that Citibank is responsible for the timing and duration of this litigation.

Citibank has always sought an early resolution of this dispute on reasonable terms.  It was

Lehman that waited three years to bring this action; it was Lehman that broke off bi-lateral

---

[75]  Fitch Long Term Issuer Default Rating (Bloomberg, Sept. 23 2013).

[76]  Tr. of July 17, 2013 Hearing re: Motion of Lehman Brothers Holdings, Inc., Pursuant to Section 105(a) of the Bankruptcy Code and Bankruptcy Rule 7004(a)(1), to Extend Stay of Avoidance Actions and Grant Certain Related Relief at 26:5-18, *In re Lehman Bros. Holdings Inc.*, No. 08-13555 (Bankr. S.D.N.Y.); Objection of U.S. Bank National Association, as Trustee, to Motion of Lehman Brothers Holdings Inc. Pursuant to Section 105(a) of the Bankruptcy Code and Rule 7004(a)(1), to Extent Stay of Avoidance Actions and Grant Certain Related Relief ¶ 12, *In re Lehman Bros. Holdings Inc.*, No. 08-13555 (Bankr. S.D.N.Y. July 3, 2013), Docket No. 38414; Objection of U.S. Bank National Association, as Trustee, to Joint Motion of Lehman Brothers Holdings Inc. and Litigation Subcommittee of Creditors' Committee, Pursuant to Section 105(a) of the Bankruptcy Code, to Extend Stay of Avoidance Actions ¶ 12, *In re Lehman Bros. Holdings Inc.*, No. 08-13555 (Bankr. S.D.N.Y. July 11, 2012), Docket No. 29343; Objection of the Nebraska Investment Finance Authority to Debtors' Motion Pursuant to Section 105(a) of the Bankruptcy Code and Bankruptcy Rule 7004(a)(1) to Stay Avoidance Actions and Grant Certain Related Relief ¶¶ 22-26, *In re Lehman Bros. Holdings Inc.*, No. 08-13555 (Bankr. S.D.N.Y. Oct. 13, 2010), Docket No. 11960.

[77]  Tr. of July 18, 2012 Hearing re: Joint Motion of Lehman Brothers Holdings Inc. and Litigation Subcommittee of Creditors' Committee to Extend Stay of Avoidance Actions at 17:23-18:1, *In re Lehman Bros. Holdings, Inc.*, No. 08-13555 (Bankr. S.D.N.Y. July 20, 2012), Docket No. 29594; *see also* Omnibus Reply in Support of Joint Motion of Lehman Brothers Holdings Inc. and Litigation Subcommittee of Creditors' Committee, Pursuant to Section 105(a) of the Bankruptcy Code, to Extend Stay of Avoidance Actions ¶ 11, *In re Lehman Bros Holdings Inc.*, No. 08-13555 (Bankr. S.D.N.Y. July 16, 2012), Docket No. 29409.

Doc#: US1:8864898v1

negotiations with Citi to pursue the mechanical, one-size-fits-all Framework approach; it was Lehman that contractually disabled itself (by virtue of the MFN clause in other derivatives settlements) from resolving this dispute without litigating with Citibank for more than 18 months; and it has been Lehman that has pursued increasingly extreme legal theories to support increasingly over-reaching arguments. Lehman's current position—that Citi's $1.9 billion in derivatives claims are overstated by more than $2.2 billion, and that Citi in fact owes Lehman $243 million, notwithstanding the fact that Citi's overall derivatives positions facing Lehman was significantly in-the-money as Lehman itself alleges in the FAC that the market moved $150 million *in Citi's favor* from September 12 to September 15, 2008[78]—has only served to move the parties farther apart. Lehman's efforts to substantiate its extreme legal theories, including serving 30 subpoenas on non-parties seeking virtually every piece of market data pertaining to derivatives over a six-month period, will only expand the scope of discovery and delay resolution of Citi's claims.

Lehman has always known that Citibank is a secured creditor, yet, by these tactics, it has made the strategic decision to postpone resolution of Citibank's claims. The predictable result is the continued accrual of post-petition interest on Citibank's claims. There is no basis in law or equity for the Court to relieve Lehman of its self-inflicted injury and in the process deprive Citibank of its statutory and contractual rights without any compensating benefit.

## III.    Plaintiffs' Extraneous Arguments About Citibank's Right to Post-Petition Interest Lack Merit

Lehman's brief contains numerous arguments in support of its litigation position that Citibank is not entitled to any post-petition interest. These arguments are entirely

---

[78]    FAC ¶ 4.

30

extraneous to this motion and, to the extent Lehman had confidence in *any* of them, this motion would be unnecessary. Lehman, however, claims to include these arguments to demonstrate that "there is a significant dispute concerning Citibank's entitlement to post-petition interest."[79] Lehman contends that the "divergence" of the parties' positions with respect to interest, in itself, somehow justifies cutting off further accrual of post-petition interest on Citibank's claims.[80] Of course, the parties' "divergent" views cannot possibly justify relief that has no basis in—and would contravene—the Bankruptcy Code, the Bankruptcy Rules, the Plan, and other applicable law. Lehman's arguments on the merits of Citibank's right to interest (all of which are, indeed, vigorously disputed by Citibank) are irrelevant to its motion and should be disregarded by this Court.

We will, however, briefly address Lehman's new argument that Section 8.4 of the Plan somehow restricts Citibank's rate for post-confirmation interest to "the rate that LBHI earned on account of the distribution reserve established under the Plan for such Disputed Claims."[81] This argument, which Lehman never raised in previous discussions on this issue, is manifestly wrong based on the clear terms of the Plan, and we dispose of it briefly here.

*First*, Lehman's reliance on Section 8.4 of the Plan is misplaced, because that section applies only to unsecured claims. It obligates the Debtors to reserve "Available Cash" to pay out Disputed Claims that do not become allowed until post-confirmation. "Available Cash" is defined by the Plan as "all cash of a Debtor . . . *less* the amount of Cash (i) necessary to pay holders of Allowed Administrative Expense Claims, Priority Tax Claims, Priority Non-Tax

---

[79]   Pls.' Br. at 9.

[80]   *Id.* at 11.

[81]   *Id.* at 10.

31

Claims, *Secured Claims*, Convenience Claims and Convenience Guarantee Claims . . . ." Plan
§ 1.5 (emphasis added). If secured claims could only be paid from this definition of Available
Cash, the formula would be circular and unintelligible. Section 8.4 and the post-confirmation
interest rate it establishes for Disputed Claims have no relevance to Citibank's secured claims.

   ***Second***, plaintiffs' interpretation of Section 8.4 cannot be squared with
Section 4.2(b) of the Plan, which expressly sets forth the treatment of secured creditors. The
Plan states that Allowed Secured Claims will be paid "in full." Plan § 4.2(b). Courts have
recognized that language providing for "full payment" means that creditors should expect to
receive every part of their claims, including both pre- and post-confirmation interest.[82] A
secured creditor's reliance on Section 4.2(b) as providing for payment "in full"—including all
interest components—is the only reasonable interpretation, particularly in light of the Plan's
drafting history. LBHI's original Plan, filed in March 2010, permitted LBHI to satisfy secured
claims by "payment in Cash by LBHI in an amount equal to the Allowed amount of such
Secured Claim . . . ."[83] However, the "Allowed" amount was defined to exclude any interest
from the petition date,[84] which would have violated black letter law concerning the right of
secured creditors to recover interest. LBHI's First Amended Plan, filed in January 2011,
addressed this defect and modified Section 4.2(b) to provide secured creditors "payment in Cash

---

[82]  *See, e.g., Fawcett* v. *United States (In re Fawcett)*, 758 F.2d 588, 591 (11th Cir. 1985) (holding that creditors are entitled to interpret a plan's statement that all secured claims were to be "paid in full-100%" as guaranteeing "the payment of each and every part of the creditor's claim"); *Terex Corp.* v. *Metro. Life Ins. Policy (In re Terex Corp.)*, 984 F.2d 170, 174 (6th Cir. 1993) (interpreting plan to require payment "in full" and ordering payment of post-confirmation interest); *United States* v. *Arrow Air, Inc. (In re Arrow Air)*, 101 B.R. 332, 334-36 (S.D. Fla. 1989) (same).

[83]  Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. And Its Affiliated Debtors § 4.2(b), *In re Lehman Bros. Holdings Inc.*, No. 08-13555 (Bankr. S.D.N.Y. March 15, 2010), Docket No. 7572.

[84]  *Id.* § 1.64.

32

by LBHI in full . . . ."[85]  By revising Section 4.2(b) to require payment "in full," LBHI

demonstrated that it would satisfy secured creditors' claims, including all interest due.

Section 8.4, by its terms, does not limit the rate of post-confirmation interest due

to a secured creditor.  But even if Section 8.4 were found to be at all ambiguous on this score

(and it is not), that ambiguity would be construed against the debtors.  Where, as here, a Plan

provides that secured creditors will be paid "in full," debtors are required to specifically detail

any exception in order to put secured creditors on notice, which did not happen here.[86]  The Plan

does not limit Citibank's right to—or rate for—post-confirmation interest.

---

[85]  First Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. And Its Affiliated Debtors § 4.2(b), *In re Lehman Bros. Holdings Inc.*, No. 08-13555 (Bankr. S.D.N.Y. Jan. 25, 2011), Docket No. 14150.

[86]  *See Fawcett*, 758 F.2d at 591 ("If the debtor wished to be more specific and secure a confirmed plan that modifies the plain language of a 100% payment guarantee, it is the debtor's duty to put the creditor on notice by specifically detailing any exceptions.  Failing this, the debtor as draftsman of the Plan has to pay the price if there is any ambiguity about the meaning of the terms of the Plan.").

Doc#: US1:8864898v1

## CONCLUSION

For the foregoing reasons, defendants respectfully request that plaintiffs' motion

be denied.

Dated:   New York
         October 2, 2013

PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP

By: _____ */s/ Claudia L. Hammerman* _____
              Stephen J. Shimshak
              Claudia L. Hammerman

PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP
1285 AVENUE OF THE AMERICAS
NEW YORK, NEW YORK  10019-6064
chammerman@paulweiss.com

*Attorneys for Citi Defendants*

34